UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PLASMA AIR INTERNATIONAL, INC.,
LAWRENCE SUNSHINE, CLIFFORD
MILLER and VIPER HOLDING, LLC,

                Plaintiffs,

        -against-

AERISA, INC., ION INVESTMENT
PARTNERS, LLC, IONZ INTERNATIONAL,
INC., ALF MAURITZON, ECO ION
TECHNOLOGIES, LLC, and ECO-AIR
TECHNOLOGIES, LLC,

                Defendants.

08 CV 02415 (GEL)

**DECLARATION OF BRIAN M.
MCQUAID**

Brian M. McQuaid, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

1.      I am a member of the bar of the State of Arizona and my *pro hac vice* admission is currently pending before this Court in the above matter. I am a partner in the law firm of Squire, Sanders & Dempsey L.L.P., attorneys for Defendants Aerisa, Inc., Ion Investment Partners, LLC, IONZ International, Inc., Alf Mauritzon, Eco-Ion Technologies, LLC, and Eco-Air Technologies, LLC. (collectively, "Defendants").

2.      I submit this declaration in support of Defendants' Motion to Dismiss, or, Alternatively Stay or Transfer the Complaint ("Motion to Dismiss") filed contemporaneously herewith.

3.      Attached hereto as Exhibit 1 is a copy of the Declaration of Tim Bender, dated April 9, 2008.

4.      Attached hereto as Exhibit 2 is a copy of the "Agreement Relating to Wind-Up of

ECO ION Technologies, LLC" (the "Wind-Up Agreement"), dated August 28, 2006.

5.      Attached hereto as Exhibit 3 are copies of letters sent from Aerisa, Inc. ("Aerisa") to Plasma-Air, International, Inc. ("Plasma-Air"), Clifford Miller ("Miller"), Larry Sunshine ("Sunshine"), and Plasma-Air's President, Terry A. Busskohl ("Busskohl"), dated January 11, 2008.

6.      Attached hereto as Exhibit 4 is a copy of the Complaint filed by Aerisa in the United States District Court for the District of Arizona against Plasma-Air, Busskohl, Miller, Sunshine, and John Collins ("Collins") (collectively, the "Arizona Defendants"), dated February 4, 2008.

7.      Attached hereto as Exhibit 5 are copies of a February 5, 2008 letter sent by Aerisa to Messrs. Busskohl and Miller and a February 6, 2008 letter sent by Aerisa to Messrs. Collins and Sunshine,

8.      Attached hereto as Exhibit 6 is a copy of the First Amended Complaint filed by Aerisa in the United States District Court for the District of Arizona against the Arizona Defendants, dated March 31, 2008.

9.      Attached hereto as Exhibit 7 is a copy of the Declaration of Alf Mauritzson, dated April 9, 2008.

10.     Attached hereto as Appendix 1 are copies of all unreported, docketed cases cited in Defendants' Memorandum of Law in Support of the Motion to Dismiss.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.

Executed this 10th day of April, 2008.

_____

Brian M. McQuaid

EXHIBIT 1

## DECLARATION OF TIM BENDER

I, Tim Bender, hereby declare as follows:

1.      I am the President and Chief Executive Officer of Aerisa, Inc. ("Aerisa").  I am over the age of eighteen (18) years, am competent to testify in this matter and have knowledge of the facts set forth herein or believe them to be true based on either my own personal knowledge, by reviewing documents or through discussions with others.

2.      Aerisa, Inc. (formerly known as IONz International, Inc.) designs and manufactures systems for cleaning air using plasma technology ("Technology" or "Bentax Technology").  Aerisa changed its name from IONz International, Inc. to Aerisa, Inc. in January of 2008.

3.      The Technology was acquired by Aerisa from Eco-Ion Technologies, LLC (dba Bentax USA) pursuant to an agreement entitled "Agreement Relating to Wind-Up of ECO ION Technologies, LLC" (the "Wind-Up Agreement") by which all rights in the Technology was transferred to IONz International, Inc. (which is now Aerisa).  (See Wind-Up Agreement (Sections 2(b) and (c)), attached as Exhibit 2 to the Motion to Dismiss.)

4.      Aerisa is a Delaware corporation with its principal place of business located in Scottsdale, Arizona.

5.      All of Aerisa's officers and employees reside in Arizona except for one sales person in Florida.

6.      All of Aerisa's witnesses and documents relevant to the Complaint filed against it in this case are located in Arizona.

1

7.     Aerisa does not conduct business in New York State and is not registered to conduct business in New York State.  Aerisa does sell products to a distributor in Arizona that has re-sold some of the products in New York.

8.     Aerisa does not have an office for business in New York State.  Until October of 2007, Aerisa paid for a sales office in New York State in which Larry Sunshine occasionally worked.

9.     ION Investment Partners ("IIP") is a Nevada limited liability company with a principal place of business in Nevada.  IIP is merely a shareholder of Aerisa, does not maintain an office in New York and is not involved in the actions relevant to the Complaint in this action. Some of the stock holders in IIP are located in New York State, but those stockholders are not actively involved in the operation of Aerisa.

10.     Except for paying for the sales office utilized occasionally by Larry Sunshine until October 2007, Aerisa has not directly transacted business in New York State.

11.     While Lawrence Sunshine and John Collins worked for Aerisa they communicated with Aerisa personnel in Arizona several times a week and information related to the Technology and Aerisa's business was sent to them from Aerisa.

I declare under penalty of perjury that to the best of my knowledge and recollection the foregoing is true.

Executed on April _9_, 2008.

_____
Tim Bender

2

# EXHIBIT 2

AUG-29-2006  15:24        ANDREW M MARTIN CO, INC              1 310 323 2265      P.01

## Agreement Relating to Wind-Up of Eco Ion Technologies, LLC

THIS AGREEMENT ("Agreement") is made and entered into as of the ___ day of August, 2006, by and among the following initial parties (each, a "Party"):

> ➢ ION Investment Partners, LLC, a Nevada limited liability company ("ION"),

> ➢ Cliff Miller, a natural person ("Miller"),

> ➢ Viper Holding LLC. a Nevada limited liability company ("Viper")

> ➢ Alf Mauritzon, a natural person ("Mauritzon"), and

> ➢ Eco Air Technologies LLC, a Delaware limited liability company ("EAT"), whose sole member and equity interest holder is Mauritzon

In addition, upon execution of the adoption and ratification instrument attached hereto as **Exhibit B** by Eco Ion and the Corporation (each as defined below), Eco Ion and the Corporation shall also be deemed Parties to the Agreement and bound by its terms and entitled to its benefits.

## R E C I T A L S :

WHEREAS, each of the Parties above currently has a direct or indirect interest in Eco Ion Technologies, LLC, a Delaware limited liability company ("Eco Ion"), as described more fully in **Exhibit A** to this Agreement and the MOU (as defined below), and have various debt and contractual relations to each other, including those described in **Exhibit A**;

WHEREAS, pursuant to various agreements dating from August 2005 (the "ION Purchase Agreements"), ION previously purchased a 39% share of the membership units in Viper for $550,000 (as more specifically described in **Exhibit A**);

WHEREAS, pursuant to the ION Purchase Agreements ION has previously provided a secured loan to Viper in the amount of $550,000 (the "$550k ION-to-Viper Loan" -- as more specifically described in **Exhibit A**) in exchange for a $550,000 promissory note from Viper (the "$550k Viper-to-ION Note") which is secured by both: (i) Viper's current 28% share of the membership units in Eco Ion; and (ii) by Viper's interests in the $900k Eco-to-Viper Note (as defined below);

WHEREAS, Viper has previously loaned $900,000 to Eco Ion (the "$900k Viper-to-Eco Loan") in exchange for a $900,000 promissory note from Eco Ion (the "$900k Eco-to-Viper Note"), as more specifically described in **Exhibit A**;

WHEREAS, Viper has previously loaned $200,000 to Mauritzon (the "$200k Viper-to-Alf Loan") in exchange for a $200,000 promissory note from Mauritzon (the "$200k Alf-to-Viper Note"), as more specifically described in **Exhibit A**;

1

1310689 v5

AUG-28-2006  15:35        ANDREW M MARTIN CO, INC                    1 310 323 2265    P.02

WHEREAS, ION has to date loaned $110,000 to Mauritzon (the "$110k ION-to-Alf Loan") upon the same business terms (payment date and interest) as the $200k Viper-to-Alf Loan, but without signed promissory notes or other formal documentation;

WHEREAS, Miller, Viper, Mauritzon and EAT are in the final stages of negotiating a proposed multi-party Memorandum of Understanding with Eco Ion as well as additional parties (Indoor Air Quality Partners, LLC, Steve Levine, FMWL, and Walter Levine), with a current proposed effective date of June 1, 2006 (the final executed version of which is hereafter referred to as the "MOU");

WHEREAS, the purpose and effect of the MOU is to cause the various current owners of Eco Ion to surrender their ownership interests in Eco Ion to EAT (which is in turn wholly owned by Mauritzon) in exchange for certain licenses, training, territorial standoffs and other ongoing limited commitments from Eco Ion as described more fully in the MOU;

WHEREAS, because the MOU anticipates the extinguishment of substantially all debt and continuing contractual obligations (except as set forth in the MOU) between the various parties to the MOU, including the $900k Viper-to-Eco Loan, the $900k Eco-to-Viper Note and the various pledges of security and voting rights in connection with such instruments, the parties to the MOU cannot complete the MOU transaction without the agreement of ION, including ION agreeing to cancel rights relating to interests in both the $550k Viper-to-ION Note and the $900k Eco-to-Viper Note; and

WHEREAS, each of ION, Miller, Viper, Mauritzon and EAT wishes to agree to a mutual cancellation and exchange and/or contribution of certain outstanding debt instruments, ownership rights, intellectual property rights, distribution licenses and other rights, all in connection with assisting ION in the formation of a new corporation that will have all of the same rights to compete as Eco Ion, and will compete in the same business as Eco Ion, as described in more detail below, with the various parties receiving ownership interests in the new Corporation as consideration for the various transfers, cancellations, contributions and ongoing commitments set forth in the Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and mutual covenants hereinafter contained, and for other good and lawful consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Effective Date and Time of This Agreement. This Agreement will become effective immediately following both the execution of the MOU by all parties thereto and the formal adoption and ratification of this Agreement by both Eco Ion and the Corporation immediately following such execution (the date on which the completion of the second of these necessary pre-requisites occurs shall be deemed the "Effective Time"); provided, however, that (A) each non-ION Party to this Agreement agrees not to sign the MOU until a final copy of the MOU (together with all exhibits) has been provided to ION and ION has notified the other Parties in writing of its written approval of the final MOU; and (B) each of EAT and Mauritzon agrees to cause Eco Ion to execute a formal adoption and ratification, in the form set forth in Exhibit B to this Agreement, immediately following (and in no event later than one business day following) the execution of the MOU by all parties thereto. If an MOU in a form not approved

1310689 v5

AUG-28-2006  15:25        ANDREW M MARTIN CO, INC            310 323 2265      P.03

by ION is signed by any Party, or if Eco Ion does not sign the formal adoption and ratification as required by the prior sentence, ION reserves the right to notice in writing a formal termination of this Agreement in which case all transactions described herein shall be null and void.

2.    Formation of Corporation.

(a)    General Formation.  ION has formed a subchapter C Corporation under the laws of the State of Delaware, under the name of IONZ International, Inc. (hereafter, the "Corporation").  The initial purpose of the Corporation shall be to conduct the Business (as defined below).  Each of the Parties agrees, in general, to do everything in its power to ensure that the Corporation has at least the same rights to pursue this Business as Eco Ion has to pursue the Business under the terms of the MOU and, specifically, to do and take all of the actions described below to accomplish this purpose. The Corporation shall become a Party to, and have the right to enforce, this Agreement commencing at the Effective Time pursuant to execution of the adoption and ratification addendum (as set forth in Exhibit B), as described in Section 1. As used in this Agreement, the Business is defined to mean all of the following:  (i) the manufacture, distribution and marketing of technology and products for the cleaning of air using ionization to government, commercial, residential and consumer end users, both directly and through reseller, OEM, retail and other distribution channels; and (ii) using the Technology, Black Art, UL approval and ETL tests, as each of such terms is described and defined in the MOU.

(b)    Assignment of Rights Relating to Business; License Back to Eco Ion. From and as of the Effective Time, Mauritzon and EAT shall cause Eco Ion to cease conducting the Business, and Eco Ion agrees to cease conducting the Business, except only as necessary to prevent Eco Ion from breaching its obligations to the parties to the MOU who are not signatories to this Agreement, and as necessary to otherwise wind up Eco Ion's affairs. From and as of the Effective Time, the Corporation shall be free to solicit some or all of Eco Ion employees of its choosing to become employees of the Corporation, in each case at the Corporation's sole discretion. From and as of the Effective Time, Mauritzon and EAT shall assign and transfer, and shall cause Eco Ion to assign and transfer, to the Corporation, and Eco Ion (upon being added to this Agreement) hereby irrevocably sells, assigns and transfers to the Corporation, and the Corporation (upon being added to this Agreement) accepts:  (i) each of such Party's intellectual property rights to the Business (including but not limited to the Technology, Black Art, UL approval and ETL tests, as defined in the MOU), but excluding rights to trademarks and trade names, (ii) without limiting the foregoing, each of such Party's intellectual property rights to trade secrets, know how, and any other intellectual property rights (again excluding trademarks and trade names) used by Eco Ion in or relating to the Business; (iii) without limiting the foregoing, all of Eco Ion's rights to any inventories of, or outstanding orders for, ionization tubes and transformers; and (iv) customer lists, and detailed contact information for customers, suppliers, manufacturers and distributors with whom Eco Ion has had any dealings relating to the Business in the prior 24 months.  Each of these categories is more specifically described in Exhibit C (collectively, the "Transferred Assets"), and each category specifically excludes any "Excluded Assets" described in Exhibit C.  The Corporation, upon becoming a Party to this Agreement, hereby licenses back to Eco Ion a non-exclusive, limited term, royalty-free license to use the Transferred Assets for the benefit of the parties to the MOU who are not signatories to this Agreement, but only as necessary for Eco Ion to avoid breaching its legal obligations under

3

1310689 v5

AUG-28-2006  15:26        ANDREW M MARTIN CO, INC                          ∟ 310 323 2265      P.04

the MOU to such parties, and only for such limited term as is minimally necessary to perform such legal obligations. To the extent that any transfers described in this Section require filings, notices or other registrations with any government or business agencies: (i) the parties shall cause Eco Ion and the Corporation to duly prepare, file and deliver all such documents; and (ii) Eco Ion hereby appoints the President of the Corporation as it authorized attorney in fact to prepare, file, sign and deliver such documents on Eco Ion's behalf.

(c)    Assignment of License and Territory Rights Under MOU.  Without limiting the generality of the provisions of Section 2(b) above, from and as of the Effective Time each of Miller, Viper, Mauritzon, EAT and Eco Ion (upon being added to the Agreement) hereby irrevocable sells, assigns and transfer to the Corporation, and the Corporation (upon being added to this Agreement) accepts, all of such Parties' ownership rights, and all licenses to use and exploit (whether such licenses were granted under the MOU or otherwise), the Technology, Black Art, UL approval and ETL Tests, as such terms are defined in the MOU, including without limitation, each of the following:

(i)    All distribution rights relating to the Business for Southern California, Florida, Nevada and the United Kingdom and the ability to enforce such rights against the parties to the MOU;

(ii)    Any rights of Eco Ion to supply Business products to the New Jersey Distributor, New England Area Distributor, Maryland Distributor, and Australian Distributor (each as described in the MOU);

(iii)    All distribution rights relating to OEM or National Accounts (as each is defined in the MOU);

(iv)    Any rights of Eco Ion (contractual or otherwise) under buyout or early terminations clauses in any existing distributor contract to the extent that the Corporation wishes to see such clause exercised;

(v)    Any rights of Eco Ion under its distribution agreements with IONStein Air Technologies ("IONStein"); and

(vi)    All other distribution rights relating to the Business to the extent not granted to parties to the MOU who are not signatories to this Agreement.

(d)    Payment of Trade Payables.  The Corporation agrees, from and as of the Effective Time, to pay on Eco Ion's behalf, within 90 days after the Effective Time, those Eco Ion trade accounts payable shown in Exhibit C, to the extent each such claim is still outstanding as of the Effective Time and subject in each case to the specific claim cap specified in Exhibit C. Eco Ion shall provide the Corporation with all requested assistance in paying off each of the claims. If Eco Ion and the Corporation determine that a claim listed in Exhibit C is invalid or subject to a valid defense of offset, the Corporation's obligation to pay such claim shall be correspondingly reduced. In consideration for these payments, Eco Ion agrees from and as of the Effective Time to assign to the Corporation all accounts receivable relating to Eco Ion's dealings with IONStein and the Corporation shall, at the Effective Time, assume any and all of Eco Ion's loan and other repayment obligations owing to IONStein.

4

1310689 v5

AUG-29-2006  15:26          ANDREW M MARTIN CO. INC                    1 310 323 2265     P.05

(e)  Additional Winding-Up/Transition Details.  Eco Ion will continue to fulfill its obligations to provide products and ionization tubes to the parties to the MOU who are not signatories to this Agreement for the six month transition period described in the MOU. Eco Ion and the Corporation will work together at Eco Ion's option to either:  (i) have the Corporation fulfill such orders on Eco Ion's behalf (with the Corporation keeping the payment for such orders) or (ii) have the Corporation sell such products and ionization tubes to Eco Ion for a price equal to the Corporation's reasonable cost of production and shipping.  Eco Ion acknowledges that the Corporation is in the process of acquiring and developing next generation manufacturing know how and trade secrets relating to the manufacture of ionization tubes and equipment.  This Agreement does not grant Eco Ion or any other Party to this Agreement a license to use such technology and such technology is not part of the Transferred Assets to which the license back described in Section 2(b) above applies.

(f)  Additional Corporation Formation Agreements.  The Parties' additional agreements relating to the formation and conduct of the Corporation are set forth in Section 5.

3.  General Indemnification.  From and as of the Effective Time each of Miller, Viper, Mauritzon, EAT and Eco Ion (upon being added to the Agreement) (each, an "Indemnifying Party") hereby agrees to indemnify, defend and hold harmless ION and the Corporation from and against any all liabilities and third party claims arising from or related to: (i) any Excluded Asset (including any creditor or similar claims arising from the conduct of business by Eco Ion except to the extent that the Corporation has agreed under this Agreement to assume responsibility for payment of such claim), with indemnification under this Section to be provided by the Indemnifying Parties responsible for the relevant Excluded Asset(s); (ii) the operation of the business of Eco Ion and Viper by the Indemnifying Party prior to the Effective Time; (iii) any product liability or similar claims relating to sales of any products or services by the Indemnifying Party prior to or after the Effective Time; (iv) any claims that the Indemnifying Party's entering into this Agreement is a breach of any obligation owed by such Indemnifying Party to any third party; and (v) without limiting the generality of the foregoing, any claim by a distributor that the rights granted to the Corporation under this Agreement are in breach of rights previously granted by the Indemnifying Party to such distributor.

4.  Treatment of Loan Transactions.

(a)  Post-Effective Time Cancellations and Transfers; Enforcement of Notes. From and as of the Effective Time, the following will automatically occur:

(i)  ION's 39% membership share in Viper will be canceled and returned to Viper;

(ii)  the $550k ION-to-Viper Loan and the corresponding $550k Viper-to-ION Note (including all outstanding principal and interest obligations, and all related pledge agreements) will be canceled and Viper will be released from any further obligations thereunder;

(iii)  the $900k Viper-to-Eco Loan and the corresponding $900k Eco-to-Viper Note (including all outstanding principal and interest obligations, and all

5

1310689 v5

AUG-28-2006  15:26        ANDREW M MARTIN CO. INC                    1 310 323 2265      P.06

related pledge agreements) will be canceled and Eco Ion will be released from any further obligations thereunder; and

(iv)    in exchange for the cancellations described above (and in exchange for such canceling Party's other cancellations, contributions and commitments described in this Agreement), the canceling Party (or its nominee) shall be issued stock in the new Corporation as described in Section 6 below.

(b)    <u>Assignment of $200k Viper-to-Alf Loan; Forgiveness of $200k Viper-to-Alf Loan and $110k ION-to-Alf Loan</u>.  From and as of the Effective Time, Viper shall transfer and assign to ION the $200k Alf-to-Viper Note and all of Viper's rights under the $200k Viper-to-Alf Loan.  ION agrees to forbear enforcement of both the $200k Alf-to-Viper Note and ION's rights under the $110k ION-to-Alf Loan for so long as EAT and Mauritzon shall continue to faithfully perform, and cause Eco Ion to perform, all obligations set forth in Sections 2(b), 2(c), 3, 5 and <u>Exhibit D</u> of this Agreement.  In addition, ION agrees on a monthly basis commencing with the Effective Time to forgive both the $200k Alf-to-Viper Note and the $110k ION-to-Alf Loan (in each case, with respect to both principal and accrued interest) on a straight-line basis over a 36 month period so long as EAT and Mauritzon shall continue to faithfully perform, and cause Eco Ion to perform, the same obligations listed above.

(c)    <u>Cancellation or Forgiveness of Debt; Tax Consequences</u>.  Although the parties intend for the transactions described in this Agreement (including the cancellations described in Section 4(a)) to be treated to the extent possible as tax free transfers of current contract and property rights in exchange for stock in the new Corporation, Miller, Viper, Mauritzon and EAT each acknowledge that ION has not provided and will not provide any tax advice or counseling under or in connection with this Agreement, and that the cancellation of debt and other transfers described in this Agreement may and will have tax consequences to such parties, and that neither ION nor the Corporation shall have any obligations to pay any taxes to any governmental entity on account of such parties arising from such cancellations or transfers.  Each of Miller, Viper, Mauritzon and EAT (each the "indemnifying party") agrees to indemnify and hold harmless both ION and the Corporation from any tax liability or similar claim arising from such indemnifying party's failure to pay any tax or to timely file any tax report relating to any cancellation of debt, transfer or other transaction described in this Agreement.

5.    <u>Non-Compete Agreements; Confidentiality</u>.  In exchange for the cancellation of debt by ION and also in exchange for the issuance of initial ownership rights in the Corporation as set forth in Section 6 below, each of Miller (the majority owner of Viper) and Mauritzon agree to the comply with the non-compete provisions set forth in Exhibit D.  The parties agree that should the Corporation fail to obtain outside funding prior to January 31, 2007, the obligations in Exhibit D shall terminate effective February 1, 2007, notwithstanding any contrary terms in Exhibit D.  In addition to the obligations in Exhibit D, each of Miller and Mauritzon agrees to maintain, and to cause Viper, Eco Ion and EAT and each of their respective officers, directors, employees, and agents to maintain, the confidentiality of any proprietary information of the Corporation obtained by any of them through their ongoing relationship with the Corporation.  Miller and Mauritzon also agreed to execute, and to cause Viper to execute, additional commercially standard confidentiality and nondisclosure commitments reasonably requested by the Corporation of other Corporation consultants or stockholders.

6

1310689 v5

AUG-28-2006  15:27        ANDREW M MARTIN CO, INC                      1 310 323 2265       P.07

6.    <u>Additional Corporation Formation and Operations Agreements</u>.

      (a)    <u>General</u>.  The parties agree that the Corporation will, as an initial matter, be owned by ION, Viper and Mauritzon, as detailed below, with options or stock to be issued to members of the Corporation's management team as such are added.  Each of the parties agree to execute additional documents and agreements, and to take all steps necessary to complete (and not to take any steps that would interfere with) the setup of the Corporation pursuant to the provisions set forth below.

      (b)    <u>Authorized Capital</u>.  The authorized capital of the Company shall initially consist of 1,000,000 shares of common stock, par value $.001 per share (the "<u>Common Stock</u>").

      (c)    <u>Initial Holdings</u>.  The Parties shall be issued the following respective shares in exchange for the assignments and contributions described:

| Name | Number of Shares | % of Total | Consideration/Contribution |
|---|---|---|---|
| ION | 45,000 | 45% | Commitments; debt cancellation made under this Agreement; no other payment required for shares |
| Mauritzon (or his designee) | 25,000 | 25% | Commitments and assignments made under this Agreement; no other payment required for shares |
| Viper | 10,000 | 10% | Debt cancellation made under this Agreement; commitments and assignments made under this Agreement; no other payment required for shares |
| Set-aside for additional executives, officers, managers and key employees (first 12 months) | 20,000 | 20% | Incentivize other key individual contributors; payment for shares (if any) shall be determined by Corporation's Board of Directors |
| Total | 100,000 | 100% | |

      (d)    <u>Dilution</u>.  The Parties acknowledge that over time these stockholdings will change and most likely be significantly diluted as additional stockholders are added, preferred classes of stock are authorized and granted to new outside investors, employees are granted stock or option participations, etc.  Notwithstanding the foregoing, ION agrees that:

      (i)    to the extent ION participates as an investor in any future equity financing round for the Corporation, both Mauritzon and Viper will be provided the opportunity to participate (on a pro rata basis relative to ION's holdings) in the equity investment on substantially the same terms and conditions offered to other investors (for example, if in an equity financing round ION is provided the

7

1310689 v5

AUG-28-2006  15:27          ANDREW M MARTIN CO. INC                    1 310 323 2265      P.08

opportunity to invest $60,000 in the Corporation, Mauritzon will be provided the opportunity to invest $33,333 and Miller will be provided the opportunity to invest $13,333); and

(ii)    The initial financing round for the Corporation will not dilute Mauritzon or Miller's overall percentage holdings in the Corporation by more than 30% below the relevant percentages shown in the chart above, without Mauritzon and Miller's prior consent. After the first financing round, the parties agree that the Corporation's needs for future equity financing cannot be foreseen and thus there is no guarantee against future potential dilution.

(e)    <u>Stockholders Agreement</u>.  The Corporation, ION, Viper and Mauritzon shall enter into a Stockholders Agreement that includes standard commercial terms restricting the transferability or encumbering of shares and providing for first refusal rights in favor of the Corporation and other non-selling stockholders. In addition, the Stockholders Agreement will include a buy-back mechanism whereby the Corporation will have the option (but not the obligation) to force a buy-back of Mauritzon's shares or Viper's shares in the event the relevant stockholder (or a controller member of such stockholder) begins competing against the Corporation in the Restricted Field (as defined in part 2(c) of Exhibit D, and whether or not such competition occurs during or after the Non-Competition Period specified in Exhibit D), and fails to stop competing within thirty (30) days after receiving written notice of breach from the Corporation. The price for such buy-back shall be the then most recent determination of fair market value for the Corporation's Common Stock made by the Corporation's Board of Directors. The foregoing remedy will be non-exclusive.

(f)    <u>Directors of the Company</u>. Tim Bender shall serve as the initial Director of the Corporation for the purposes of completing its formation. The Parties agree that within 90 days of formation the Corporation and the Parties shall use good faith efforts to invite additional persons acceptable to the Parties to join the Board with a non-binding goal of having a Board consisting of between five (5) and seven (7) members. Additions of any of the following individuals to the Board prior to January 31, 2007 is hereby consented to by the Parties without the need for further action on their part (upon request, however, such Parties will vote their stock in the Corporation in favor of their election to the Board):  Robert Krohn, David Hall, David Bennett, Kent Petzold and Theodore Tietge.

(g)    <u>Officers of the Company</u>. The following persons shall serve as officers of the Corporation in the capacities set forth beside their respective names below for such compensation and on such other terms and conditions as the Board of the Corporation shall determine:

| | |
|---|---|
| Tim Bender | President |
| Arthur Rosenbloom | Secretary |

7.    <u>Employment/Consultancy Agreements</u>.

1310689 v5

AUG-28-2006  15:28          ANDREW M MARTIN CO, INC          1 310 323 2265      P.09

(a)      General.  To the extent the Corporation wishes to enter employment or consulting agreements with any Party to this Agreement, such agreement(s) shall be negotiated separate and apart from this Agreement.

(b)      Consulting Agreement with Mauritzon.  The Corporation and Mauritzon shall separately negotiate a consulting agreement under which Mauritzon shall become an independent contractor for the Corporation, and, among other things, assist the Corporation in developing improvements and new intellectual property (to be owned by the Corporation) relating to the manufacture of better ionization tubes and transformer technology not currently used in the existing Eco Ion manufacturing processes.  This consulting agreement will include royalty provisions whereby: (i) the Corporation will pay Mauritzon, on an ongoing quarterly basis. a royalty of $0.25 for each ionization tube sold or distributed by the Corporation; (ii) subject to exercise of cancellation rights (see next subsection) the Corporation shall continue to pay Mauritzon royalties on such sales until the earlier of (1) July 31, 2016, or (2) the date Mauritzon first commences competing against the Corporation in the Restricted Field as defined in Exhibit D (whether such competition commences during or following the Non-Competition Period described Exhibit D); and (iii) the Corporation will have the right to cancel its future ongoing royalty obligations at any time through a one-time paid-up royalty fee payment to Mauritzon of $300,000.  Upon execution, the consulting agreement will replace and supersede the provisions in this Section 7(b).

8.      Contingent Funding of Eco Ion Account Payables.  If on or before November 15, 2006, the Corporation successfully closes a financing round with one or more third parties under which the Corporation raises at least $2,000,0000, then the Corporation agrees, effective upon such closing, to pay Eco Ion the lesser of $200,000 or the amount then necessary to pay off any Eco Ion outstanding account payables and other outstanding financial obligations of Eco Ion (including but not limited to unpaid expense reimbursements, attorneys fees, etc.); provided, however, that upon the request of the Corporation the allocation of such funding to various Eco Ion creditors shall include on a priority basis the following to the extent then unpaid:  Eco Ion payable to AMCO – Andrew M Martin Co. (rent, phone, etc) for $33,787.06; Eco Ion payable to AMMCO – Ammco Holdings (rent – warehouse) for $15,000.00; and Eco Ion payable to US Bank – Cliff Miller for $2,265.88).  The payments provided for in this Section 8 are in addition to the Eco Ion accounts payable that the Corporation has agreed to pay under Section 2(d) above.

9.      Assignment.  This Agreement shall be binding upon and inure to the benefit of the parties hereto. their heirs, executors, administrators and assigns; provided, however, that except as otherwise expressly provided herein, no Party shall assign any interest hereunder without the written consent of all other Parties; provided, however, that the Corporation may assign its complete rights and obligations hereunder to any successor in interest pursuant to a merger or acquisition transaction, including but not limited to an acquisition by a third party of substantially all of the Corporations assets.

10.      Amendment.  This Agreement may only be amended by a written agreement approved by all of the Parties.

11.      Agreement Drafted by ION's Attorney.  Each Party acknowledges that ION's counsel. Osborn Maledon, P A.. prepared this Agreement on behalf of and in the course of its

9

1310689 v5

AUG-28-2006  15:28        ANDREW M MARTIN CO, INC                    1 310 323 2265    P.10

representation of ION and that: (A) SUCH PARTY HAS BEEN ADVISED THAT A CONFLICT OF INTEREST MAY EXIST BETWEEN HIS INTERESTS AND THOSE OF ION, THE CORPORATION AND THE OTHER PARTIES; (B) THIS AGREEMENT MAY HAVE TAX CONSEQUENCES; (C) SUCH PARTY HAS RECEIVED NO REPRESENTATIONS ABOUT THE TAX CONSEQUENCES OF THIS AGREEMENT; (D) SUCH PARTY HAS BEEN ADVISED TO SEEK THE ADVICE OF INDEPENDENT COUNSEL WITH RESPECT TO ALL ASPECTS OF THIS AGREEMENT INCLUDING WITHOUT LIMITATION TAX CONSEQUENCES; AND (E) SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT COUNSEL.

12.    General.   Except to the extent inconsistent with the express language of the foregoing provisions of this Agreement, the following provisions shall govern the interpretation, application, construction and enforcement of this Agreement.

(a)    Survival of Representations and Warranties.   All representations and warranties contained in this Agreement (and in any certificate or other instrument delivered by or on behalf of any Party pursuant hereto or in connection with the transactions contemplated hereby) are true in all material respects on and as of the date so made, will be true in all material respects on and as of the date on which the transactions(s) contemplated hereby are closed and will survive such closing date regardless of any investigation made by or on behalf of any Party.

(b)    Notices.   Any notice to any Party under this Agreement shall be in writing, shall be deemed given and therefore effective on the earlier of (i) the date when received by such Party, or (ii) the date which is three days after mailing (postage prepaid) by certified or registered mail, return receipt requested, to the address of such Party set forth herein, or to such other address as shall have previously been specified in writing by such Party to all parties hereto.

(c)    Additional Acts and Documents.   Each Party hereto agrees to do all such things and take all such actions, and to make, execute and deliver such other documents and instruments, as shall be reasonably requested to carry out the provisions, intent and purpose of this Agreement.

(d)    Authority.   Each of the parties hereto represents and warrants to each other Party hereto that this Agreement has been duly authorized by all necessary action and that this Agreement constitutes and will constitute a binding obligation of each such Party.

(e)    Attorneys' Fees.   In the event suit is brought (or arbitration instituted) or an attorney is retained by any Party to this Agreement to enforce the terms of this Agreement or to collect any money due hereunder, or to collect money damages for breach hereof, the prevailing Party shall be entitled to recover, in addition to any other remedy, reimbursement for reasonable attorneys' fees, court costs, costs of investigation and other related expenses incurred in connection therewith.

(f)    Counterparts.   This Agreement may be executed in any number of counterparts, all such counterparts shall be deemed to constitute one and the same instrument, and each of said counterparts shall be deemed an original hereof.  Signatures received via facsimile or other electronic transmission shall be deemed to be original signatures.

10

1310689 v5

AUG-29-2006  15:29    ANDREW M MARTIN CO, INC    1 310 323 2265    P.11

(g)    Time.  Time is of the essence of this Agreement and each and every provision hereof.  Any extension of time granted for the performance of any duty under this Agreement shall not be considered an extension of time for the performance of any other duty under this Agreement.

(h)    Waiver.  Failure of any Party to exercise any right or option arising out of a breach of this Agreement shall not be deemed a waiver of any right or option with respect to any subsequent or different breach, or the continuance of any existing breach.

(i)    Integration Clause; Oral Modification.  This Agreement represents the entire agreement of the parties with respect to the subject matter hereof, and all agreements entered into prior hereto are revoked and superseded by such Agreement, and no representations, warranties, inducements or oral agreements have been made by any of the parties except as expressly set forth herein.

(j)    Governing Law.  This Agreement shall be deemed to be made under, and shall be construed in accordance with and shall be governed by, the laws of the State of Arizona, and (subject to any provision in this Agreement providing for mandatory arbitration) suit to enforce any provision of this Agreement or to obtain any remedy with respect hereto may be brought in Superior Court, Maricopa County, Arizona, and for this purpose each Party hereby expressly and irrevocably consents to the jurisdiction of said court.

(k)    Interpretations.  To the extent permitted by the context in which used, (i) words in the singular number shall include the plural, words in the masculine gender shall include the feminine and neuter, and vice versa, and (ii) references to "persons" or "parties" in this Agreement shall be deemed to refer to natural persons, corporations, general partnerships, limited partnerships, trusts and all other entities.

(l)    Specific Performance.  In addition to such other remedies as may be available under applicable law, the parties acknowledge that the remedies of specific performance and/or injunctive relief shall be available and proper in the event any Party fails or refuses to perform its duties hereunder.

13.    Agreement to Mediate and Arbitrate.

(a)    In General.  The parties expressly agree to submit any dispute between them arising out of or relating to this Agreement ("Dispute") to mediation and, if necessary, arbitration, as set forth below.  The parties hereto thus expressly waive any rights they may have to trial by jury with respect to such dispute.  Any Dispute will be promptly submitted for binding arbitration by the American Arbitration Association ("AAA") in Phoenix, AZ, before an arbitrator selected by the parties or, if they cannot agree, appointed by the AAA. The parties further agree to participate in mediation of any such disputes after the mutual exchange of relevant documents and no less than 30 days before the arbitration hearing, with assistance of a mediator to be selected by them or, if they cannot agree, appointed by the AAA.    Except as otherwise agreed by the parties, the AAA's Arbitration Rules will apply to the arbitration, with the exception and modification as follows:



11

1310689 v5

AUG-29-2006   15:29        ANDREW M MARTIN CO, INC                    1 310 323 2265     P.12

(i)     <u>Depositions</u>: Each Party shall have the right to take not more than 20 hours of depositions. Time spent for cross-examining a witness whose deposition has been noticed by the other Party shall count toward the 20-hour limit. Additional depositions may be authorized by the arbitrator on a showing of good cause. Good cause as used herein is limited to obtaining deposition testimony for use at the arbitration hearing of witnesses who are not under the control of either Party and can not be compelled to attend the arbitration hearing.

(ii)     <u>Document Exchange</u>: An initial exchange of all documents supporting or refuting the parties' claims and defenses shall take place thirty days after the appointment of the arbitrator, unless a different date for the exchange is set by the arbitrator.

(iii)     <u>Arbitrator and Mediator Selection</u>: Within one week of receiving a list of proposed arbitrators and mediators from the AAA, each Party will designate and provide the other Party with no less than three acceptable arbitrators and another three acceptable mediators. Each Party will disclose any information regarding prior relationships the Party or its counsel has had with its designated arbitrators and mediators.  The final arbitration award may be entered as a judgment by any court with competent jurisdiction.

(b)     <u>Equitable Relief</u>.  Notwithstanding anything herein to the contrary, nothing in this Section shall preclude any Party from seeking interim or provisional relief, in the form of a temporary restraining order, preliminary injunction or other interim equitable relief concerning the Dispute, either prior to or during the Mediation if necessary to protect the interests of such Party. Further, this Section shall be specifically enforceable.

*[Signature Page Follows]*



1310689 v5

AUG-29-2006  15:29        ANDREW M MARTIN CO, INC                    1 310 323 2265    P.13

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day, month and year first written above.

**ALF MAURITZON, individually ("Mauritzon")**

_____          Dated: August ___, 2006
Alf Mauritzon

**ECO AIR TECHNOLOGIES LLC ("EAT")**

_____          Dated: August ___, 2006
Alf Mauritzon,  Eco Air Technologies LLC

**VIPER HOLDINGS LLC ("Viper")**

_____          Dated: August 28 2006
Cliff Miller

**CLIFF MILLER, individually ("Miller")**

_____          Dated: August 28 2006
Cliff Miller

**ION INVESTMENT PARTNERS, LLC ("ION")**

BY _____      Dated: August 22, 2006
Tim Bender, Its Managing Member

13

1310689 v5

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day, month and year first written above.

**ALF MAURITZON, individually ("Mauritzon")**

Alf Mauritzon

Dated: August 22nd, 2006

**ECO AIR TECHNOLOGIES LLC ("EAT")**

Alf Mauritzon, Eco Air Technologies LLC

Dated: August 22nd, 2006

**VIPER HOLDINGS LLC ("Viper)**

Cliff Miller

Dated: August ___, 2006

**CLIFF MILLER, individually ("Miller"**

Cliff Miller

Dated: August ___, 2006

**ION INVESTMENT PARTNERS, LLC ("ION")**

By_____
Tim Bender, Its Managing Member

Dated: August ___, 2006

# EXHIBIT 3



SQUIRE, SANDERS & DEMPSEY L.L.P.

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498

Office: +1.602.528.4000
Fax: +1.602.253.8129

Direct Dial: 602.528.4122
drrogers@ssd.com

**FEDERAL EXPRESS**

January 11, 2008

Mr. Larry Sunshine
86 Windsor Road
Ryebrook NY, 10573-2119

Re:    **IONz Intellectual Property**

Dear Mr. Sunshine:

We represent IONz International, Inc. ("IONz"). As a former Vice President of IONz, you are aware that IONz designs and manufactures innovative systems for cleaning air using plasma technology. This technology was acquired by IONz from Eco Ion Technologies, LLC (dba Bentax USA), is confidential and protected under Arizona trade secret laws. It has recently come to IONz's attention that certain persons or entities may be unlawfully using IONz's confidential information in an attempt to compete with IONz. As a former executive who had access to IONz confidential and proprietary information, you owe IONz a continuing duty not to disclose or use any of IONz's confidential information for any purpose. To avoid any misunderstanding in the future, we want to explain the scope of some of IONz's intellectual property.

(1)    Copyrights. IONz's prior and current websites and literature are protected by copyright. Any unauthorized copying could constitute willful copyright infringement and the infringer could be required to pay enhanced damages and attorney's fees if the matter were litigated. 17 U.S.C. § 501 et seq.

(2)    Product Configurations and Website Layout. Each of IONz's product configurations and its website layout is protectable as trade dress and any unauthorized copying of either could be actionable under federal, state and common-law unfair competition laws. See, e.g., 15 U.S.C. § 1125(a). Moreover, an intentional copying could entitle IONz to enhanced damages and attorney's fees if the matter were litigated. 15 U.S.C. § 1117.

SQUIRE, SANDERS & DEMPSEY L.L.P.

Mr. Larry Sunshine
January 11, 2008
Page 2

(3)  Trade Secrets.  All confidential information related to IONz's designs, costs, pricing, suppliers or customers is confidential and you owe IONz a continuing duty of confidentiality, particularly given your former position as an executive of IONz. Any unauthorized use or disclosure by you could entitle IONz to injunctive relief and any profits realized as a result of the unauthorized use or disclosure.

(4)  Falsely Attributing Test Results of IONz's Products to Other Entities.  Any reproduction of test reports for IONz's products in which another business's name is falsely substituted for IONz's name could constitute willful false advertising under 15 U.S.C. § 1125. If such a matter were litigated IONz could be entitled to enhanced damages and its attorney's fees and costs. 15 U.S.C. § 1117.

(5)  Substituting Another's Name in Images of IONz's Products.   If the images of IONz's products were tampered to remove IONz's name and substitute another company's name that would constitute reverse passing off and unfair competition under federal law. Such actions would be considered willful and could entitle IONz to enhanced damages and attorney's fees if the matter were litigated. 15 U.S.C. § 1117.

We assume you have not engaged in any of the above activities and have not assisted another in doing so. If you have any questions regarding IONz's intellectual property or your duties as a former executive of IONz we suggest you consult your attorney.

Sincerely yours,

David E. Rogers

SQUIRE, SANDERS & DEMPSEY L.L.P.

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498

Office: +1.602.528.4000
Fax: +1.602.253.8129

**SQUIRE** | LEGAL
**SANDERS** | COUNSEL
| WORLDWIDE

Direct Dial: 602.528.4122
droger@ssd.com

## VIA FEDERAL EXPRESS

January 11, 2008

Mr. Terry A. Busskohl, President
Mr. Clifford Miller, Secretary
Plasma-Air International
360 Connecticut Avenue Suite 103
Norwalk, CT 06854

Re:   **Unauthorized Use of IONz Intellectual Property**

Dear Messrs. Busskohl and Miller:

We represent IONz International, Inc. ("IONz"). As you are aware, IONz designs and manufactures innovative systems for cleaning air using plasma technology. This technology was acquired by IONz from ECO Ion Technologies, LLC (dba Bentax USA) is confidential and protected under Arizona trade secret laws. It has recently come to IONz's attention that Plasma-Air International ("PAI") is violating IONz's rights by engaging in each of the following activities:

(1)   Copyright Infringement. PAI's website located at www.plasmacleanair.com and www.plasma-air.com is essentially a wholesale copy of the text and images of IONz's former website. This unauthorized copying and use constitutes willful copyright infringement and would likely require you to pay enhanced damages and attorney's fees should this matter go to court. 17 U.S.C. § 501 et seq.

(2)   Unfair Competition. Each of IONz's product configurations and its website layout is protectable as trade dress and the intentional, unauthorized copying of each is actionable under federal, state and common-law unfair competition laws. See, e.g., 15 U.S.C. § 1125(a). PAI has intentionally copied the images and layout, which would likely entitle IONz to enhanced damages and attorney's fees should this matter go to court. 15 U.S.C. § 1117

(3)   Potential Theft of Trade Secrets. If PAI has knowingly received confidential information related to IONz's designs, costs, pricing, suppliers or customers from someone that owes IONz a duty of confidentiality (either because that person or entity has (a) executed a confidentiality agreement with

SQUIRE, SANDERS & DEMPSEY L.L.P.

Mr. Terry A. Busskohl
Mr. Clifford Miller
January 11, 2008
Page 2

IONz, and/or (b) has an obligation of confidentiality as a result of a fiduciary relationship with IONz because he/she is a current or former executive or officer of IONz) you could be liable for trade secret theft. This would entitle IONz to injunctive relief and any profits PAI realized as a result of the theft.

(4)    False Advertising.  On PAI's website it falsely states that PAI has acquired the worldwide rights to the Bentax technology.  As you are aware, IONz and not PAI, is the successor to the Bentax technology.  You have also reproduced test reports for IONz's products on your website and falsely substituted PAI's name in the reports.  Each of these violations constitutes willful false advertising under 15 U.S.C. § 1125.  If this matter were to go to court, PAI would likely be liable for enhanced damages and IONz's attorney's fees and costs. 15 U.S.C. § 1117.

(5)    Unfair Competition/Reverse Passing Off.   The images of IONz's products on PAI's website have been tampered to remove IONz's name and substitute your company's name.  This constitutes reverse passing off and unfair competition under federal law.  Again, since your actions were done willfully with the intent to trade off IONz's goodwill, PAI would likely be required to pay enhanced damages and IONz's attorney's fees should this matter go to court. 15 U.S.C. § 1117.

Finally, please be aware that as officers of PAI, you could be held personally liable for the above activities if you are personally directing PAI's infringing actions.

IONz is presently interested in resolving this matter without resorting to litigation, and in view of IONz's legal rights and PAI's actions, must insist that PAI immediately and permanently comply with the following:

(1)    Remove the website posted at www.plasmacleanair.com and www.plasma-air.com (you can, of course, post a website that has not copied IONz's information and that does not infringe IONz's intellectual property) and not post or re-post the website elsewhere.

(2)    Cease all use of IONz's copyrighted text or images in any fashion.

(3)    Do not remove IONz's name from any reproduction of the images of IONz's products.

(4)    Do not add your company name to any reproduction of the images of IONz's products.

(5)    Do not falsely state, imply or suggest that test reports for IONz's products are instead for PAI's products and do not disseminate such false test reports.

(6)    Do not falsely state, imply or suggest that PAI or any entity other than IONz is the successor in the rights to the Bentax technology.

SQUIRE, SANDERS & DEMPSEY L.L.P.

Mr. Terry A. Busskohl
Mr. Clifford Miller
January 11, 2008
Page 3

Please sign below and return the signature page to me by facsimile or email by January 15, 2008 to indicate PAI's acceptance of these terms.

Sincerely yours,

David E. Rogers

DER:dhd

I accept the terms of this letter on behalf of myself and Plasma Air International:

_____
Signature

_____
Printed Name

_____
Title

_____
Date

PHOENIX/422421.1

EXHIBIT 4

1   Donald A. Wall (SBN 007522) dwall@ssd.com
2   David E. Rogers (SBN 019274) drogers@ssd.com
    Thomas C. Raine (SBN 024122) traine@ssd.com
3   Squire, Sanders & Dempsey L.L.P.
    Two Renaissance Square
4   40 North Central Avenue, Suite 2700
5   Phoenix, Arizona  85004-4498
    Telephone:  (602) 528-4000
6   Facsimile:   (602) 253-8129

7
    Attorneys for Plaintiff Aerisa, Inc.
8

9                  IN THE UNITED STATES DISTRICT COURT

10                    FOR THE DISTRICT OF ARIZONA

11
    AERISA, INC., a Delaware corporation,     )  Case No: _____
12                                            )
                   Plaintiff,                 )
13                                            )
                                              )  **COMPLAINT**
14        vs.                                 )
                                              )
15  PLASMA-AIR INTERNATIONAL, a               )  (Breach of Fiduciary Duty; Misappropriation
16  Connecticut corporation; and TERRY A.     )  of Trade Secrets; Unfair Competition, False
    BUSSKOHL, CLIFFORD MILLER,                 )  Advertising and Copyright Infringement)
17  LAWRENCE SUNSHINE, and JOHN               )
    COLLINS, individuals,                     )  (Jury Trial Demanded)
18                                            )
19                 Defendants.                )
    _____   )
20
          Plaintiff Aerisa, Inc., formerly known as IONz International, Inc. ("Aerisa"), for its
21
    Complaint against defendants Plasma-Air International ("Plasma-Air"), Terry A. Busskohl
22
    ("Busskohl"), Clifford Miller ("Miller"), Lawrence Sunshine ("Sunshine"), and John Collins
23
    ("Collins") (collectively "Defendants"), alleges as follows:
24
                      **PARTIES, JURISDICTION, AND VENUE**
25
          1.      This is a civil action arising under the United States Trademark Act of 1946, as
26
    amended, 15 U.S.C. §§ 1051, et seq. ("Lanham Act"), for unfair competition and false
27
    representations, descriptions, and designations of origin, under 17 U.S.C. §§ 101, et seq. for
28
    copyright infringement, and under the laws of the State of Arizona regarding protection of trade

secrets, unfair competition, and fiduciary duties.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and under the principles of supplemental jurisdiction.

2.    Aerisa is a Delaware corporation with its principal place of business at 9035 East Pima Center Parkway, Suite 11, Scottsdale, Arizona  85258.  In January 2008, Aerisa changed its name from IONz International, Inc. to Aerisa, Inc.  Aerisa designs and manufactures innovative systems for cleaning air using plasma technology.

3.    On information and belief, Plasma-Air is a Connecticut corporation with its principal place of business at 59 Peach Hill Road, Darien, Connecticut  06820.

4.    Busskohl is the president and treasurer of Plasma-Air.  Upon information and belief, Busskohl is a resident of the State of Connecticut.

5.    Miller is the secretary of Plasma-Air and an Aerisa shareholder.  Upon information and belief, Miller is a resident of the State of California.

6.    Sunshine was employed with Aerisa as its Vice President of Sales.  Upon information and belief, Sunshine is a resident of the State of Connecticut.

7.    Collins was employed with Aerisa as its Director of Engineering.  Upon information and belief, Collins is a resident of the State of Connecticut.

8.    Sunshine and Collins, while employed with Aerisa, disclosed confidential and trade secret information of Aerisa to Plasma Air without authorization by Aerisa.

9.    Sunshine and Collins, while employed by Aerisa, diverted Aerisa's corporate opportunities to Plasma-Air and/or to defendant Busskohl and/or to defendant Miller.

10.    Defendants are aware of Aerisa.

11.    Defendants are aware that Aerisa is located in Scottsdale, Arizona.

12.    Defendants intentionally copied portions of Aerisa's copyrighted website.

13.    Defendants intentionally copied test reports for Aerisa's products and inserted Plasma-Air's name into the test reports to make it look as if the test reports related to Plasma-Air's products.

14.    Defendants intentionally state on their website that Plasma-Air is the successor in interest to technology previously owned by ECO Ion Technologies, LLC (dba Bentax USA) (hereafter, "Bentax").

15.    Neither Plasma-Air nor any of the other Defendants are the legal successor in interest to the Bentax technology.

16.    Aerisa is the legal successor interest to the Bentax technology.

17.    Defendants' statement that Plasma-Air is the successor in interest to the Bentax technology is knowingly false.

18.    Defendants have intentionally copied pictures of Aerisa's products, removed the name "IONz International" from the pictures and inserted the name "Plasma-Air" to make it appear as if Aerisa's products are Plasma-Air's products.

19.    Personal jurisdiction is proper in this Court because (a) Defendants' actions complained of above were done with the intent to harm Aerisa, which Defendants know is located in Scottsdale, Arizona; (b) Miller has visited Aerisa in this District for the purpose of discussing and learning about the subject matter relevant to this Complaint; (c) Sunshine and Collins were senior employees of Aerisa while it was headquartered in Arizona and had numerous contacts with, and engaged in regular activity in, persons in Arizona; (d) Defendants market to and solicit business from customers and prospective customers in Arizona; (e) Miller purchased shares of common stock of Aerisa; (f) Defendants copied the website and products of an Arizona-based company; (g) Defendants have knowingly and deliberately caused economic harm to an Arizona-based company; and (h) Sunshine and Collins received salary and other benefits from and through an Arizona bank account for an Arizona-based company.

20.    Venue is proper herein pursuant to 28 U.S.C. § 1391 because the acts complained of occurred in or were directed to Aerisa in this District and Defendants Miller and Sunshine have visited Aerisa in this District for the purpose of discussing and learning about the subject matter relevant to this Complaint.

## GENERAL ALLEGATIONS

### Defendant Sunshine and Collins' Improper Disclosure and Use of
### Aerisa's Confidential, Proprietary, and Trade Secret Information.

21.    Sunshine and Collins are former high-level employees of Aerisa who have been using, and continue to use, Aerisa's confidential and trade secret information to unfairly compete in the air cleaning technology marketplace.

22.    Sunshine was employed by Aerisa between August 16, 2006 and October 26, 2007 as Aerisa's Vice President of Sales.

23.    Collins was employed by Aerisa between August 16, 2006 and May 14, 2007 as Aerisa's Director of Engineering.

24.    Both Collins and Sunshine, by virtue of their positions with Aerisa, had access to and regularly referenced Aerisa's confidential, proprietary, and trade secret information.

25.    On information and belief, Collins and Sunshine have used Aerisa's confidential information on behalf of Plasma-Air.

26.    Aerisa's confidential, proprietary, and trade secret information includes, but is not limited to, (a) the identity of its customers and potential customers, (b) the identity of its suppliers and potential suppliers, (c) information about its customers' orders and purchasing habits, (d) its marketing techniques and plans, (e) its product information, design and development information, (f) technical specifications for its products, (g) its business plans and strategies, and (h) its cost and pricing information.

27.    While employed by Aerisa, Collins intentionally provided Aerisa's confidential and trade secret information, including Aerisa's confidential product specifications, to defendant Busskohl, who proceeded to submit orders to Aerisa's vendors using Aerisa's exact product specifications.

28.    Collins was aware that Aerisa's confidential product specifications were trade secrets that were not to be disclosed outside of the company.

29.   While employed by Aerisa, Sunshine surreptitiously diverted sales leads from customer inquiries received on Aerisa's website to defendant Plasma-Air, which then shipped products to Aerisa's customers.

30.   Sunshine was aware that the identity and contact information for Aerisa's potential clients was confidential information that was not to be revealed outside of the company.

**Defendants' Improper Copying and Use of**
**Aerisa's Copyrighted Website and Images**

31.   Aerisa's current website is located at www.aerisa.com.  Aerisa's former website was located at www.ionzinc.com (the "Copied Website").

32.   Aerisa's current website and the Copied Website are protected under United States copyright laws.

33.   As the owner of the Copied Website, Aerisa has the exclusive right to reproduce the Copied Website or to prepare derivative works therefrom.

34.   Plasma-Air's website, which is located at www.plasmacleanair.com and www.plasma-air.com (collectively, the "Plasma-Air Website"), is essentially a wholesale copy of the Copied Website.

35.   Plasma-Air's copying of the Copied Website was done without Aerisa's authorization.

36.   The Plasma-Air Website contains images of Aerisa's products that have been tampered with to remove the name "IONz International" and substitute the name "Plasma-Air."

37.   The actions complained of in the preceding paragraph are likely to create the false impression that Aerisa's products are made by, originate from, or are associated with Plasma-Air.

38.   The removal of the name "IONz International" from Aerisa's product images was done without Aerisa's authorization.

39.   The Plasma-Air Website reproduces Aerisa's test reports for Aerisa's products, but has substituted Plasma-Air's name in the test reports in place of "IONz International."

40.    The actions complained of in the preceding paragraph are likely to create the false impression that Aerisa's test reports relate to products manufactured by, originating from, or sponsored by Plasma-Air.

41.    The copying of and tampering with Aerisa's test reports was done without Aerisa's authorization.

42.    On the Plasma-Air Website, Plasma-Air falsely claims that Plasma-Air is the successor-in-interest to the worldwide rights in the "Bentax" plasma technology.

43.    Aerisa is the successor-in-interest to the rights in the "Bentax" plasma technology.

44.    Upon information and belief, each of the above acts were performed by or at the direction of Busskohl, Miller, Sunshine, and Collins to benefit themselves and Plasma-Air.

45.    On January 11, 2008, Aerisa wrote to defendants Plasma-Air, Miller, and Busskohl to demand that they cease the unfair, false, and infringing activities complained of herein. A true and correct copy of that letter is attached hereto as Exhibit 1.

46.    On January 11, 2008, Aerisa separately wrote to Sunshine to advise him that he had a continuing duty as a former employee to not use or disclose any Aerisa confidential and proprietary information. A true and correct copy of that letter is attached hereto as Exhibit 2.

47.    None of the Defendants have responded substantively to the January 11, 2008 letters.

48.    As of the filing of this Complaint, Defendants' actions complained of herein have not ceased.

## COUNT I
## (BREACH OF FIDUCIARY DUTY)

49.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

50.    At all relevant times, Sunshine and Collins were high-level employees of Aerisa and owed fiduciary duties to Aerisa.

51.    As Aerisa's Director of Engineering, Collins was entrusted with Aerisa's confidential, trade secret and proprietary information, including without limitation the identity of Aerisa's customers and sales leads, and Aerisa's product specifications.

52.    As Aerisa's Vice President of Sales, Sunshine was entrusted with Aerisa's confidential, trade secret and proprietary information, including without limitation the identity of Aerisa's customers and sales leads, and Aerisa's product specifications.

53.    Through the conduct described herein, Collins and Sunshine have used their knowledge of Aerisa's confidential, trade secret, and proprietary information to directly or indirectly compete with Aerisa, to interfere with the contractual relations between Aerisa and its customers and/or potential customers, and to enter and/or attempt to enter into contracts with customers and/or potential customers of Aerisa and to provide and/or offer such customers products that compete with Aerisa. Collins and Sunshine have thereby acted in direct opposition to the interests of Aerisa and have usurped opportunities and profits that belong to Aerisa.

54.    Through the conduct described herein, Collins and Sunshine breached the duty of loyalty owed to Aerisa while they were still employed by Aerisa by engaging in such conduct for their own and/or others' behalf.

55.    The wrongful acts described herein, have proximately injured and impaired Aerisa.

56.    As a direct and proximate result of Collins' and Sunshine's wrongful actions, Aerisa has suffered, and will continue to suffer, damages and injury in an amount to be proven at trial. Aerisa is entitled to recover such damages from Collins and Sunshine.

57.    Collins' and Sunshine's breaches of their fiduciary duties were performed willfully and maliciously so as to justify an award of punitive damages.

## COUNT II

## (MISAPPROPRIATION OF TRADE SECRETS PURSUANT TO ARIZONA'S TRADE SECRETS ACT)

58.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

59.    As set forth herein, during Collins' role as Director of Engineering and Sunshine's role as Vice President of Sales, Collins and Sunshine acquired knowledge of trade secrets owned by Aerisa, as defined in A.R.S. § 44-401(4).

60.    The Aerisa trade secrets are sufficiently secret to derive independent economic value, actual or potential, from not being generally known, and not being readily ascertainable by proper means, to other persons who can obtain economic value from their disclosure or use.

61.    The Aerisa trade secrets are the subject of efforts by Aerisa that are reasonable under the circumstances to maintain their secrecy.

62.    The Aerisa trade secrets were acquired under circumstances giving rise to a duty by Collins and Sunshine to maintain their secrecy.

63.    Aerisa entrusted its trade secrets to Collins and Sunshine to enable them to perform their duties as Aerisa employees.

64.    Collins' and Sunshine's fiduciary duties as high-level employees create a duty not to divulge Aerisa's trade secrets.

65.    Collins and Sunshine know, or have reason to know, that their knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy.

66.    Aerisa did not give Collins or Sunshine direct or implied consent to disclose or use Aerisa's trade secrets in the wrongful manner described herein.

67.    Collins' and Sunshine's use of Aerisa's trade secrets to divert customers from Aerisa constitutes a misappropriation of Aerisa's trade secrets, which Aerisa is entitled to enjoin pursuant to A.R.S. § 44-402.

68.    As a direct and proximate result of the wrongful acts described herein, Aerisa sustained, and continues to sustain, immediate and irreparable harm and injury, including, but not limited to, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity and/or expectancy.

69.    There is a substantial risk that Collins and Sunshine will continue to irreparably injure Aerisa until they are preliminarily and/or permanently enjoined.

70.     Aerisa has no adequate remedy at law and is entitled to injunctive relief herein.

71.     In the alternative, and/or in addition to the irreparable injury described herein, as a direct and proximate result of the conduct described herein, Aerisa has sustained, and will continue to sustain, actual and/or consequential damages in an amount to be proven at trial.

72.     Aerisa is entitled to recover such damages from Collins and Sunshine pursuant to A.R.S. § 44-403(A).

73.     The acts described herein were so willful and malicious that they warrant an award of exemplary damages to Aerisa pursuant to A.R.S. § 44-403(B).

74.     Because Collins and Sunshine's conduct constitutes willful and malicious trade secret misappropriation, Aerisa is entitled to an award of its attorneys' fees pursuant to A.R.S. § 44-404(3).

## COUNT III
## (COPYRIGHT INFRINGEMENT)

75.     Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

76.     Defendants have infringed Aerisa's copyrights by reproducing the text and images from the Copied Website on the Plasma-Air Website and by reproducing, without authorization, images of Aerisa's products and test reports.

77.     The infringing acts of Defendants, especially in light of their failure to remove the images and text after due demand, constitute willful copyright infringement.

78.     As a proximate result of Defendants' actions, Aerisa has suffered damages in an amount to be proven at trial.

79.     There is a substantial risk that Defendants will continue to irreparably injure Aerisa unless Defendants are preliminarily and/or permanently enjoined from the acts complained of here.

# COUNT IV

## (TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(A))

80.     Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

81.     The layout and design of the Copied Website is inherently distinctive.

82.     The layout and design of the Copied Website has acquired secondary meaning to the relevant purchasing public as a result of its long period of continuous use.

83.     The layout and design of the Copied Website is not functional.

84.     The Plasma-Air Website is nearly identical in layout and design to the Copied Website making it confusingly similar in appearance to the Copied Website.

85.     By utilizing the layout and design of the Copied Website in the Plasma-Air Website, Defendants are likely to cause confusion in the marketplace by creating the false and erroneous impression that defendant Plasma-Air's products were, and are, affiliated, connected, associated, sponsored, originated, or approved by Aerisa.

86.     Defendants' false, mistaken, misleading, and deliberate representations continue in the marketplace unabated at the present time.

87.     Defendants' activities complained of herein constitute trade dress infringement in violation of § 43(a) of the Lanham Act.

88.     Defendants' past and ongoing harm to Aerisa is irreparable, continuing to the present and foreseeable future, and is a serious and unmitigated hardship.

89.     As a direct and proximate cause of these acts, Aerisa has been damaged in an amount not totally ascertainable and will continue to suffer irreparable injury to its goodwill, its rights, and to its business, unless and until Defendants (and others in active concert) are restrained from continuing their wrongful acts.

90.     There is a substantial risk that Defendants will continue to irreparably injure Aerisa unless Defendants are preliminarily and/or permanently enjoined.

91.    Defendants' acts complained of herein were knowing, willful, performed intentionally, fraudulent, and without extenuating circumstances, and render this case so exceptional so as to justify an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT V

## (REVERSE PASSING OFF UNDER 15 U.S.C. § 1125(A))

92.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

93.    Aerisa, as described above, is the true owner, author, originator, and source of the images of its products.

94.    Defendants copying of the images of Aerisa's products, removal of the name "IONz International" and substitution of the name "Plasma-Air" falsely and misleadingly represent to relevant consumers that Plasma-Air manufactures, designs, sells, sponsors, or is associated with products actually designed, manufactured for and sold by Aerisa.

95.    Defendants' activities complained of herein are likely to cause confusion in the marketplace by creating the false and erroneous impression that Aerisa's products were, and are, affiliated with, connected with, associated with, sponsored, designed, sold, or approved by Plasma-Air, or originated from Plasma-Air.

96.    Defendants' false, mistaken, misleading, and deliberate representations continue in the marketplace unabated at the present time.

97.    There is a substantial risk that Defendants will continue to irreparably injure Aerisa unless Defendants are preliminarily and/or permanently enjoined.

98.    Defendants' activities complained of herein constitute reverse passing off in violation of § 43(a) of the Lanham Act.

99.    Defendants' past and ongoing harm of Aerisa is irreparable, continuing to the present and foreseeable future, and is a serious and unmitigated hardship.

100.    Defendants' acts complained of herein were knowing, willful, performed intentionally, fraudulent, and without extenuating circumstances, and render this case so exceptional so as to justify an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT VI**

**(FALSE ADVERTISING UNDER 15 U.S.C. § 1125)**

101.   Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

102.   Aerisa owns and is the successor-in-interest to the worldwide rights to the "Bentax" plasma technology.

103.   Defendants have asserted, and continue to assert on the Plasma-Air Website, that Plasma-Air is the successor-in-interest to the worldwide rights to the "Bentax" plasma technology, which misrepresents the nature, characteristics, qualities, and origin of Plasma-Air's products and business in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

104.   Defendants' misrepresentation that Plasma-Air is the successor-in-interest to the "Bentax" plasma technology is a material misrepresentation likely to deceive a substantial segment of relevant consumers.

105.   On information and belief, Defendants intend that potential customers will consider the false information that Plasma-Air is the successor-in-interest to the Bentax technology when making purchasing decisions.

106.   As a direct and proximate cause of Defendants' conduct, Aerisa has been damaged in an amount not totally ascertainable and will continue to suffer irreparable injury to its goodwill, rights and businesses, unless and until Defendants (and others in active concert) are restrained from continuing their wrongful acts.

107.   Aerisa has no adequate remedy at law and is entitled to an injunction.

108.   Defendants' acts complained of herein were knowing, willful, performed intentionally, fraudulent, and without extenuating circumstances, and render this case so exceptional so as to justify an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**COUNT VII**

**(FALSE ADVERTISING UNDER 15 U.S.C. § 1125)**

109.   Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

110.  Defendants have reproduced Aerisa's product test reports on the Plasma-Air Website and have substituted Plasma-Air's name in the test reports, which misrepresents the nature, characteristics, qualities, and origin of Plasma-Air's products in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

111.  Defendants' misrepresentations described in the preceding paragraph are material and likely to deceive a substantial segment of relevant consumers into believing the test reports actually relate to products manufactured, designed, developed, sponsored by, or associated with Plasma-Air.

112.  Defendants intend that relevant consumers will consider the test reports complained of herein when making purchasing decisions.

113.  As a direct and proximate cause of Defendants' conduct, Aerisa has been damaged in an amount not totally ascertainable and will continue to suffer irreparable injury to its goodwill, rights and businesses, unless and until Defendants (and others in active concert) are restrained from continuing their wrongful acts.

114.  Aerisa has no adequate remedy at law and is entitled to an injunction.

115.  Defendants' acts complained of herein were knowing, willful, performed intentionally, fraudulent, and without extenuating circumstances, and render this case so exceptional so as to justify an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**WHEREFORE**, Aerisa requests that judgment be entered against Defendants as follows:

A.    To enjoin Defendants' use of the Copied Website;

B.    To enjoin Defendants from making false claims or statements about Aerisa's "Bentax" plasma technology and, in particular, to cease stating that Plasma-Air is the successor-in-interest to the technology;

C.    To enjoin Defendants from copying images of Aerisa's products and from altering the images to remove the name of Aerisa or of IONz International and/or placing Plasma-Air's name on the images;

D.    To enjoin Defendants from reproducing Aerisa' test reports and from substituting the name "Plasma-Air" in those test reports;

E.     To enjoin Defendants from using or disclosing Aerisa's confidential information.

F.     For actual damages and enhanced damages in the amount of three times Defendants' profits or Aerisa's lost profits, whichever is greater, pursuant to 15 U.S.C. § 1117;

G.     For Aerisa's attorneys' fees and costs pursuant 15 U.S.C. § 1117;

H.     For damages pursuant to A.R.S. § 44-403(A);

I.     For exemplary damages pursuant to A.R.S. § 44-403(B);

J.     For attorney's fees pursuant to A.R.S. § 44-404(3); and

K.     For such other relief as the Court may deem appropriate.

### **DEMAND FOR JURY TRIAL**

Aerisa, Inc. hereby demands a jury trial as provided by Rule 38(c) of the Federal Rules of Civil Procedure.

DATED this 4th day of February, 2008.

By: s/David E. Rogers
    Donald A. Wall
    David E. Rogers
    Thomas C. Raine
    Squire, Sanders & Dempsey L.L.P.
    Two Renaissance Square
    40 North Central Avenue, Suite 2700
    Phoenix, Arizona  85004-4498
    Telephone:  (602) 528-4000
    Facsimile:   (602) 253-8129

    Attorneys for Plaintiff Aerisa, Inc.

EXHIBIT 5



**SQUIRE, SANDERS & DEMPSEY L.L.P.**

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498

Office: +1.602.528.4000
Fax: +1.602.253.8129

Direct Dial: 602.528.4122
drogers@ssd.com

**VIA FEDERAL EXPRESS**

February 5, 2008

Mr. Terry A. Busskohl, President
Mr. Clifford Miller, Secretary
Plasma-Air International
360 Connecticut Avenue, Suite 103
Norwalk, CT 06854

Re:   **Unauthorized Use of Aerisa's Intellectual Property**

Dear Messrs. Busskohl and Miller:

Enclosed is a copy of a Complaint that was filed yesterday in federal court in Phoenix.   Aerisa, Inc. (formerly IONz International, Inc.) is still interested in the possibility of settling this matter informally in accordance with the terms of my letter of January 11, 2007, a copy of which is also enclosed.  Please have your attorney contact me if you would like to discuss settlement.

Sincerely yours,

David E. Rogers

DER/dhd
Enclosures

PHOENIX 425457.1

CINCINNATI · CLEVELAND · COLUMBUS · HOUSTON · LOS ANGELES · MIAMI · NEW YORK · PALO ALTO · PHOENIX · SAN FRANCISCO · TALLAHASSEE · TAMPA · TYSONS CORNER
WASHINGTON DC · WEST PALM BEACH | CARACAS · RIO DE JANEIRO · SANTO DOMINGO | BRATISLAVA · BRUSSELS · BUDAPEST · FRANKFURT · LONDON · MOSCOW
PRAGUE · WARSAW | BEIJING · HONG KONG · SHANGHAI · TOKYO | ASSOCIATED OFFICES: BUCHAREST · BUENOS AIRES · DUBLIN · KYIV · SANTIAGO
www.ssd.com



SQUIRE, SANDERS & DEMPSEY L.L.P.

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498

Office: +1.602.528.4000
Fax: +1.602.253.8129

Direct Dial: 602.528.4122
drogers@ssd.com

**VIA FEDERAL EXPRESS**

February 6, 2008

Mr. Larry Sunshine
86 Windsor Road
Rye Brook NY, 10573-2119

Re:    **Aerisa Intellectual Property**

Dear Mr. Sunshine:

Enclosed is a copy of a Complaint that was filed in Federal District Court in Arizona on Monday. Please have your lawyer contact me if you would like to discuss settlement.

Sincerely yours,

David E. Rogers

DER/dhd
Enclosure

PHOENIX/425594.1

CINCINNATI • CLEVELAND • COLUMBUS • HOUSTON • LOS ANGELES • MIAMI • NEW YORK • PALO ALTO • PHOENIX • SAN FRANCISCO • TALLAHASSEE • TAMPA • TYSONS CORNER
WASHINGTON DC • WEST PALM BEACH | CARACAS • RIO DE JANEIRO • SANTO DOMINGO | BRATISLAVA • BRUSSELS • BUDAPEST • FRANKFURT • LONDON • MOSCOW
PRAGUE • WARSAW | BEIJING • HONG KONG • SHANGHAI • TOKYO | ASSOCIATED OFFICES: BUCHAREST • BUENOS AIRES • DUBLIN • KYIV • SANTIAGO
www.ssd.com



 | LEGAL
COUNSEL
WORLDWIDE

SQUIRE, SANDERS & DEMPSEY L.L.P.

Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498

Office: +1.602.528.4000
Fax: +1.602.253.8129

Direct Dial: 602.528.4122
drogers@ssd.com

**VIA FEDERAL EXPRESS**

February 6, 2008

Mr. John Collins
10 Chasmars Pond Road
Darien CT 06820-4913

Re:   **Aerisa Intellectual Property**

Dear Mr. Collins:

Enclosed is a copy of a Complaint that was filed in Federal District Court in Arizona on Monday. Please have your lawyer contact me if you would like to discuss settlement.

Sincerely yours,

David E. Rogers

DER/dhd
Enclosure

PHOENIX/455961

CINCINNATI · CLEVELAND · COLUMBUS · HOUSTON · LOS ANGELES · MIAMI · NEW YORK · PALO ALTO · PHOENIX · SAN FRANCISCO · TALLAHASSEE · TAMPA · TYSONS CORNER
WASHINGTON DC · WEST PALM BEACH | CARACAS · RIO DE JANEIRO · SANTO DOMINGO | BRATISLAVA · BRUSSELS · BUDAPEST · FRANKFURT · LONDON · MOSCOW
PRAGUE · WARSAW | BEIJING · HONG KONG · SHANGHAI · TOKYO | ASSOCIATED OFFICES: BUCHAREST · BUENOS AIRES · DUBLIN · KYIV · SANTIAGO

www.ssd.com

EXHIBIT 6

Donald A. Wall (SBN 007522) dwall@ssd.com
David E. Rogers (SBN 019274) drogers@ssd.com
Brian M. McQuaid (SBN 019541) bmcquaid@ssd.com
Squire, Sanders & Dempsey L.L.P.
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004-4498
Telephone:  (602) 528-4000
Facsimile:   (602) 253-8129

Attorneys for Plaintiff Aerisa, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AERISA, INC, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PLASMA-AIR INTERNATIONAL, a Connecticut corporation; TERRY A. BUSSKOHL, CLIFFORD MILLER, LAWRENCE SUNSHINE, and JOHN COLLINS, individuals,<br><br>Defendants. | ) **CV 08-227-PHX-NVW**<br>)<br>) **FIRST AMENDED COMPLAINT**<br>)<br>) (Breach of Fiduciary Duty; Misappropriation<br>) of Trade Secrets; Unfair Competition, False<br>) Advertising and Copyright Infringement)<br>)<br>) (Jury Trial Demanded)<br>)<br>)<br>)<br>) |

Plaintiff Aerisa, Inc., formerly known as IONz International, Inc. ("Aerisa"), for its Complaint against defendants Plasma-Air International ("Plasma-Air"), Terry A. Busskohl ("Busskohl"), Clifford Miller ("Miller"), Lawrence Sunshine ("Sunshine"), and John Collins ("Collins") (collectively "Defendants"), alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This is a civil action arising under the United States Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, et seq. ("Lanham Act"), for unfair competition and false representations, descriptions, and designations of origin, under 17 U.S.C. §§ 101, et seq. for copyright infringement, and under the laws of the State of Arizona regarding protection of trade

secrets, unfair competition, and fiduciary duties. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and under the principles of supplemental jurisdiction.

2.     Aerisa is a Delaware corporation with its principal place of business at 9035 East Pima Center Parkway, Suite 11, Scottsdale, Arizona 85258. In January 2008, Aerisa changed its name from IONz International, Inc. to Aerisa, Inc. Aerisa designs and manufactures innovative systems for cleaning air using plasma technology.

3.     On information and belief, Plasma-Air is a Connecticut corporation with its principal place of business at 59 Peach Hill Road, Darien, Connecticut 06820.

4.     Busskohl is the president and treasurer of Plasma-Air. Upon information and belief, Busskohl is a resident of the State of Connecticut.

5.     Miller is the secretary of Plasma-Air and an Aerisa shareholder. Upon information and belief, Miller is a resident of the State of California.

6.     Miller is a party to an agreement entitled "Agreement Relating to Wind Up of ECO ION Technologies, LLC" by which he irrevocably assigned and transferred the rights he had in Aerisa's technology to IONz International, Inc., which is now Aerisa.

7.     A true and correct copy of the Wind-Up Agreement (without exhibits) is attached hereto as Exhibit 1.

8.     The Wind-Up Agreement designates that Arizona law will govern all disputes.

9.     Sunshine was employed with Aerisa as its Vice President of Sales. Upon information and belief, Sunshine is a resident of the State of Connecticut.

10.     Collins was employed with Aerisa as its Director of Engineering. Upon information and belief, Collins is a resident of the State of Connecticut.

11.     Sunshine and Collins, while employed with Aerisa, disclosed confidential and trade secret information of Aerisa to Plasma-Air without authorization by Aerisa.

12.     Sunshine and Collins, while employed by Aerisa, diverted Aerisa's corporate opportunities to Plasma-Air and/or to defendant Busskohl and/or to defendant Miller.

13.     Defendants are aware of Aerisa.

14.     Defendants are aware that Aerisa is located in Scottsdale, Arizona.

15. Plasma-Air has intentionally copied portions of Aerisa's copyrighted website.

16. Plasma-Air has intentionally copied test reports for Aerisa's products and inserted Plasma-Air's name into the test reports to make it look as if the test reports related to Plasma-Air's products.

17. Plasma-Air intentionally states on its website that Plasma-Air is the successor in the worldwide rights to technology previously owned by ECO Ion Technologies, LLC (dba Bentax USA) (hereafter, "Bentax").

18. Neither Plasma-Air nor any of the other Defendants is the legal successor in interest to the worldwide rights in the Bentax technology.

19. Aerisa is the legal successor in interest to the Bentax technology.

20. Plasma-Air's statement that Plasma-Air is the successor in interest to the Bentax technology is knowingly false.

21. Plasma-Air has intentionally copied pictures of Aerisa's products, removed the name "IONz International" from the pictures and inserted the name "Plasma-Air" to make it appear as if Aerisa's products are Plasma-Air's products.

22. Plasma-Air has placed alleged testimonials for its products on its website.

23. The testimonials referred to in the preceding paragraph are actually for Bentax's or Aerisa's products.

24. Plasma-Air's allegation that the testimonials referenced above are for Plasma-Air's products are knowingly and intentionally false.

25. Personal jurisdiction is proper in this Court because (a) Defendants' actions complained of above were done with the intent to harm Aerisa, which Defendants know is located in Scottsdale, Arizona; (b) Miller has visited Aerisa in this District for the purpose of discussing and learning about Aerisa's business and business plans and the knowledge he gained during these visits is relevant to the Counts in this Complaint; (c) Sunshine and Collins were senior employees of Aerisa, which is headquartered in Arizona, and had numerous contacts and engaged in regular activity with persons in Arizona that relate to one or more of the counts in this Complaint; (d) Defendants market to and solicit business from customers and prospective

-3-

customers in Arizona; (e) Miller purchased shares of common stock of Aerisa, which is based in Arizona; (f) Plasma-Air intentionally copied portions of the website and photographs of products of Aerisa, which is an Arizona-based company; (g) Plasma-Air intentionally removed IONz International's name from products and inserted the name "Plasma-Air," (h) Plasma-Air intentionally removed IONz International's name from test reports and inserted the name Plasma-Air; (i) Plasma-Air knowingly and deliberately caused economic harm to Aerisa, which is an Arizona-based company; (j) Busskohl (the president and treasurer of Plasma-Air) and Miller (the Secretary of Plasma-Air) control Plasma-Air's actions; and (k) Sunshine and Collins received salary and other benefits from Aerisa through an Arizona bank account, while performing acts that relate to at least one of the Counts in this Complaint.

26.    Venue is proper herein pursuant to 28 U.S.C. § 1391 because the acts complained of occurred in this District or were intentionally directed to Aerisa in this District and Defendants Miller and Sunshine have visited Aerisa in this District for the purpose of discussing and learning about information relevant to this Complaint.

## GENERAL ALLEGATIONS

### Defendant Sunshine and Collins' Improper Disclosure and Use of
### Aerisa's Confidential and Trade Secret Information.

27.    Sunshine and Collins are former high-level employees of Aerisa who have been using, and continue to use, Aerisa's confidential and trade secret information in an unauthorized manner, including to compete with Aerisa.

28.    Sunshine was employed by Aerisa between August 16, 2006 and October 26, 2007 as Aerisa's Vice President of Sales.

29.    Collins was employed by Aerisa between August 16, 2006 and May 14, 2007 as Aerisa's Director of Engineering.

30.    Aerisa's confidential and trade secret information includes, but is not limited to, (a) the identity of its customers and potential customers, (b) the identity of its suppliers and potential suppliers, (c) information about its customers' orders and purchasing habits, (d) its marketing techniques and plans, (e) its product information, design and development

information, (f) product specifications, (g) its business plans and strategies, and (h) its cost and pricing information.

31.    Both Collins and Sunshine, by virtue of their positions with Aerisa, had access to and regularly referenced Aerisa's confidential and trade secret information.

32.    On information and belief, Collins and Sunshine have used Aerisa's confidential information on behalf of Plasma-Air.

33.    On information and belief, Collins and Sunshine have without authorization disclosed Aerisa's confidential and trade secret information to Plasma-Air, Miller and Busskohl.

34.    While employed by Aerisa, Collins intentionally provided Aerisa's confidential and trade secret information, including Aerisa's product specifications, to defendant Busskohl, who proceeded to submit orders to Aerisa's vendors using Aerisa's product specifications.

35.    Collins was aware that Aerisa's product specifications were trade secrets that were not to be disclosed outside of Aerisa.

36.    Collins was aware that Aerisa's product specifications were not to be used to compete with Aerisa.

37.    While employed by Aerisa, Sunshine diverted sales leads from customer inquiries to defendant Plasma-Air.

38.    Sunshine was aware that the identity and contact information for Aerisa's potential customers was confidential information that was not to be sent to Plasma-Air.

### Defendants' Improper Copying and Use of Aerisa's Copyrighted Text and Images

39.    Aerisa's current website is located at www.aerisa.com.  Aerisa's former website was located at www.ionzinc.com (the "Copied Website").

40.    A true and correct print out of pages of the Copied Website is attached hereto as Exhibit 2.

41.    Aerisa's current website and the Copied Website are protected under United States copyright laws.

42.    Attached as Exhibit 3 is a true and correct copy of the copyright registration certificate for the Copied Website.

43.    As the owner of the Copied Website, Aerisa has the exclusive right to reproduce the Copied Website.

44.    Plasma-Air's website, which is located at www.plasmacleanair.com and www.plasma-air.com (collectively, the "Plasma-Air Website"), copies many features of the Copied Website.

45.    A true and correct print out of pages of Plasma-Air's Website is attached hereto as Exhibit 4.

46.    Plasma-Air's copying of parts of the Copied Website was done without Aerisa's authorization.

47.    The Plasma-Air Website contains images of Aerisa's products that have been tampered with to remove the name "IONz International" and/or "Bentax USA" and substitute the name "Plasma-Air."

48.    The actions complained of in the preceding paragraph are likely to create the false impression that Aerisa's products are made by, originate from, or are associated with Plasma-Air.

49.    The removal of the name "IONz International" and/or "Bentax USA" from Aerisa's product images was done without Aerisa's authorization.

50.    The Plasma-Air Website reproduces Aerisa's test reports for Aerisa's products, but has substituted Plasma-Air's name in the test reports in place of the name "IONz International."

51.    The actions complained of in the preceding paragraph are likely to create the false impression that Aerisa's test reports relate to products manufactured by, originating from, or sponsored by Plasma-Air.

52.    The copying of and tampering with Aerisa's test reports was done without Aerisa's authorization.

53.    On the Plasma-Air Website, Plasma-Air falsely claims that Plasma-Air is the successor-in-interest to the worldwide rights in the "Bentax" plasma technology.

54.    Aerisa is the successor-in-interest to the rights in the "Bentax" plasma technology.

55.    On Plasma-Air's Website it includes testimonials that Plasma-Air alleges are for its products.

56.    True and correct copies of these testimonials are attached hereto as Exhibit 5.

57.    Some or all of the testimonials referenced above were made before Plasma-Air was formed.

58.    Some or all of the testimonials referenced above relate to the products of Bentax or Aerisa.

59.    Plasma-Air knows that at least some of the testimonials referenced above relate to Bentax's or Aerisa's products and not to Plasma-Air's products.

60.    Upon information and belief, each of the above acts were performed by or at the direction of one or more of Busskohl, Miller, Sunshine, and Collins to benefit themselves and Plasma-Air.

61.    On January 11, 2008, Aerisa (through its attorneys) wrote to defendants Plasma-Air, Miller, and Busskohl to demand that they cease the unfair, false, and infringing activities complained of herein. A true and correct copy of that letter is attached hereto as Exhibit 6.

62.    On January 11, 2008, Aerisa separately wrote to Sunshine to advise him that he had a continuing duty as a former employee to not use or disclose any Aerisa confidential and proprietary information. A true and correct copy of that letter is attached hereto as Exhibit 7.

63.    None of the Defendants have responded substantively to the January 11, 2008 letters.

64.    On February 4, 2008, Aerisa filed a Complaint against Defendants in this Court.

65.    On February 5, 2008, Aerisa (through its attorneys) mailed a courtesy copy of the Complaint to Messrs. Busskohl and Miller and on February 6, 2008 mailed a courtesy copy of the Complaint to Mr. Collins and Mr. Sunshine in an attempt to settle this matter informally.

66.    True and correct copies of the letters referenced in the preceding paragraph are attached hereto as collective Exhibit 8.

67.    None of Defendants have responded to the letters referenced in the preceding paragraph.

68.    On information and belief, as of the filing of this First Amended Complaint, Defendants' actions complained of herein have not ceased.

## COUNT I

### (BREACH OF FIDUCIARY DUTY)

69.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

70.    At all relevant times, Sunshine and Collins were high-level employees of Aerisa and owed fiduciary duties to Aerisa.

71.    As Aerisa's Director of Engineering, Collins was entrusted with Aerisa's confidential and trade secret information, including without limitation the identity of Aerisa's customers and sales leads, and Aerisa's product specifications.

72.    As Aerisa's Vice President of Sales, Sunshine was entrusted with Aerisa's confidential and trade secret information, including without limitation the identity of Aerisa's customers and sales leads, and Aerisa's product specifications.

73.    Through the conduct described herein, Collins and Sunshine have used their knowledge of Aerisa's confidential and trade secret information to directly or indirectly compete with Aerisa, to interfere with the contractual relations between Aerisa and its customers and/or potential customers, and/or to enter or attempt to enter into contracts with customers and/or potential customers of Aerisa.

74.    On information and belief, Collins and Sunshine have acted in direct opposition to the interests of Aerisa and have usurped opportunities that belong to Aerisa.

75.    Through the conduct described herein, Collins and Sunshine breached the duty of loyalty owed to Aerisa while they were still employed by Aerisa by engaging in such conduct for their own and/or others' behalf.

76.    The wrongful acts described herein have proximately injured and impaired Aerisa.

77.    As a direct and proximate result of Collins' and Sunshine's wrongful actions, Aerisa has suffered, and will continue to suffer, damages and injury in an amount to be proven at trial. Aerisa is entitled to recover such damages from Collins and Sunshine.

78.    Collins' and Sunshine's breaches of their fiduciary duties were performed willfully and maliciously so as to justify an award of punitive damages.

## COUNT II
### (MISAPPROPRIATION OF TRADE SECRETS PURSUANT TO
### ARIZONA'S TRADE SECRETS ACT)

79.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

80.    As set forth herein, during Collins' role as Director of Engineering and Sunshine's role as Vice President of Sales, Collins and Sunshine acquired knowledge of trade secrets owned by Aerisa, as defined in A.R.S. § 44-401(4).

81.    Aerisa's trade secrets are sufficiently secret to derive independent economic value, actual or potential, from not being generally known, and not being readily ascertainable by proper means, to other persons.

82.    Aerisa's trade secrets are the subject of efforts by Aerisa that are reasonable under the circumstances to maintain their secrecy.

83.    Aerisa's trade secrets were acquired under circumstances giving rise to a duty by Collins and Sunshine to maintain their secrecy.

84.    Aerisa entrusted its trade secrets to Collins and Sunshine to enable them to perform their duties as Aerisa employees.

85.    Collins' and Sunshine's fiduciary duties as high-level employees of Aerisa created a duty not to divulge Aerisa's trade secrets.

86.    Collins and Sunshine know, or have reason to know, that their knowledge of Aerisa's trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of such trade secrets.

87.    Aerisa did not give Collins or Sunshine direct or implied consent to use Aerisa's trade secrets other than to further the business interests of Aerisa.

88.    Collins' and Sunshine's use of Aerisa's trade secrets to compete against Aerisa constitutes a misappropriation of Aerisa's trade secrets, which Aerisa is entitled to enjoin pursuant to A.R.S. § 44-402.

89.    Collins' and Sunshine's disclosure of Aerisa's trade secrets to Plasma-Air, Miller and/or Busskohl constitutes a misappropriation of Aerisa's trade secrets, which Aerisa is entitled to enjoin pursuant to A.R.S. § 44-402.

90.    As a direct and proximate result of the wrongful acts described herein, Aerisa sustained, and continues to sustain, immediate and irreparable harm and injury, including, but not limited to, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity and/or expectancy.

91.    There is a substantial risk that Collins and Sunshine will continue to use and disclose Aerisa's trade secrets until they are preliminarily and/or permanently enjoined from doing so.

92.    Aerisa has no adequate remedy at law and is entitled to injunctive relief herein.

93.    In the alternative, and/or in addition to the irreparable injury described herein, as a direct and proximate result of the conduct described herein, Aerisa has sustained, and will continue to sustain, actual and/or consequential damages in an amount to be proven at trial.

94.    Aerisa is entitled to recover damages as described in the preceding paragraph from Collins and Sunshine pursuant to A.R.S. § 44-403(A).

95.    The acts described herein are willful and malicious and warrant an award of exemplary damages to Aerisa pursuant to A.R.S. § 44-403(B).

96.    Because Collins and Sunshine's conduct constitutes willful and malicious trade secret misappropriation, Aerisa is entitled to an award of its attorneys' fees pursuant to A.R.S. § 44-404(3).

**COUNT III**

**(COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501 et seq.)**

97.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

98.    Plasma-Air has infringed Aerisa's copyrights by reproducing certain text and images belonging to Aerisa, including text and images from the Copied Website, on the Plasma-Air Website.

99.    On information and belief, Busskohl (Plasma-Air's president and treasurer) and Miller (Plasma-Air's secretary) personally direct the actions of Plasma-Air and are thus personally responsible for its infringing actions. Plasma-Air, Busskohl and Miller as hereafter referred to collectively as the "Plasma-Air defendants."

100.    The acts of the Plasma-Air defendants, especially in light of their failure to remove copied images and text from the Plasma-Air Website after due demand, constitute willful copyright infringement.

101.    As a proximate result of the Plasma-Air defendants' actions, Aerisa has suffered damages in an amount to be proven at trial.

102.    There is a substantial risk that the Plasma-Air defendants will continue to irreparably injure Aerisa unless they are preliminarily and/or permanently enjoined from the acts complained of herein.

**COUNT IV**

**(REVERSE PASSING OFF UNDER 15 U.S.C. § 1125(A))**

103.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

104.    Aerisa, as described above, is the owner of the images of its products.

105.    Plasma-Air's copying of the images of Aerisa's products, removal of the name "IONz International" and/or "Bentax USA" from the images and substitution of the name "Plasma-Air" falsely and misleadingly represent to relevant consumers that Plasma-Air

manufactures, designs, sells, sponsors, or is associated with products actually designed, manufactured for and sold by Aerisa.

106.    On information and belief, Busskohl (Plasma-Air's president and treasurer) and Miller (Plasma-Air's secretary) personally direct the actions of Plasma-Air and are thus personally responsible for its actions.

107.    The activities of the Plasma-Air defendants complained of herein are likely to cause confusion in the marketplace by creating the false and erroneous impression that Aerisa's products were, and are, affiliated with, connected with, associated with, sponsored, designed, sold, or approved by Plasma-Air, or originated from Plasma-Air.

108.    The activities complained of herein constitute reverse passing off in violation of § 43(a) of the Lanham Act.

109.    The Plasma-Air defendants' past and ongoing harm of Aerisa is irreparable, continuing to the present and foreseeable future, and is a serious and unmitigated hardship.

110.    There is a substantial risk that the Plasma-Air defendants will continue to irreparably injure Aerisa unless they are preliminarily and/or permanently enjoined.

111.    The acts of the Plasma-Air defendants complained of herein were performed intentionally and render this case exceptional so as to justify an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT V

## (FALSE ADVERTISING UNDER 15 U.S.C. § 1125)

112.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

113.    Aerisa owns and is the successor-in-interest to the worldwide rights to the "Bentax" plasma technology.

114.    Plasma-Air has asserted, and continues to assert on the Plasma-Air Website, that Plasma-Air is the successor-in-interest to the worldwide rights to the "Bentax" plasma technology, which misrepresents the nature, characteristics, qualities, and origin of Plasma-Air's products and business in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

115.   On information and belief, Busskohl (Plasma-Air's president and treasurer) and Miller (Plasma-Air's secretary) personally direct the actions of Plasma-Air and are thus personally responsible for its actions.

116.   The Plasma-Air defendants' misrepresentation that Plasma-Air is the successor-in-interest to the "Bentax" plasma technology is a material misrepresentation likely to deceive a substantial segment of relevant consumers.

117.   On information and belief, the Plasma-Air defendants intend that potential customers will consider the false information that Plasma-Air is the successor-in-interest to the Bentax technology when making purchasing decisions.

118.   As a direct and proximate cause of the conduct of the Plasma-Air defendants, Aerisa has been damaged in an amount not totally ascertainable and will continue to suffer irreparable injury to its goodwill, rights and businesses, unless and until the Plasma-Air defendants (and others in active concert) are restrained from continuing their wrongful acts.

119.   Aerisa has no adequate remedy at law and is entitled to an injunction. There is a substantial risk that the Plasma-Air defendants will continue to irreparably injure Aerisa unless they are preliminarily and/or permanently enjoined.

120.   The acts of the Plasma-Air defendants complained of herein were performed and render this case exceptional so as to justify an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT VI

## (FALSE ADVERTISING UNDER 15 U.S.C. § 1125)

121.   Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

122.   Plasma-Air has reproduced Aerisa's product test reports on the Plasma-Air Website and has substituted Plasma-Air's name in the test reports in place of "IONz International," which misrepresents the nature, characteristics, qualities, and origin of Plasma-Air's products in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

123.    The misrepresentation described in the preceding paragraph is material and likely to deceive a substantial segment of relevant consumers into believing the test reports actually relate to products manufactured, designed, developed, sponsored by, or associated with Plasma-Air.

124.    On information and belief, Busskohl (Plasma-Air's president and treasurer) and Miller (Plasma-Air's secretary) personally direct the actions of Plasma-Air and are thus personally responsible for its actions.

125.    The Plasma-Air defendants intend that relevant consumers will consider the test reports complained of herein when making purchasing decisions.

126.    As a direct and proximate cause of the Plasma-Air defendants' conduct, Aerisa has been damaged in an amount not totally ascertainable and will continue to suffer irreparable injury to its goodwill, rights and businesses, unless and until the Plasma-Air defendants (and others in active concert) are restrained from continuing their wrongful acts.

127.    Aerisa has no adequate remedy at law and is entitled to an injunction. There is a substantial risk that the Plasma-Air defendants will continue to irreparably injure Aerisa unless they are preliminarily and/or permanently enjoined.

128.    The acts of the Plasma-Air defendants complained of herein were performed intentionally and render this case exceptional so as to justify an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT VII

## (FALSE ADVERTISING UNDER 15 U.S.C. § 1125)

129.    Aerisa hereby incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

130.    Plasma-Air has reproduced testimonials on the Plasma-Air Website and Plasma-Air contends the testimonials are for its products.

131.    At least some of the testimonials referenced in the preceding sentence are not for Plasma-Air's products.

132. At least some of the testimonials referenced above are for the products of Bentax or of Aerisa.

133. The misrepresentation described in the preceding paragraphs is material and likely to deceive a substantial segment of relevant consumers into believing the testimonials actually relate to products manufactured, designed, developed, sponsored by, or associated with Plasma-Air.

134. Plasma-Air's allegation that the testimonials referenced above relate to its products misrepresents the nature, characteristics, qualities, and origin of Plasma-Air's products in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

135. On information and belief, Busskohl (Plasma-Air's president and treasurer) and Miller (Plasma-Air's secretary) personally direct the actions of Plasma-Air and are thus personally responsible for its actions.

136. The Plasma-Air defendants intend that relevant consumers will consider the testimonials complained of herein when making purchasing decisions.

137. As a direct and proximate cause of the conduct of the Plasma-Air defendants, Aerisa has been damaged in an amount not totally ascertainable and will continue to suffer irreparable injury to its goodwill, rights and businesses, unless and until the Plasma-Air defendants (and others in active concert) are restrained from continuing their wrongful acts.

138. Aerisa has no adequate remedy at law and is entitled to an injunction. There is a substantial risk that the Plasma-Air defendants will continue to irreparably injure Aerisa unless they are preliminarily and/or permanently enjoined.

139. The acts of the Plasma-Air defendants complained of herein were performed intentionally and render this case exceptional so as to justify an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**WHEREFORE**, Aerisa requests that judgment be entered against Defendants as follows:

A. To enjoin Plasma-Air's use of portions of the Copied Website and other Aerisa materials pursuant to 17 U.S.C. § 502;

B.     To enjoin the Plasma-Air defendants from making false claims or statements about Aerisa's "Bentax" plasma technology and, in particular, to cease stating that Plasma-Air is the worldwide successor-in-interest to the technology;

C.     To enjoin the Plasma-Air defendants from copying images of Aerisa's products and from altering the images to remove the name of Aerisa or of IONz International and/or placing Plasma-Air's name on the images;

D.     To enjoin the Plasma-Air defendants from reproducing Aerisa's test reports and from substituting the name "Plasma-Air" in those test reports;

E.     To enjoin the Defendants from using or disclosing Aerisa's confidential information and trade secrets;

F.     With respect to Counts IV-VII, for actual damages and enhanced damages in the amount of three times Plasma-Air's profits or Aerisa's lost profits, whichever is greater, pursuant to 15 U.S.C. § 1117;

G.     With respect to Counts IV-VII, for Aerisa's attorneys' fees and costs pursuant 15 U.S.C. § 1117;

H.     With respect to Count II, for damages pursuant to A.R.S. § 44-403(A);

I.     With respect to Count II, for exemplary damages pursuant to A.R.S. § 44-403(B);

J.     With respect to Count II, for attorney's fees pursuant to A.R.S. § 44-404(3); and

K.     With respect to Count III, damages pursuant to 17 U.S.C. § 504(a) and (b), or statutory damages pursuant to 17 U.S.C. § 504(a) and (c).

L.     With respect to Count III, costs and attorney's fees pursuant to 17 U.S.C. § 505.

M.     For such other relief as the Court may deem appropriate.

1

## DEMAND FOR JURY TRIAL

2

Aerisa, Inc. hereby demands a jury trial as provided by Rule 38(c) of the Federal Rules of

3

Civil Procedure.

4

DATED this 31st day of March, 2008.

5

6                                    By:  s/David E. Rogers

7                                          Donald A. Wall
                                           David E. Rogers

8                                          Brian M. McQuaid
                                           Andrea L. Marconi

9                                          Thomas C. Raine

10                                         Squire, Sanders & Dempsey L.L.P.
                                           Two Renaissance Square

11                                         40 North Central Avenue, Suite 2700
                                           Phoenix, Arizona  85004-4498

12                                         Telephone: (602) 528-4000
                                           Facsimile:  (602) 253-8129

13

14                                         Attorneys for Plaintiff Aerisa, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 7

# DECLARATION OF ALF MAURITZSON

I, Alf Mauritzson, hereby declare as follows:

1.      I am the Technical Consultant/Chief Scientist of Aerisa, Inc. ("Aerisa").  I am over the age of eighteen (18) years, am competent to testify in this matter and have knowledge of the facts set forth herein or believe them to be true based on either my own personal knowledge, by reviewing documents or through discussions with others.

2.      I am an independent contractor and not an employee of Aerisa.

3.      I am a citizen of Spain, reside in Arizona while I am in the United States and do not conduct business in the State of New York.

4.      ECO-ION Technologies, LLC ("ECO-ION") is a Delaware limited liability company owned by me.  ECO-ION has no employees or assets and conducts no business.  ECO-ION does not conduct business in New York or operate a place of business in New York.

5.      When ECO-ION had assets and employees, it was based in Connecticut.

6.      ECO-AIR Technologies, LLC ("ECO-AIR") is a Wyoming limited liability company owned by me.  ECO-AIR has no employees or assets and conducts no business.  ECO-AIR does not conduct business in New York or operate a place of business in New York.

7.      All of my, ECO-AIR's and ECO-ION's documents and information relevant to the Complaint in this case are located in Arizona.

I declare under penalty of perjury that to the best of my knowledge and recollection the foregoing is true.

Executed on April 09, 2008.

Alf Mauritzson

1