UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

PLASMA AIR INTERNATIONAL, INC.,
LAWRENCE SUNSHINE, CLIFFORD
MILLER and VIPER HOLDING, LLC,

           Plaintiffs,

     -against-

AERISA, INC., ION INVESTMENT
PARTNERS, LLC, IONZ INTERNATIONAL,
INC., ALF MAURITZON, ECO ION
TECHNOLOGIES, LLC, and ECO-AIR
TECHNOLOGIES, LLC,

           Defendants.

------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

08 CV 02415 (GEL)


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR, ALTERNATIVELY, STAY OR TRANSFER THE COMPLAINT


SQUIRE, SANDERS & DEMPSEY L.L.P.


April 10, 2008

Richard Mattiaccio (RM4764)
Steven Skulnik (SS7821)
350 Park Avenue, 15th Floor
New York, NY 10022-6022
(212) 872-9800

George Brandon (GB030818)
Brian M. McQuaid (*pro hac vice*
admission pending)
Squire, Sanders & Dempsey L.L.P.
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004-4498
Telephone: (602) 528-4000
Facsimile: (602) 253-8129
Attorneys for Defendants

i

# <u>TABLE OF CONTENTS</u>

Table of Authorities……………………………………………………………………iii

I.     Introduction………………………………………………………..……......1

II.    Factual Background………………………………………...................…1

    A.    AERISA AND THE FIRST-FILED ARIZONA COMPLANT…..………………1

    B.    THE LATER FILED ACTION IN THIS COURT...……………………….…3

III.    Legal Argument……………………………………………………….…..5

    A. THE "FIRST-FILED" RULE REQUIRES DISMISSAL, STAY OR TRANSFER OF PLASMA-AIR'S LATER-FILED COMPLAINT IN FAVOR OF AERISA'S FIRST-FILED ACTION…………………………………………..……………………..5

    B. PLASMA AIR'S COMPLAINT ASSERTS CLAIMS THAT ARE COMPULSORY COUNTERCLAIMS WHICH MUST BE ASSERTED IN THE ARIZONA ACTION……………………………………………….………………...8

    C. PLASMA AIR'S COMPLAINT SHOULD ALSO BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER ANY OF THE DEFENDANTS……………11

        1.    None of the Defendants Fall Within the Reach of New York's Long-Arm Statute……………………………………….…..12

        2.    None of the Defendants Fall Within the Reach of Constitutional Due Process……………………………………….………...13

    D. PLASMA-AIR'S COMPLAINT SHOULD ALSO BE DISMISSED OR TRANSFERRED FOR IMPROPER VENUE………………………...……..15

        1.    Venue is Not Proper Under 28 U.S.C. § 1391(b)………………..16

        2.    Venue Over Plasma-Air's Copyright Claims is not Proper Under 28 U.S.C. § 1400(a)……………………………….……..17

        3.    The Court Should Dismiss Plasma-Air's Claims or Transfer the Case to the District of Arizona………………………….……17

    E. IN THE ALTERNATIVE, TRANSFER OF THIS MATTER TO THE DISTRICT OF ARIZONA IS APPROPRIATE PURSUANT TO 20 U.S.C. § 1404……………………………………………………….…......18

IV.    Conclusion …………………………………………………………………19

# TABLE OF AUTHORITIES

**Federal Cases**[1]

800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 131 (S.D.N.Y. 1994)……..5

Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991)………………………………………………..8

A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)………………………….11

Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622 (9th Cir. 1991)……………………………5

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987)…………………………...14

Baker v. Coughlin, 1993 U.S. Dist. LEXIS 12445, *11-12 (S.D.N.Y. 1993)…………………...18

Banque de la Mediterranee-France, S.A., v. Thergen, Inc., 780 F. Supp. 92, 94 (D.R.I. 1992)…17

Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc., 923 F. Supp. 433, 436 (S.D.N.Y. 1996)………………………………………………………………………………….12

Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)…………………………….11

Bulova Watch Co. v. K. Hattori & Co., 508 F. Supp. 1322, 1346 (E.D.N.Y. 1981))…………....13

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)…………………………………….12

City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991)…………………………5

Clerc v. Cantoni, Inc., 2002 U.S. Dist. LEXIS 12402, * 2-3 (S.D.N.Y. 2002)…………………11

Critical-Vac Filtration Corp. v. Minutemen Int'l, Inc., 233 F.3d 697, 699 (2d Cir. 2000)………8

Cyprus v. Whitman, 93 F.R.D. 598, 604 (S.D.N.Y. 1982)……………………………………….9

Dolson v. New York State Thruway Authority, 2001 U.S. Dist. LEXIS 4283, *3 (S.D.N.Y. 2001)……………………………………………………………………………………………...15

Donaldson, Lufkin, & Jenrette, Inc. v. Los Angeles County, 542 F. Supp. 1317, 1320 (S.D.N.Y. 1982) ……………………………………………………………………………………………...6

Donnkenny, Inc. v. Hadler, 544 F. Supp. 166, 170 (S.D.N.Y. 1982)…………………………....10

E.J. Korvette Co. v. Parker Pen Co., 17 F.R.D. 267, 268-69 (S.D.N.Y. 1955)………………….10

---

[1] Copies of all unreported, docketed cases are attached to the Declaration of Brian M. McQuaid ("McQuaid Dec.") as Appendix 1.

First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d. Cir. 1989)……………...…5

Gaines, Emhof, Metzler & Kriner v. Nisberg, 843 F. Supp. 851, 854 (W.D.N.Y. 1994) ………17

GT Plus v. Ja-Ru, Inc., 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998)……………………………...…6

J. Lyons & Co. v. Republic of Tea, Inc., 892 F. Supp. 486, 493 (S.D.N.Y. 1995)………………5

Herman v. SBC Warburg Dillon Read, Inc., 99 Civ. 1593, 1999 U.S. Dist. LEXIS 13587, at *5 (S.D.N.Y. 1999)……………………………………………………………………...…5

Imagineering, Inc. v. Lukingbeal, 1996 U.S. Dist. LEXIS 3939, *5 (S.D.N.Y. 1996)…………15

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)………………………………………..11

Leon C. Baker, P.C. v. Bennett, 942 F. Supp. 171, 175 (S.D.N.Y. 1996)………………………16

Manufacturers Hanover Trust Co. v. Palmer Corp., 798 F. Supp. 161 (S.D.N.Y. 1992)…………6

Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993)…………………………………17

Moore v. New York Cotton Exch., 270 U.S. 593, 46 S. Ct. 367, 70 L. Ed. 750 (1996)………...…9

Pharmaceutical Res., Inc., v. Alpharma USPD, Inc., No. 02 Civ. 1015, 2002 U.S. Dist. LEXIS 8549, at * 7 (S.D.N.Y. May 13, 2002)……………………………………………...…...5

Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 179 (S.D.N.Y. 1995)………………………11

Remsen Partners, Ltd. v. Stephen A. Goldberg Co., No. 97 Civ. 0328, 1997 U.S. Dist. LEXIS 2115, at * 3 (S.D.N.Y. Feb. 28, 1997)………………………………………………...…...9

Reynolds Corp. v. Nat'l Operator Servs., Inc., 73 F. Supp. 2d 299, 302-03 (W.D.N.Y. 1999)…12

Sage Realty Corp. v. Insurance Co. of N. Am., 34 F.3d 124, 129 (2d Cir. 1994)………………...8

Securities Training Corp. v. Securities Seminar, Inc., 633 F. Supp. 938, 941 (S.D.N.Y. 1986)...11

Semmes Motors Inc. v. Ford Motor Co., 429 F.2d 1197, 1202 (2d Cir. 1970)…………………...9

Southern Constr. Co. v. Pickard, 371 U.S. 57, 60, 83 S. Ct. 108, 110, 9 L. Ed.2d 31, 34 (1962)...9

Wallace Computer Servs., Inc., v. More Corp. Ltd., No. 95 Civ. 6379, 1995 U.S. Dist. LEXIS 14034, at *2 (S.D.N.Y. Sept. 17, 1995)……………………………………………………...…5

World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)……………………………...12

## Federal Statutes

Fed. R. Civ. P. 13(a) …………………………………………………………………...1

Fed. R. Civ. P. 12(b)…. ……………………………………………………………..1

15 U.S.C. §§ 1051, <u>et</u> <u>seq</u>…………………………………………………………….2

17 U.S.C. §§ 101, <u>et</u> <u>seq</u>………………………………………………………....2

28 U.S.C. § 1391(b)……………………………………………………………....15

28 U.S.C. § 1400(a)……………………………………………………...……..15

28 U.S.C. § 1404(a)…………………………………………………………....4

28 U.S.C. § 1406…………………………………………………………....17

## State Statutes

NYCPLR § 302………………………………………………………………...11

# I.     **Introduction.**

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and the Local Rules of this Court, defendants Aerisa, Inc.,[1] Ion Investment Partners, LLC, Alf Mauritzson, Eco-Ion Technologies, LLC, and Eco-Air Technologies, LLC (collectively, "Defendants") move for an order dismissing the complaint for (1) violation of the first-filed rule; (2) violation of Fed. R. Civ. P. 13(a); (3) lack of personal jurisdiction; and (4) improper venue.   In the alternative, Defendants request that the Court stay or transfer this action to the United States District Court for the District of Arizona, where Aerisa, Inc. ("Aerisa") filed a complaint addressing virtually the same issues raised here, and that complaint was filed nearly a month before the instant action. Defendants also make an application for a hearing to argue the motion under Local Rule 6.1(c) and specifically request a telephonic hearing at a time that is convenient for the Court.

# II.     **Factual Background.**

## A.     **AERISA AND THE FIRST-FILED ARIZONA COMPLAINT.**

Aerisa designs and manufactures systems for cleaning air using plasma technology.  (See Declaration of Tim Bender ("Bender Dec."), ¶ 2, attached to the McQuaid Dec. as Exhibit 1.) This technology (hereafter, "Technology") was acquired by Aerisa from Eco-Ion Technologies, LLC (dba Bentax USA) pursuant to an agreement entitled "Agreement Relating to Wind-Up of ECO ION Technologies, LLC" (the "Wind-Up Agreement") by which all rights in the Technology were transferred to Aerisa.   (See Wind-Up Agreement (Sections 2(b) and (c), attached to the McQuaid Dec. as Exhibit 2; see also Bender Dec., McQuaid Dec. Ex. 1, ¶ 3.)  The Wind-Up Agreement is governed by Arizona law and the parties to the agreement consented to jurisdiction in Arizona with respect to disputes related to it.  (McQuaid Dec. Ex. 2, ¶ 12(j).)

On January 11, 2008, Aerisa, through its attorneys, sent letters to Plasma-Air,

International, Inc. ("Plasma-Air"), Clifford Miller ("Miller"), and Larry Sunshine ("Sunshine"), and to Plasma-Air's President, Terry A. Busskohl ("Busskohl"), regarding Aerisa's concerns that one or more of them had, among other things, copied Aerisa's copyrighted images and texts, were engaging in false advertising and may be using Aerisa's trade secrets without authorization. (See letters attached to the McQuaid Dec. as collective Exhibit 3.)  Aerisa received no response to the letters.

On February 4, 2008, Aerisa filed a complaint in the United States District Court for the District of Arizona against Plasma-Air International, Terry Busskohl, Clifford Miller, Lawrence Sunshine, and John Collins ("Collins") (collectively, the "Arizona Defendants").  The Complaint alleges claims under the Lanham Act (15 U.S.C. §§ 1051, et seq.), for unfair competition and false representations, descriptions, and designations of origin, under 17 U.S.C. §§ 101, et seq. for copyright infringement, and under the laws of the State of Arizona regarding protection of trade secrets, unfair competition, and fiduciary duties.  (See Complaint, attached to the McQuaid Dec. as Exhibit 4, referred to herein as the "Arizona Complaint").  Immediately thereafter, Aerisa sent courtesy copies of the Arizona Complaint to each of the Arizona Defendants in another attempt to settle this matter informally.  (See February 5, 2008 letter to Messrs. Busskohl and Miller and February 6, 2008 letters to Messrs. Collins and Sunshine, attached to the McQuaid Dec. as collective Exhibit 5.)  None of the Arizona Defendants responded to these letters.  On March 31, 2008, Aerisa filed a First Amended Complaint ("FAC") slightly modifying some of its factual allegations and counts, but no substantial factual allegations were added.  (See FAC, attached to the McQuaid Dec. as Exhibit 6.)

The Arizona Complaint and FAC (collectively, the "Arizona Action") arise from, among other things, Plasma-Air's (1) misuse and misappropriation of the above-described Technology,

---

[1] IONz International, Inc. changed its name to Aerisa, Inc. in January of 2008.  At present, there

(2) copying of Aerisa's copyrighted text and images, (3) false claims that Plasma-Air is the worldwide successor in interest to the Technology owned by Aerisa, (4) false statements that certain testimonials are for Plasma-Air's products, when they are in fact for Aerisa's products or those of Aerisa's predecessor in interest, and (5) intentional copying of test reports for Aerisa's products and pictures of Aerisa's products (or those of Aerisa's predecessor in interest), removing the name "IONz International" or "Bentax USA" therefrom and inserting the name "Plasma-Air" to create the false impression that the pictures and test reports are for Plasma-Air's products. (FAC, McQuaid Dec. Ex. 6 at ¶¶ 15, 16, 17-19, 21, 22-24, 39-46, 47-52, 53-54, 55-59.) Aerisa also alleges that Sunshine and Collins, while employed by Aerisa and since, wrongfully disclosed confidential and trade secret information to Plasma-Air and/or Busskohl and/or Miller and improperly diverted Aerisa's corporate opportunities to Plasma-Air and/or Busskohl and/or Miller. (Id. at ¶¶ 9-12, 27-38.) Aerisa has requested the Court to enjoin the wrongful acts of the Arizona Defendants and award Aerisa appropriate monetary damages, including attorneys' fees and costs.

**B.    THE LATER-FILED ACTION IN THIS COURT.**

Instead of responding to Aerisa's letters and the Arizona Complaint, Plasma-Air, Sunshine, and Miller (i.e., three of the Arizona Defendants) waited approximately a month after receiving a courtesy copy of the Arizona Complaint and then, along with Miller's company Viper Holdings, LLC ("Viper") [2] (these four parties are collectively referred herein to as "Plaintiffs"), filed the instant action in this Court. Plaintiffs' Complaint involves most of the same individuals and entities and arises from the same transactions and occurrences as the Arizona Action. In the instant action, Plaintiffs' claims basically mirror those in the Arizona

---

exists no separate entity named IONz International, Inc.

[2] Upon information and belief, Miller is the sole member of Viper.

Action.  For example, Plasma-Air alleges that it owns the Technology and that Aerisa has misused and misappropriated the Technology.  (See Plaintiffs' Complaint at ¶ 19.)  Sunshine, individually, also seeks a claim against Aerisa for conduct arising out of his prior employment by Aerisa (id. at ¶¶ 100-104), which arises out of the same facts and occurrences as Aerisa's claims against Sunshine in the Arizona Action for breach of fiduciary duty and misappropriation of trade secrets.  (FAC, McQuaid Dec. Ex. 6 ¶¶ 6, 27-38, 69-96.)  As in the Arizona Complaint, most of the claims in the instant action arise out of and relate to the parties' respective rights and obligations with respect to the Technology and interpretation of the Wind-Up Agreement.

Moreover, Aerisa filed the Arizona Complaint and provided notice of the same to the Arizona Defendants nearly *a month earlier* than Plaintiffs filed the instant lawsuit, which arises from the same facts and circumstances as the Arizona Action.  Plaintiffs' Complaint should thus be dismissed, or at the very least transferred to Arizona, in deference to the first-filed Arizona Action.  Alternatively, the Court should, at a minimum, transfer this matter to the District of Arizona pursuant to 28 U.S.C. § 1404(a).

Plaintiffs attempt to assert jurisdiction in this Court by alleging, upon information and belief only, that Aerisa has transacted business in New York, has an office in New York and negotiated certain agreements in New York that are related to the instant action.  (See id. at ¶¶ 12-17.)  Neither Aerisa nor any of the Defendants, however, has an office in New York, or transacts business related to this action in New York.  (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 7-10; see also Declaration of Alf Mauritzson ("Mauritzson Dec"), ¶¶ 3-6, attached to the McQuaid Dec. as Exhibit 7.)  Furthermore, the Wind-Up Agreement is governed by Arizona law and the parties to the Agreement (which include Aerisa, Miller, Viper and Eco-Ion) consented to jurisdiction in Arizona with respect to resolving disputes under the Agreement.  (McQuaid Dec. Ex. 2 ¶¶ 12(j).)

### III.    Legal Argument.

**A.    THE "FIRST-FILED" RULE REQUIRES DISMISSAL, STAY OR TRANSFER OF PLASMA-AIR'S LATER-FILED COMPLAINT IN FAVOR OF AERISA'S FIRST-FILED ACTION.**

It is well settled in the Second Circuit that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or special circumstances . . . giving priority to the second." First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989); Pharmaceutical Res., Inc., v. Alpharma USPD, Inc., No. 02 Civ. 1015, 2002 U.S. Dist. LEXIS 8549, at * 7 (S.D.N.Y. May 13, 2002); Herman v. SBC Warburg Dillon Read, Inc., 99 Civ. 1593, 1999 U.S. Dist. LEXIS 13587, at *5 (S.D.N.Y. 1999); Wallace Computer Servs., Inc., v. More Corp. Ltd., No. 95 Civ. 6379, 1995 U.S. Dist. LEXIS 14034, at *2 (S.D.N.Y. Sept. 17, 1995). This principle is commonly referred to as the "first filed" or "first-to-file" rule. See City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991). Application of the first-to-file rule requires that the second-filed action be dismissed, stayed or its prosecution enjoined. Simmons, 878 F.2d at 80 (affirming dismissal of the second-filed action); Exxon Corp., 932 F.2d at 1025-26 (enjoining prosecution of second-filed action); J. Lyons & Co. v. Republic of Tea, Inc., 892 F. Supp. 486, 493 (S.D.N.Y. 1995) (dismissing second-filed action).

There is a "strong presumption" accorded in favor of the first-filed suit which "should not be disregarded lightly." 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 131 (S.D.N.Y. 1994) (dismissing second-filed action in deference to the first-filed rule) (citing Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622 (9th Cir. 1991)); see also Simmons, 878 F.2d at 80. Deference to the first-filed lawsuit avoids the possibility of inconsistent results and duplication of judicial resources and serves the purposes of promoting efficiency. Simmons, 878 F. 2d at 80; 800-Flowers, 860 F. Supp. at 132. The rule applies where the two actions generally

embrace the same parties and issues.[3]  GT Plus v. Ja-Ru, Inc., 41 F. Supp. 2d 421, 424 (S.D.N.Y.

1998) (citing Donaldson, Lufkin, & Jenrette, Inc. v. Los Angeles County, 542 F. Supp. 1317,

1320 (S.D.N.Y. 1982) (applying first-filed rule where the second action "arises out of the facts

giving rise to the first-filed action"); see also Manufacturers Hanover Trust Co. v. Palmer Corp.,

798 F. Supp. 161 (S.D.N.Y. 1992) ("The interests of justice require that the cases be related, not

identical.").  The burden to overcome this presumption is on the party (here, the Plaintiffs)

seeking to proceed with the second action.  Pharmaceutical, 2002 U.S. Dist. LEXIS 8549, at *7.

Pursuant to the first-filed rule, the Arizona Action – commenced nearly a month before

Plaintiffs brought this action – is entitled to priority over this action, which should accordingly

be dismissed.  Not only was the Arizona Action filed nearly a month before this action, but the

Arizona Defendants were sent courtesy copies of the Arizona Complaint on February 5 and 6,

2008.  (See McQuaid Dec. Ex. 5.)

None of the "special circumstances" which might warrant departure from the first-filed

rule are applicable here.  See, e.g., GT Plus, 41 F. Supp. 2d at 424-25.  When determining

whether the balance of convenience or special circumstances militates against giving precedent

to the first-filed action, courts consider the same factors that apply to a Section 1404(a) motion to

transfer venue.  Id. at 424.  These factors include the following:

> (1)  the convenience of witnesses; (2) the location of relevant
> documents and the relative ease of access to sources of proof; (3)
> the convenience of the parties; (4) the locus of the operative facts;
> (5) the availability of process to compel attendance of the
> unwilling witnesses; (6) the relative means of the parties; (7) a
> forum's familiarity with the governing law; (8) the weight
> accorded a plaintiff's choice of forum; and (9) trial efficiency and
> the interests of justice based on the totality of the circumstances.

Id. at 424-25; see also 800-Flowers, 860 F. Supp. at 133.

---

[3] The only Plaintiff here who is not one of the Arizona Defendants is Viper, and any rights that
Viper allegedly may have in the Technology are the same as those of Miller.

When considered, these factors actually establish Arizona as the most convenient forum. First, New York, where only one of the parties (Mr. Sunshine) resides is not a more convenient forum. The other Plaintiffs in this action are Plasma-Air, which is a Connecticut corporation based in Connecticut, Mr. Miller, a California resident, and Viper, a Nevada limited liability company. (Complaint at ¶¶ 1, 3-4.)

Contrary to Plaintiffs' unsupported allegations in the Complaint, Aerisa does not transact business within the State of New York, nor does Aerisa have an office in New York. (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 7-8.) None of the Defendants, their witnesses or documents are located in New York, and Defendants do not conduct business relevant to this action in New York. (Id. at ¶¶ 6-10; see also Mauritzson Dec., McQuaid Dec. Ex. 7, ¶¶ 3-7.)

Other than Mr. Sunshine, Plaintiffs do not specify any witnesses or documents that are in New York, nor do Plaintiffs describe a significant connection of their own to New York. (See Complaint.) New York is simply not the locus for the operative facts in this action. Indeed, the Wind-Up Agreement, which is critical to the parties' dispute since it assigned the Technology to Aerisa, was drafted by counsel in Arizona, is governed by Arizona law, and the parties to it (which include Aerisa, Miller, and Viper and Eco-Ion) consented to personal jurisdiction in Arizona with respect to any dispute involving the agreement. (McQuaid Dec. Ex. 2, ¶¶ 11, 12(j).) Additionally, the purported actions that are the subject of Plaintiffs' Complaint – that Aerisa allegedly misappropriated Plasma-Air's intellectual property, could only have taken place in Arizona, where Aerisa is based and the Technology resides. (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 4-6.)

Also, "the weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." GT Plus, 41 F. Supp. 2d at 425. Here, three of the four Plaintiffs are

7

not domiciled in New York.  (Complaint at ¶¶ 1-4.)  Moreover, "since this court applies these factors in reference to the first-filed rule, and not merely a transfer, there is a strong presumption in favor of the forum chosen by the original plaintiff."  GT Plus, 41 F. Supp. 2d at 425.  Here, that strong presumption applies in favor of the Defendants and the first-filed Arizona Action. Trial efficiency and the interests of justice also favor Arizona.  Rather than allowing two parallel suits to go forward, the first-filed Arizona Action can provide for a more complete and efficient determination of all the interrelated claims and counterclaims by the parties arising out of the Wind-Up Agreement and the rights to the Technology, and can avoid inconsistent results.  See id. 41 F. Supp. 2d at 425.  Thus, the balance of convenience supports application of the first-to-file rule.

Based on the foregoing reasons, the Court should dismiss, or in the alternative, stay or transfer, Plaintiffs' Complaint in favor of Aerisa's first-filed Arizona Action.

**B.    PLAINTIFFS' COMPLAINT ASSERTS CLAIMS THAT ARE COMPULSORY COUNTERCLAIMS WHICH MUST BE ASSERTED IN THE ARIZONA ACTION.**

Rule 13(a) of the Federal Rules of Civil Procedure requires that a party "shall state" as a compulsory counterclaim "any claim" it has against the opposing party if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[s]."  Fed. R. Civ. P. 13(a).  The Second Circuit has ruled that Rule 13(a) "require[s]" that a responsive pleading assert any compulsory counterclaims.  Sage Realty Corp. v. Insurance Co. of N. Am., 34 F.3d 124, 129 (2d Cir. 1994).  A counterclaim is compulsory when a "logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are so 'logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit.'"  Critical-Vac Filtration Corp. v. Minutemen Int'l, Inc., 233 F.3d 697, 699 (2d Cir. 2000); Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991).  The Supreme Court has

mandated that a "broad and flexible" approach be utilized to determine whether a "logical relationship" exists to consider counterclaims compulsory. <u>Cyprus v. Whitman</u>, 93 F.R.D. 598, 604 (S.D.N.Y. 1982) (construing <u>Moore v. New York Cotton Exch.</u>, 270 U.S. 593, 46 S. Ct. 367, 70 L. Ed. 750 (1996)). A logical relationship may exist even where there is no absolute identity of facts and issues or where the counterclaims include additional facts. <u>Id.</u> at 604.

Like the first-to-file rule, a broad interpretation of the relatedness of claims is consistent with the rationale underlying the compulsory counterclaim requirement: namely, "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." <u>Southern Constr. Co. v. Pickard</u>, 371 U.S. 57, 60, 83 S. Ct. 108, 110, 9 L. Ed.2d 31, 34 (1962). Rule 13(a) is "particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." <u>Id.</u> at 60, 83 S. Ct. at 110, 9 L. Ed.2d at 34.

Where a party seeks to evade the requirements and nullify the purpose of Rule 13(a) by filing as a separate action claims that should properly be compulsory counterclaims in a pending action – as Plaintiffs have done here – courts have not hesitated to dismiss the complaint and permit such claims to be asserted, if at all, as compulsory counterclaims in response to the first-filed complaint. <u>E.g.</u>, <u>Adams v. Jacobs</u>, 950 F.2d at 92-94 (reversing the lower court's refusal to transfer or dismiss a complaint that asserted claims which should have been compulsory counterclaims to defendants' previously filed complaint in another jurisdiction); <u>Semmes Motors Inc. v. Ford Motor Co.</u>, 429 F.2d 1197, 1202 (2d Cir. 1970) (lower court abused its discretion when it refused to grant a stay of complaint since Rule 13(a) "require" plaintiff to file its claims as compulsory counterclaims in the first filed action); <u>Remsen Partners, Ltd. v. Stephen A. Goldberg Co.</u>, No. 97 Civ. 0328, 1997 U.S. Dist. LEXIS 2115, at * 3 (S.D.N.Y. Feb. 28, 1997) ("a district court should not hear a claim constituting a compulsory counterclaim in an earlier

filed action"); <u>Donnkenny, Inc. v. Hadler</u>, 544 F. Supp. 166, 170 (S.D.N.Y. 1982) (motion to stay second-filed complaint granted where it asserted claims arising out of the same relationship and transaction as earlier filed action in another jurisdiction); <u>Whitman</u>, 93 F.R.D. at 604-06 (Rule 13(a) "requires" dismissal of plaintiff's complaint asserting what should have been compulsory counterclaims to defendant's prior action in another jurisdiction); <u>E.J. Korvette Co. v. Parker Pen Co.</u>, 17 F.R.D. 267, 268-69 (S.D.N.Y. 1955) (dismissing complaint that asserted claims that should have been pleaded as compulsory counterclaims to defendant's prior action in another jurisdiction).

In the instant action, Plaintiffs' Complaint plainly consists of claims that are logically related to the first-filed Arizona Action so as to constitute compulsory counterclaims under Rule 13(a).  All of the Plaintiffs' claims arise out of the same transactions and occurrences as Aerisa's claims in the Arizona Action; namely, the ownership use, marketing and sales of the Technology, the use of images, text, test reports and testimonials related to the Technology, and the rights and obligations of Sunshine and Collins (particularly those concerning the sale and disclosure of the Technology) related to their employment with Aerisa.  (<u>See</u>, <u>e.g.</u>, Complaint; FAC, McQuaid Dec. Ex. 6.)  Indeed, Plaintiffs' claims in this action regarding the Technology largely mirror Aerisa's claims against the Arizona Defendants in the Arizona Action.  (<u>Id.</u>)  As a result, not only are the issues in both actions virtually identical, the proof required to prove and disprove the various claims and defenses asserted by the parties in the two actions are substantially similar, if not identical.

Accordingly, Plaintiffs' Complaint should be dismissed and Plaintiffs should file, if they desire, corresponding counterclaims in the Arizona Action.  Such a result is not only in accord with applicable case law, but is consistent with principles of judicial economy and the avoidance of duplicative litigations which the Supreme Court has articulated is the fundamental purpose of

Rule 13(a).  To allow Plaintiffs' Complaint to proceed would not only require the parties to litigate nearly all of the same facts and issues in multiple fora, but could very well lead to inconsistent results.  Such a result contravenes the basic purpose of Rule 13(a) – to prevent multiplicity of actions arising out of common matters – and therefore should not be permitted.  See Adams, 950 F.2d at 92; Whitman, 93 F.R.D. at 606.

## C.    PLAINTIFFS' COMPLAINT SHOULD ALSO BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER ANY OF THE DEFENDANTS.

In order to defeat Aerisa's motion to dismiss, Plaintiffs must make a prima facie showing of jurisdiction.  See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).  The plaintiff has the burden of proving that jurisdiction exists over each defendant.  Clerc v. Cantoni, Inc., 2002 U.S. Dist. LEXIS 12402, * 2-3 (S.D.N.Y. 2002); see also Securities Training Corp. v. Securities Seminar, Inc., 633 F. Supp. 938, 941 (S.D.N.Y. 1986).

Jurisdictional determinations required a two-part test.  First, the Court "applies the long-arm statute of the forum state" when determining "personal jurisdiction over a non-domiciliary in a federal questions case" such as this one.  Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 179 (S.D.N.Y. 1995).  In New York, a nonresident's activities must fall within one of the provisions of the long-arm statute (NYCPLR § 302) before personal jurisdiction may be exercised.  Securities Training Corp., 633 F. Supp. at 941.

If the long-arm statute is satisfied, the second part of the analysis requires a showing that an exercise of personal jurisdiction comports with Due Process.  See Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997).  Due Process requires that each defendant has "minimum contacts" with the forum such that maintenance of a suit against the defendant does not "offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Clerc, 2002 U.S. Dist. LEXIS 12402, at * 3.  Thus, the Plaintiffs must demonstrate both (1) that a defendant's conduct and connection with

the forum are such that each "should reasonably anticipate being haled into court" in New York,
World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980), and (2) that "there be some act
by which the defendant purposefully avails itself of the privilege of conducting activities within
the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475 (1985).

> **1.    None of the Defendants Fall Within the Reach of New York's Long-Arm Statute.**

New York's long-arm statute governs personal jurisdiction in the state.  See NYCPLR §
302(a); see also Reynolds Corp. v. Nat'l Operator Servs., Inc., 73 F. Supp. 2d 299, 302-03
(W.D.N.Y. 1999).

Plaintiffs have not shown that New York's long-arm statute (NYCLPR § 302) extends to
any of the defendants in this lawsuit.  The long-arm statute allows the Court to exercise personal
jurisdiction over nonresidents who either "transact[] any business within the state or contracts
anywhere to supply goods or services in the state" or who "commits a tortious act within the
state."  Id.  Plaintiffs have not cited any specific subsection of the long-arm statute applicable
here, but the Complaint alleges, upon information and belief only, that each defendant has
"transacted and continues to transact business within the State of New York."  (See Complaint at
¶¶ 12-17.)  These allegations mirror the language of the "doing business" prong of the long-arm
statute.  See NYCPLR § 302(a)(1).  Jurisdiction based on "doing business" requires that the
"defendants' activities [related to the transaction] were purposeful and substantially related to
plaintiffs' claim."  Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc., 923 F. Supp.
433, 436 (S.D.N.Y. 1996).

Plaintiffs do not provide any specific instances in which any of the Defendants has
conducted business in New York, but merely allege upon information and belief only that each
of the Defendants purportedly "transact[] and continue[] to transact business within the State of

New York and has an office for the transaction of business within the State of New York."

(Complaint at ¶¶ 12-17.)   This unsupported assertion is contrary to the facts.   None of the

Defendants has an office in the State of New York or transacts business (in a way related to this

action) within the State of New York.   (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 7-10;

Maurtizson Dec., McQuaid Dec. Ex. 7, ¶¶ 3-6.)   Plaintiffs' unsupported allegations are

insufficient to warrant exercising jurisdiction under the long-arm statute.   See, e.g., Clerc, 2002

U.S. Dist. LEXIS 12402, at * 10 (unsupported conclusory assertions that the defendant's

contacts with the state were substantial and continual is not enough to satisfy NYCPLR §302);

Securities Trading Corp., 633 F. Supp. at 942 (holding that plaintiff failed to establish

jurisdiction under NYCPLR § 302 when the complaint only included bald conclusions

unsubstantiated by any evidence).

Plaintiffs do not allege that any of the Defendants committed tortious acts in New York

to apply subsections (b) or (c) of § 302.   Indeed, Plaintiffs do not allege that any of the purported

acts that form the basis of its Complaint occurred in New York.   Even if the Court found that

Aerisa transacted business in New York, that alone is not sufficient to show that a tort occurred

in the state or that injury occurred there.   Id. (citing Bulova Watch Co. v. K. Hattori & Co., 508

F. Supp. 1322, 1346 (E.D.N.Y. 1981)).

Plaintiffs have not pled facts sufficient to meet their burden under the long-arm statute.

Thus, their Complaint should be dismissed for lack of personal jurisdiction.

### 2.    None of the Defendants Fall Within the Reach of Constitutional Due Process.

Even if Plaintiffs had pled sufficient allegations to fall within the long-arm statute (which

they have not), personal jurisdiction is constitutionally inappropriate.   The Court's Due Process

analysis determines (1) whether each defendant could reasonably foresee an assertion of

jurisdiction in New York, and (2) whether jurisdiction would be reasonable.   Under the first

prong, the Court inquires whether each defendant has purposefully availed itself of the forum by voluntarily seeking out the benefit and protection of New York's laws. Purposeful availment generally requires proof that the defendant established a continuing obligation between himself and the forum state. See Burger King Corp., 471 U.S. 462, 476 (1985). If so, personal jurisdiction is reasonably foreseeable in the forum and does not raise Due Process concerns. See World-Wide Volkswagen Corp., 44 U.S. at 296-97 (discussing "foreseeability" element).

Under the second prong, the Court analyzes whether jurisdiction would be reasonable. The "reasonableness" inquiry involves several factors that focus on the interests of the parties, the court, and the forum. These factors include (a) the burden on the defendant in defending in the forum; (b) the interest of the forum in the litigation; (c) the plaintiff's interest in obtaining relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution; and (e) the shared interest of the several states in furthering fundamental social policies. See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987) (enumerating factors and denying personal jurisdiction over foreign defendant). The "reasonableness" analysis employs a sliding scale, such that the weaker the defendant's contacts and purposeful availment of the forum, the less the defendant must show in terms of unreasonableness to defeat jurisdiction. See id.

First, none of the Defendants purposefully availed themselves of this forum's benefits. Contrary to the Complaint's unsupported assertions, none of the Defendants has an office in New York or conducts business related to this action in New York. (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 7-10; Mauritzson Dec., McQuaid Dec. Ex. 7, ¶¶ 3-6.) Further, the Wind-Up Agreement, by which Miller, Viper and others transferred ownership of the Technology to Aerisa, was drafted by counsel in Arizona, is governed by Arizona law, and the parties to it (including Miller and Viper) consented to jurisdiction in Arizona for disputes involving the Wind-Up Agreement. (McQuaid Dec. Ex. 2, ¶¶ 11,12(j).) Consequently, none of the

Defendants purposefully availed themselves of the New York forum such that they would reasonably expect to be haled into court for the claims in Plaintiffs' Complaint.

Second, jurisdiction over the Defendants is unreasonable under the circumstances. Litigating in New York would impose a hardship on Aerisa as it operates its business in Arizona, has no office in New York, and none of its witnesses or documents are in New York. (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 4-8.) Nor are any of the other defendants domiciled in New York or conducting business in New York. (Id. at ¶¶ 9-10; Mauritzson Dec., McQuaid Dec. Ex. 7, ¶¶ 3-6.)

New York's interest in this dispute is also minimal, particularly when considering the Plaintiffs' own lack of presence in New York (except for Sunshine) and the Arizona court's strong interest in resolving the first-filed Arizona Action, in which Aerisa, a corporation based in Arizona, is the plaintiff. Also, the purported actions that are the subject of Plaintiffs' Complaint here, namely, that Aerisa allegedly misappropriated Plasma-Air's intellectual property, could only have taken place in Arizona, where Aerisa is based and the Technology resides. (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 4-6.) Consequently, Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction.

**D.     PLAINTIFFS' COMPLAINT SHOULD ALSO BE DISMISSED OR TRANSFERRED FOR IMPROPER VENUE.**

Plaintiffs allege that venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 1400(a). (See Complaint at ¶ 18.) As with personal jurisdiction, the Plaintiffs bear the burden of proving that venue is proper, once an objection has been made. See Dolson v. New York State Thruway Authority, 2001 U.S. Dist. LEXIS 4283, *3 (S.D.N.Y. 2001) (citing Imagineering, Inc. v. Lukingbeal, 1996 U.S. Dist. LEXIS 3939, *5 (S.D.N.Y. 1996)). The requirement of proper venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where

the acts underlying the controversy occurred."  Leon C. Baker, P.C. v. Bennett, 942 F. Supp. 171, 175 (S.D.N.Y. 1996).  In the instant action neither statute provides a proper basis for venue in this District.

**1.    Venue is Not Proper Under 28 U.S.C. § 1391(b).**

When, as here, a plaintiff commences a civil action in federal court based upon a federal question, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

First, even as alleged by Plaintiffs, none of the defendants reside in New York, let alone the Southern District of New York.  (See Complaint ¶¶ 5-10; see also Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 4,7-9; Mauritzson Dec., McQuaid Dec. Ex. 7, ¶¶ 3-6.)  Thus, venue is not proper under subsection (b)(1).

Venue is likewise not appropriate under subsection (b)(2) because Plaintiffs fails to allege that any of the operative facts, let alone a "substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York.  See 28 U.S.C. § 1391(b)(2).  To the contrary, as described in detail herein, a substantial part of the events giving rise to the parties' claims in both the first-filed Arizona Action and this action occurred in Arizona, thus validating jurisdiction and venue in Arizona. E.g., Dolson, 2001 U.S. Dist. LEXIS 4283, at *4. The only apparent reason why this case was filed in New York is that Plaintiffs' counsel is in New York.  (See Complaint p. 1, caption.)  None of the Defendants has had any contacts which can fairly justify any of them to defend this lawsuit in the Southern District of New York.

Venue is also not appropriate under subsection (b)(3) because that section only applies if no other basis for venue is available.  Here, since venue is proper in the District of Arizona, this provision also fails to validate venue in the Southern District of New York.  See Dolson, 2001 U.S. Dist. LEXIS 4283, at *5.

### 2. Venue Over Plasma-Air's Copyright Claims is not Proper Under 28 U.S.C. § 1400(a).

Section 1400(a) is the venue statute for federal copyright claims and provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.  28 U.S.C. § 1400(a).  "The test for this is equated with the test for personal jurisdiction under state long-arm statutes."  Clerc, 2002 U.S. Dist. LEXIS 12402, at *14.  The burden of proof is also on plaintiff to establish venue is proper under Section 1400(a).  See Gaines, Emhof, Metzler & Kriner v. Nisberg, 843 F. Supp. 851, 854 (W.D.N.Y. 1994) (citing Banque de la Mediterranee-France, S.A., v. Thergen, Inc., 780 F. Supp. 92, 94 (D.R.I. 1992)).  Here, Plaintiffs provide no factual support for their unsupported conclusion that venue is proper under Section 1400(a).  As described supra in this Motion, jurisdiction does not exist under New York's long-arm statute.  Thus, venue is not proper under Section 1400(a).  (See Section III.C.1, supra.)

### 3. The Court Should Dismiss Plaintiffs' Claims or Transfer the Case to the District of Arizona.

Because venue is not proper in the Southern District of New York, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406, the Court has the power to dismiss or transfer the case to any district in which it could have been brought.  See 28 U.S.C. § 1406(a); see also Dolson, 2001 U.S. Dist. LEXIS 4283, at *3; Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993).  For the reasons set forth herein, Plaintiffs' Complaint should

either be dismissed or transferred to the District of Arizona where venue properly lies.

**E.    IN THE ALTERNATIVE, TRANSFER OF THIS MATTER TO THE DISTRICT OF ARIZONA IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1404.**

Under 28 U.S.C. § 1404(a), the District Court may transfer this case to another jurisdiction in which venue is proper "[f]or the convenience of parties and witnesses, . . . [or] in the interest of justice."  In determining whether to transfer an action to a more convenient venue, the Court must consider and balance a number of factors, including (1) convenience of the parties, (2) convenience of the witnesses, (3) relative means of the parties, (4) locus of operative facts and relative ease of access to source of proof, (5) attendance of witnesses, (6) the weight accorded to plaintiff's choice of forum, (7) the desirability of having the case tried by the forum familiar with the substantive law to be applied, (8) practical difficulties, and (9) the totality of the circumstances.  See Baker v. Coughlin, 1993 U.S. Dist. LEXIS 12445, *11-12 (S.D.N.Y. 1993); see also Moore's Federal Practice § 111.13[1][b] (Matthew Bender 3d ed.).  These factors, which are the same factors the Court considers when determining whether any exceptions exist to the first-filed rule, strongly support transferring this matter to the District of Arizona.  See GT Plus, 41 F. Supp. 2d at 424-25; 800-Flowers, 860 F. Supp. at 133.

As described in detail above, none of the Defendants reside in New York, Aerisa is based in Arizona and all of Defendants' witnesses and documents related to this dispute are in Arizona. (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 4, 6-9; Mauritzson Dec., McQuaid Dec. Ex. 7, ¶¶3-6.)  As described in detail herein, Plaintiffs do not specify any witnesses (except Sunshine) or documents located in New York, nor do Plaintiffs describe a significant connection of this dispute that occurred in New York.  (See Complaint.)  It appears that Plaintiffs brought this case in New York because their attorney is located there.

To the extent the Wind-Up Agreement must be interpreted to grant the relief sought by each of the parties, it is governed by Arizona law and the Arizona court has greater familiarity

with the substantive law and a greater interest in adjudicating this dispute involving a contract to be performed in Arizona and involving Aerisa, a corporation based in Arizona.  (See McQuaid Dec. Ex. 2 ¶ 12(j).)  Moreover, the purported actions that are the subject of Plaintiffs' Complaint, that Aerisa allegedly misappropriated Plasma-Air's intellectual property, could only have taken place in Arizona, where Aerisa is based and the Technology resides.  (See Bender Dec., McQuaid Dec. Ex. 1, ¶¶ 4-6.)

Also, as described herein, the activities of Messrs. Sunshine and Miller related to the misappropriation of Aerisa's trade secrets and breach of fiduciary duty in the Arizona Action and alleged breach of a contract between Sunshine and Aerisa set forth in this action arise out of Sunshine's and Miller's prior employment with Aerisa (based in Arizona) and through their numerous contacts and activities with persons in Arizona. They cannot legitimately argue now that having to travel to Arizona for purposes of litigation will deny any of the Plaintiffs its day in court.

In addition, "the weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." GT Plus, 41 F. Supp. 2d at 425.  Moreover, it is Aerisa, not Plaintiffs, who is the first-filing party.  Thus, Aerisa's choice of forum is the one to be given weight in the Court's balancing of factors.  Id.  Consideration of the above factors mandates that this matter should, at a minimum, be transferred to the District of Arizona or stay until resolution of the Arizona Action.

### IV.    Conclusion.

Based upon the foregoing, Aerisa respectfully requests that this Court dismiss these proceedings, or in the alternative, transfer this action to the United States District Court for the District of Arizona or stay this action pending the outcome of the Arizona Action.

SQUIRE, SANDERS & DEMPSEY L.L.P.

April 10, 2008

By: _____

Richard Mattiaccio (RM4764)
Steven Skulnik (SS7821)
350 Park Avenue, 15th Floor
New York, NY  10022-6022
(212) 872-9800

George Brandon (GB030818)
Brian M. McQuaid (*pro hac vice*
admission pending)
Squire, Sanders & Dempsey L.L.P.
40 North Central Avenue, Suite 2700
Phoenix, AZ  85004-4498
Telephone:  (602) 528-4000
Facsimile:   (602) 253-8129

Attorneys for Defendants.

# Appendix 1

LEXSEE



Cited
As of: Apr 07, 2008

**EDLEY BAKER as Administratrix of the Estate of WILLIE BAKER, Plaintiff, v. THOMAS COUGHLIN, III, Commissioner of the New York State Department of Correctional Services, GLEN GOORD, Commissioner for Security for the New York State Department of Correctional Services, ROBERT GREIFINGER, Deputy Commissioner and Chief Medical Officer for the New York Department of Correctional Services, RONALD MOSCICKI, Superintendent of Lakeview Shock Incarcertion Facility, DANIEL URBANK, a Correctional Officer at Lakeview Shock Incarceration Facility, GILBERT ACEVEDO, a Correctional Sergeant at Lakeview Shock Incarceration Facility, JAMES CULLINAN, a Correctional Sergeant at Lakeview Shock Incarceration Facility, "JOHN DOE(S) C.O.," being a fictitious name, Correctional Facility, "DOE M.D.," being a fictitious name, a Physician at Lakeview Shock Incarceration Facility, JAMES STEEG, R.N., Nurse Administrator at Lakeview Shock Incarceration Facility, "DOE(S) R.N./P.A.," being a fictitious name, a Nurse(s)/Physician Assistant(s) at Lakeview Shock Incarceration Facility and RICHARD LESTER, Regional Health Services Administrator for Lakeview Shock Incarceration Facility, individually and in their official capacities, Defendants.**

93 Civ. 1084 (RWS)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1993 U.S. Dist. LEXIS 12445**

**September 9, 1993, Decided
September 9, 1993, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, the administratrix of the estate of her son, who died in custody at a correctional facility, brought a 42 U.S.C.S. § 1983 action against defendants, department of correction officials and correctional officers. Defendants filed a motion for an order dismissing or transferring the action on the grounds of improper venue, or alternatively, for an order transferring to another district on the ground of forum non conveniens.

**OVERVIEW:** The administratrix alleged that her son died from the use of unlawful force and the denial of adequate medical and custodial care by defendants within 48 hours of his confinement at the facility. Although the facility was located within the jurisdiction of the United States District Court for the Western District of New York, the administratrix filed her action in the court because defendants maintained offices within the district and because it was the location of the surrogate's court proceeding regarding her son's estate. The court denied the motion to dismiss and the 28 U.S.C.S. § 1391(b) motion to transfer and granted the 28 U.S.C.S. § 1404(a) motion to transfer. The court held that: 1) the Southern District was an improper venue because no defendant

1993 U.S. Dist. LEXIS 12445, *
62 Fair Empl. Prac. Cas. (BNA) 385; 62 Empl. Prac. Dec. (CCH) P42,492

resided in that district and because no part of the events or omissions giving rise to the claims occurred in that district; and 2) venue was proper in both the Western and the Northern Districts, but defendants failed to demonstrate that the criteria of § 1404(a) were satisfied only by the Western District.

**OUTCOME:** The court denied the motion to dismiss and granted the motion to transfer.

**CORE TERMS:** venue, omission, reside, substantial part, convenience, confer, giving rise, correctional, acts of commission, judicial districts, transferred, branch offices, choice of forum, order transferring, official duties, appropriate forum, interest of justice, balance of convenience, operative facts, transferring, conferred, disturbed, equipoise, assigned, accorded, locus, defer, died, ease, custody

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN1]A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C.S. § 1391(b).

*Civil Procedure > Venue > Multiparty Litigation*
[HN2]Under 28 U.S.C.S. § 1391, the "residence" of public officers means his or her "official" and not "actual" residence.

*Civil Procedure > Venue > Corporations*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN3]For purposes of 28 U.S.C.S. § 1391(b), the residence of officers of a New York State agency is their official residence and not merely the location of a

subsidiary branch office.

*Civil Procedure > Venue > General Overview*
[HN4]While a plaintiff may choose between two or more districts that may be assigned as the locus of a substantial part of the events or omissions giving rise to the claim, the plaintiff's choices are limited to just those districts.

*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*
[HN5]Motions to transfer venue from one federal district court to another are governed by 28 U.S.C.S. § 1404(a). The statute provides in part that for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought. 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN6]The questions to be answered on a motion to transfer are whether the action could have been brought in the jurisdiction where the movant seeks to have the case transferred, and if so, considering the convenience of the witnesses and the parties and the interest of justice, whether the proposed district is appropriate. The party seeking transfer bears the burden of clearly establishing that the transfer is appropriate and that the motion should be granted. The moving party must specify what evidence and witnesses it intends to rely on and show that the balance of convenience weighs heavily in its favor.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN7]The burden of establishing that an action should be transferred pursuant to 28 U.S.C.S. § 1404 falls squarely on the defendant-movant. The defendant's burden is substantial because a plaintiff's choice of forum is accorded considerable weight and will not be disturbed unless the defendant has made a clear showing that convenience and justice for the parties demands that the litigation proceed elsewhere. When the balance of convenience is in equipoise, plaintiff's choice of forum is

1993 U.S. Dist. LEXIS 12445, *
62 Fair Empl. Prac. Cas. (BNA) 385; 62 Empl. Prac. Dec. (CCH) P42,492

rarely disturbed. However, the emphasis a court places on the factor of the plaintiff's choice diminishes substantially when the acts of commission and omission giving rise to the action bear little material connection to the chosen forum.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Motions to Transfer > Choice of Forum*
[HN8]The grant of a motion to transfer under 28 U.S.C.S. 1404(a) is left to the discretion of the court. In making this determination, courts consider the convenience of the parties, convenience of the witnesses, relative means of parties, locus of operative facts and relative ease of access to source of proof, attendance of witnesses, the weight accorded plaintiff's choice of forum, the desirability of having the case tried by the forum familiar with the substantive law to be applied, practical difficulties, and totality of the circumstances. The convenience of parties and witnesses is considered the essential criteria under venue statutes.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN9]The location of operative facts and the relative ease of access to sources of proof must be considered on a motion to transfer under 28 U.S.C.S. § 1404(a).

**COUNSEL:** [*1] KOOB, MAGOOLAGHAN, Attorney for Plaintiff, New York, NY, By: ELIZABETH L. KOOB, ESQ., Of Counsel.

HON. ROBERT ABRAMS, Attorney General, Attorney for Defendants, New York, NY, By: LISA RAPHAEL, ESQ., Assistant Attorney General, Of Counsel.

**JUDGES:** SWEET

**OPINION BY:** ROBERT W. SWEET

**OPINION**

*OPINION*

   Sweet, D.J.

   The defendants have moved for an order pursuant to Rule 12(b)(3), Fed. R. Civ. P., and 28 U.S.C. § 1391(b)

dismissing or transferring this action on the ground that venue is improper, or alternatively, for an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the United States District Court for the Western District of New York on the ground of forum non conveniens. For the reasons set forth below, the defendants' motion to transfer this action is granted.

*The Parties*

   The plaintiff, Edley Baker (the "Plaintiff"), is a natural person domiciled in the State of New York. Baker brought this action as the administratrix of the estate of her son, Willie Baker ("Baker"), who died while in custody at the Lakeview Shock Correctional Facility ("Lakeview"), a facility in the New York State Department of Correctional Services [*2] ("DOCS") system located in Brockton, New York. The defendants are all either officials of DOCS (the "Official Defendants") or officials or employees assigned to Lakeview (the "Correctional Officer Defendants").

*Facts And Prior Proceedings*

   The Plaintiff brought this is action pursuant to 42 U.S.C. § 1983 in which she alleges that Baker, who was 18 years of age at the time, died on June 16, 1992 from the use of unlawful force and the denial of adequate medical and custodial care by the Defendants within 48 hours of his confinement at Lakeview. In addition to the § 1983 claim, the Plaintiff seeks damages against the Defendants for common law negligence, intentional tort, wrongful death, and medical malpractice.

   Although Lakeview is located within the jurisdiction of the United States District Court for the Western District of New York, the Plaintiff filed this action in the Southern District of New York because the Official Defendants maintain offices within this District and because this is the location of the Surrogate's Court proceeding regarding Baker's estate. Furthermore, it is the jurisdiction in which Baker last resided and the jurisdiction [*3] in which the Plaintiff continues to reside. Finally, the Plaintiff alleges that many of former Lakeview inmates who are expected to testify at trial presently reside in the Southern District.

   The Defendants filed the present motion on May 13, 1993, and oral argument was heard on June 23, 1993. The motion was considered submitted as of the latter date.

1993 U.S. Dist. LEXIS 12445, *3
62 Fair Empl. Prac. Cas. (BNA) 385; 62 Empl. Prac. Dec. (CCH) P42,492

*Discussion*

I. *The Southern District Is An Improper Venue*

28 U.S.C. § 1391(b) governs venue in this § 1983 action. That section sets forth three distinct conditions under which venue is conferred on one or more judicial districts:

> [HN1]A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only if (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be [*4] brought.

28 U.S.C. § 1391(b).

A. *No Defendant Resides In The Southern District*

"It is settled law that [HN2]under § 1391 the 'residence' of public officers such as these defendants means his or her 'official' and not 'actual' residence." *Canaday v. Koch*, 598 F. Supp. 1139, 1143 (E.D.N.Y. 1984) (citing *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y.)). While the Plaintiff's complaint states that the action is brought against the Defendants individually and in their official capacities, it is uncontested that all the Defendants are being sued for acts of commission and omission while functioning as agents of the State of New York. *See Berry v. New York State Dep't of Correctional Serv.*, 808 F. Supp. 1106, 1109 (S.D.N.Y. 1992).

It is also well-settled that, for venue purposes, state officials against whom actions are brought for their official acts reside in the district where they perform their official duties. *See Watford v. Scully*, No. 88 Civ. 8372 (RWS), 1989 U.S. Dist. LEXIS 5708, at *3 (S.D.N.Y. May 23, 1989); *Andrew H. v. Ambach*, 579 F. Supp. 85, 88 (S.D.N.Y. 1984); [*5] *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 225 (E.D.N.Y. 1986); *Canaday*, 598 F. Supp. at 1143; *Birnbaum*, 546 F. Supp.

at 1366. Thus, for purposes of venue, the Correctional Officer Defendants reside in the Western District of New York, while the Official Defendants, whose headquarters are in Albany, New York, reside in the Northern District of New York.

The Plaintiff asserts that, because the Official Defendants maintain branch offices within the Southern District, this is sufficient to confer venue pursuant to § 1391(b). However, this claim misstates the principle repeatedly articulated by the district courts of Second Circuit that [HN3]the residence of officers of a New York State agency is their official residence and not merely the location of a subsidiary branch office:

> While a state defendant may have more than one official residence due to having branch offices where substantial amounts of official business are conducted, their residence for purposes of 1391(b) is one of these official residences. . . . The mere fact that the State, the ostensible defendant, has offices [*6] and employees all around the state, is legally irrelevant for the purposes of venue, since here the state is not being sued for activities that occurred outside of the Northern or the Western District.

*Berry*, 808 F. Supp. at 1109 (citation omitted); *accord Procario v. Ambach*, 466 F. Supp. 452, 453-454 (S.D.N.Y. 1979).

Therefore, in the matter at hand, the residence condition of § 1391(b)(1) confers venue on the Western and Northern Districts but not on the Southern District.

B. *No Part Of The Events Or Omissions Giving Rise To The Claims Occurred In The Southern District*

[HN4]While a plaintiff may choose between two or more districts that may be assigned as the locus of a substantial part of the events or omissions giving rise to the claim, *see Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S. Ct. 2710, 61 L. Ed. 2d 464 (1979), the plaintiff's choices are limited to just those districts.

The Defendants contend that, because the incident in question which resulted in Baker's death occurred at Lakeview, the Plaintiff's claims arose exclusively within the jurisdiction of the Western District. While this interpretation [*7] is consistent with the old version of §

1391(b), which focused exclusively on the location where the plaintiff's claim arose, the statute was recently amended to confer venue where "a *substantial part* of the events or omissions giving rise to the claim occurred." *See* Act of Dec. 1, 1990, Pub. L. No. 101-650, § 311, 104 Stat. 5089 (emphasis added). Now the threshold question to answer when confronted with the issue of the appropriateness of the Plaintiff's choice of venue is whether a substantial part of the events or omissions giving rise to the claim occurred in the Southern District.

To the extent that the Plaintiff's claims are based on the allegations that the Official Defendants failed and refused to provide Baker safe and secure custody consistent with sound and accepted correctional practices, that they were negligent in their supervisory responsibilities, that they failed to provide Baker adequate medical care, and that they denied Baker his due process rights, these allegedly material acts of commission and omission occurred for venue purposes where the Officials Defendants reside, to wit, in the Northern District where they performed their official duties.

Therefore, [*8] the "substantial part" condition of § 1391(b)(2) confers venue on the Western and Northern Districts but, once again, not on the Southern District. [1]

> 1 Because venue is conferred by the residence and "substantial part" conditions of § 1391(b) on the Western and Northern Districts, the "district in which any defendant may be found" condition of § 1391(b)(3) is inapplicable.

*II. The Plaintiff Has The Choice Of Bringing This Action In Either The Western Or Northern District of New York*

Because § 1391(b) does confer venue in this matter on the Western and Northern Districts, it would be inappropriate to dismiss this action pursuant to Rule 12(b)(3). The remaining issue to decide is which of these two districts would be the most appropriate forum for this action. While acknowledging that § 1391(b) confers venue on both districts, the Defendants moves pursuant to 28 U.S.C. § 1404(a) for an order transferring this action to the Western District. However, in considering the relevant [*9] criteria governing § 1404 transfers and applying them to the record on this motion, it is concluded that the Western and Northern Districts are equally appropriate fora and that it is appropriate to defer to the decision of the Plaintiff regarding the district to

which this action will be transferred.

[HN5]Motions to transfer venue from one federal district court to another are governed by 28 U.S.C. § 1404(a). The statute provides in relevant part, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a).

[HN6]The questions to be answered on a motion to transfer are whether the action could have been brought in the jurisdiction where the movant seeks to have the case transferred, and if so, considering the convenience of the witnesses and the parties and the interest of justice, whether the proposed district is appropriate. *See Hernandez v. Graebel Van Lines,* 761 F. Supp. 983, 986 (E.D.N.Y. 1991). The party seeking transfer bears [*10] the burden of clearly establishing that the transfer is appropriate and that the motion should be granted. *See Rolls-Royce Motors, Inc., v. Charles Schmitt & Co.,* 657 F. Supp. 1040, 1060 (S.D.N.Y. 1987). The moving party must specify what evidence and witnesses it intends to rely on and show that the balance of convenience weighs heavily in its favor. *Id.*

[HN7]The burden of establishing that an action should be transferred pursuant to § 1404 falls squarely on the defendant-movant. *See Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied,* 440 U.S. 908, 59 L. Ed. 2d 455, 99 S. Ct. 1215 (1979); *First Federal Savings Bank v. Tazzia,* 696 F. Supp. 904, 909 (S.D.N.Y. 1988). The defendant's burden is substantial because a plaintiff's choice of forum is accorded considerable weight and will not be disturbed unless the defendant has made a clear showing that convenience and justice for the parties demands that the litigation proceed elsewhere. *See Id.* at 910. When the balance of convenience is in equipoise, plaintiff's choice of forum is rarely [*11] disturbed. *See Id.; Ayers v. Arabian American Oil Co.,* 571 F. Supp. 707, 709 (S.D.N.Y. 1983). However, the emphasis a court places on the factor of the plaintiff's choice diminishes substantially when the acts of commission and omission giving rise to the action bear little material connection to the chosen forum. *See St. Regis Mohawk Tribe v. State of New York,* 774 F. Supp. 185, 187 (S.D.N.Y. 1991); *Hernandez,* 761 F. Supp. at 990.

[HN8]The grant of a motion to transfer under 28 U.S.C. 1404(a) is left to the discretion of the court. *See*

1993 U.S. Dist. LEXIS 12445, *11
62 Fair Empl. Prac. Cas. (BNA) 385; 62 Empl. Prac. Dec. (CCH) P42,492

*Somerville v. Major Exploration, Inc.,* 576 F. Supp. 902, 906 (S.D.N.Y. 1983). In making this determination courts consider the convenience of the parties, convenience of the witnesses, relative means of parties, locus of operative facts and relative ease of access to source of proof, attendance of witnesses, the weight accorded plaintiff's choice of forum, the desirability of having the case tried by the forum familiar with the substantive law to be applied, practical difficulties, and totality of [*12] the circumstances. *See, Hernandez,* 761 F. Supp. at 987; *Cain,* 630 F. Supp. at 226; *Schneider v. Sears,* 265 F. Supp. 257, 263 (S.D.N.Y. 1967).

The convenience of parties and witnesses is considered "the essential criteria under venue statute." *First City Federal Savings Bank v. Register,* 677 F. Supp. 236, 237 (S.D.N.Y. 1988). Here, the issue of convenience does not resolve the question of which forum is more appropriate because, as the Defendants concede, "likely witnesses, as well as the necessary documents and records are located either at Lakeview or Albany." Dfs.' Br. at 7. However, the Northern District may be a more convenient forum for the Plaintiff and her witnesses, and should that be the case, her selection of that district would be dispositive.

[HN9]The location of operative facts and the relative ease of access to sources of proof must also be considered on a motion to transfer under 28 U.S.C. § 1404(a). *See Mobile Video Services, Ltd., v. National Ass'n of Broadcast Employees & Technicians,* 574 F. Supp. 668, 670-71 (S.D.N.Y. 1983). [*13] While the Defendants assert that the Western District is the only appropriate forum because all of the events at issue occurred there, this contention overlooks the Plaintiff's allegations regarding the purportedly material acts of commission and omission by the Official Defendants in Albany. Once

these allegations are factored into the balancing equation of § 1404, the scales are left in equipoise with neither district appearing to be more appropriate than the other.

In light of the fact that venue lies in this action in both the Western and the Northern Districts, the Defendants have the burden of demonstrating that the criteria of § 1404(a) are satisfied only by the Western District. A review of the record establishes that the Defendants have failed to discharge their burden. This failure combined with the weight and significance that warrants deferring to the Plaintiff's choice of a forum where venue lies. Thus this Court will defer to the Plaintiff's decision in selecting to transfer this action to either the Western or Northern District of New York.

*Conclusion*

For the reasons set forth above, this Defendants' Rule 12(b) and § 1391(b) motion to dismiss this action is denied, [*14] but their motion for an order transferring this action to either the Western or Northern District of New York pursuant to § 1404(a) is granted. The determination regarding which district this action will be transferred to is left to the discretion of the Plaintiff.

The Plaintiff is hereby directed to submit a transfer order on notice.

It is so ordered.

New York, N.Y.

September 9, 1993

ROBERT W. SWEET

U.S.D.J.

LEXSEE



Cited
As of: Apr 07, 2008

YVES CLERC, Plaintiff, v. CANTONI, INC., KEVIN McPHERRIN
INTERNATIONAL GALLERY and KEVIN McPHERRIN, Individually,
Defendants.

01 Civ. 2481 (RO)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2002 U.S. Dist. LEXIS 12402

July 9, 2002, Decided
July 10, 2002, Filed

**DISPOSITION:** [*1] Defendant Cantoni's motion to dismiss for lack of personal jurisdiction and improper venue granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff artist sued defendants, a retailer, a gallery, and an individual, alleging copying his original copyrighted artworks (paintings) and undertaking to sell the allegedly infringing copies. The retailer moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) or alternatively, pursuant to Fed. R. Civ. P. 12(b)(3).

**OVERVIEW:** The painter, a resident of a foreign country, created paintings under his own name. The retailer sold contemporary home furniture, accessories, and design services in Texas and California. The retailer claimed that the court lacked personal jurisdiction over it. The court found that the artist failed to address the retailer's personal jurisdiction arguments under NY. C.P.L.R. §§ 301 and 302, and in any event, that exercise of personal jurisdiction did not comport with the requirements of due process. The artist only made unsupported conclusory assertions that the retailer's

contacts with the jurisdiction were substantial and continual within the ambit of the long-arm statute. There was no evidence of a connection between the retailer, the forum state and the litigation. Moreover, litigating in the forum state would impose a hardship on the retailer as it operates its business out of Texas and had very few contacts with the forum state, and the majority of its witnesses and evidence were located in Texas. Because jurisdiction did not exist in the forum state under the long-arm statute, venue was improper.

**OUTCOME:** The retailer's motion to dismiss for lack of personal jurisdiction and improper venue were granted.

**CORE TERMS:** painting, personal jurisdiction, hotel, infringing, artwork, venue, unsupported, displayed, showroom, gallery, hearsay, caller's, tortious acts, mass mailing, long-arm, comport, reside, displaying, lobby, acts committed, offered to sell, per year, responding, accessory, requisites, telephone, recipients, attending, resident, customers

**LexisNexis(R) Headnotes**

2002 U.S. Dist. LEXIS 12402, *1
1955 Trade Cas. (CCH) P68,034; 14 Fed. R. Serv. 2d (Callaghan) 665

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1]In responding to a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a prima facie showing by his pleadings and affidavits that jurisdiction exists, and all doubts and inferences are to be resolved in his favor. A district court's determination is a two-part process. First, the court must look to the law of the forum state to determine whether the exercise of personal jurisdiction is appropriate. Second, the court must systematically assess whether the exercise of such jurisdiction comports with the requisites of due process, meaning that a state may only exercise personal jurisdiction over a non-resident where there exist minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business*
[HN2]In the context of establishing personal jurisdiction, N.Y. C.P.L.R. §301 requires a continuous and systematic course of doing business.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Torts > Procedure > Commencement & Prosecution > Personal Jurisdiction*
[HN3]Long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302 authorizes the exercise of personal jurisdiction if a defendant: (1) has committed tortious acts within the state, N.Y. C.P.L.R. § 302(a)(2); (2) has committed tortious acts outside the state that caused injury within the state provided that the defendant was also conducting business in or deriving substantial revenue from interstate commerce and should reasonably expect that the tortious act will have consequences in New York, N.Y. C.P.L.R. § 302(a)(3); and (3) transacts any business within the state or contracts anywhere to supply goods or services in the state, N.Y. C.P.L.R. § 302(a)(1).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*

*Civil Procedure > Venue > Agents*
*Civil Procedure > Venue > Special Venue*
[HN4]Suits relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found. 28 U.S.C.S. § 1400(a). The test for this is equated with the test for personal jurisdiction under state long-arm statutes.

**COUNSEL:** For YVES CLERC, plaintiff: Donald E. Creadore, Jr., Tunick, Kupferman & Creadore, P.C., New York, NY.

For KEVIN MCPHERRIN INTERNATIONAL GALLERY, KEVIN MCPHERRIN, defendants: John R. Cahill, Berger, Stern & Webb, L.L.P., New York, NY.

**JUDGES:** Richard Owen, United States District Judge.

**OPINION BY:** Richard Owen

**OPINION**

*MEMORANDUM AND ORDER*

*OWEN, District Judge:*

Before me is defendant Cantoni, Inc.'s ("Cantoni") motion to dismiss the Amended Complaint as to Cantoni: (1) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction; or (2) alternatively, pursuant to Rule 12(b)(3) for improper venue. For the reasons set forth below, Cantoni's motion is granted.

Plaintiff Yves Clerc ("Clerc") is a citizen and resident of France and is primarily engaged in the creation of painted artworks under his own name. Cantoni, a Delaware corporation, is a retailer of contemporary home furniture, accessories, and design services, with its principal place of business and headquarters in Dallas, Texas. Cantoni has showrooms in Dallas, Houston and Irvine, California. It also [*2] has a distribution center in Farmers Branch, Texas, near Dallas. In his Amended Complaint, Clerc accuses Cantoni and other defendants [1] of copying his original copyrighted artworks (paintings) and undertaking to sell the allegedly infringing copies (the alleged copies are referred to herein as "infringing artwork" or "Rilke paintings").

    1   The other defendants are Kevin McPherrin International Gallery and Kevin McPherrin,

Individually. They have not joined Cantoni's motion, and thus are unaffected by its outcome.

[HN1]In responding to a motion to dismiss for lack of personal jurisdiction, Clerc has the burden of making a prima facie showing by his pleadings and affidavits that jurisdiction exists, and all doubts and inferences are to be resolved in his favor. *See Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001). The court's determination is a two-part process. First, the court must look to the law of the forum state to determine whether the exercise of personal jurisdiction [*3] is appropriate. Second, the court must systematically assess whether the exercise of such jurisdiction "comports with the requisites of due process," *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir. 1997), meaning that a state may only exercise personal jurisdiction over a non-resident where there exist "minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Fort Knox Music, Inc. v. Baptiste,* 203 F.3d 193, 196 (2d Cir. 2000) (citation omitted).

Before analyzing the two-part test, I observe the utter lack of foundation for Clerc's alleging in his Amended Complaint personal jurisdiction over Cantoni in New York. There, Clerc states that "upon information and belief Defendant CANTONI has been openly displaying and is offering to sell the infringing artwork here in New York." (Amended Compl. P 21). [2] On oral argument, Clerc's attorney was pressed for support for the "displaying" aspect of this assertion. (Tr. 12-16). The transcript reads:

THE COURT: Mr. Creadore, what's the basis for the statement of an infringing painting being displayed in New York as stated [*4] in your affidavit?

MR. CREADORE: It's stated in my affidavit, your Honor, because that's exactly the state of events. There are actually two matters that are before you.

THE COURT: Just tell me. Somebody gave you some information that said a Rilke was displayed in New York at somebody's gallery or somebody's hotel or somebody's terminal, or what?

\* \* \*

MR. CREADORE: An agent of Mr. Clerc . . . was in New York City staying in a hotel. . . .And he came down to the lobby. And as the elevator doors part, there is a painting there. And he said to himself, my, that looks like a Clerc painting, only to walk up to the painting and see the name Rilke was on that.

So that started the series of events that we had started an action, by the way, against McPherrin.

THE COURT: Can I stop you?

MR. CREADORE: Go ahead.

THE COURT: Do you have that in any of your papers?

MR. CREADORE: Yes. It's actually in another complaint that was filed in a separate action before you.

THE COURT: No, before me. Is there, before me, a competent statement other than your hearsay two-liner in your affidavit about this? Is there a competent statement of this man who says I saw this in a hotel lobby, Hotel X and [*5] such and such a date? Is there anything like that in the papers before me?

MR. CREADORE: I don't have that statement in the papers, your Honor. No.

THE COURT: Then how can you charge the other side here that they have failed to explain something that you don't even have in the papers?

MR. CREADORE: Well, with all due respect, you Honor, we don't know how that painting --

THE COURT: I don't even have [a] competent statement that it was ever in a hotel in New York.

MS. STERN: You Honor, this is the first time that I am even hearing of this.

2002 U.S. Dist. LEXIS 12402, *5
1955 Trade Cas. (CCH) P68,034; 14 Fed. R. Serv. 2d (Callaghan) 665

THE COURT: I don't have anything about -- your statement that it was in a hotel in New York is hearsay, that is utterly unsupported and it's as if it didn't exist. And you charge them with failing to explain it when you don't even put in an affidavit saying what the guy saw, how can you do that?

MR. CREADORE: Your Honor, this painting that we are speaking about in New York is the subject of another action before you.

THE COURT: I don't care. We are dealing with this action, we are dealing with them, I am not dealing with some other action. Have you to put in there I got an affidavit from this man, I saw a painting, and then your adversary? [*6] Deal with that.

MR. CREADORE: Oh, well.

THE COURT: But I mean, to put this kind of thing in here.

MR. CREADORE: By the way, I personally observed the painting myself, it's in my office now. It's been given to me by Park Central Hotel so I saw it.

THE COURT: Why didn't you put that in here, counsel?

MR. CREADORE: I don't have an answer for that. I didn't think it was a sound fact at the time.

THE COURT: The way you put it in here is sheer, unsupported hearsay. Utterly unsupported hearsay to me. Zero.

MR. CREADORE: Let the record reflect, though, that I have just stated on the record that I have observed the painting myself at a hotel and in fact they were named a party in an action before your Honor and they have since given me the painting.

THE COURT: I will treat that as if

you are under oath and we will go from there.

MR. CREADORE: Thank you, your Honor.

THE COURT: Do you have any idea where the painting came from other than it was in a hotel and it's now in your office?

MR. CREADORE: We believe --

THE COURT: No, please, forget believe.

MR. CREADORE: Do we have an idea. We think it came from McPherrin Gallery.

THE COURT: Forget think. . . .What kind of proof do you [*7] have to charge them with knowledgeably putting this in a hotel lobby? Do you have any proof? Do you have any document that shows it was shipped there? Where it came from? Who put it there?

MR. CREADORE: I don't, because I don't have the discovery in this matter.

THE COURT: You . . . don't have any basis for charging them with displaying and infringing in a hotel in New York other than you think?

MR. CREADORE: Not the hotel painting, you are correct, I don't have that proof now.

THE COURT: Then you don't have any basis for saying, for charging them and demanding that they explain how it was shown in New York because you don't even know they did it. Anybody could have done it, right?

MR. CREADORE: In theory, yes; anybody could have done it, Judge.

(*Id.*).

2    The plaintiff's memorandum of law at p. 6 is

2002 U.S. Dist. LEXIS 12402, *7
1955 Trade Cas. (CCH) P68,034; 14 Fed. R. Serv. 2d (Callaghan) 665

less supportive, reading, ". . . it is conceivable that the painting displayed in New York was sold by [Cantoni]."

As for Clerc's allegation that "Cantoni is offering to sell the infringing artwork [*8] in New York," Clerc's counsel's affidavit with its partisan factual selectivity and erroneous consequent emotional accusation reads:

> David Richmond [a Cantoni employee in Texas] communicated with one of Plaintiff's agents located in New York State prior to the commencement of this lawsuit. [3] Among the communications with David Richmond are written messages sent by him into this jurisdiction describing several [Rilke paintings]. In each instance, a photocopy of the 'Rilke' artwork purportedly for sale accompanied the written communication. To now come forth with a blanket denial that "Cantoni has never in any way" offered to sell a 'Rilke' in this State further underscores its bad faith behavior regarding the lawful rights of the artist.

(Creadore Aff. P 4). Cantoni's David Richmond's responding affidavit (not materially disputed on the argument) fills in the significant balance of the picture, which is that Clerc's counsel Creadore in New York on behalf of Clerc initiated the telephone calls to Richmond at Cantoni in Texas seeking information about Rilke paintings. Richmond, unaware that the caller was based in New York, [4] provided the information and materials [*9] to the caller via email to the address the caller gave, which did not reveal the caller's New York situs either. It is this that Clerc turns into the claim that Cantoni is wrongfully denying an offer to sell a Rilke painting in New York. (Id.). Thus, from the argument (Tr. 22-5; and see Richmond Aff. pp. 2-3), these calls to Cantoni were not offers by Cantoni to sell, but at best calls made on Clerc's behalf seeking information and materials for investigative purposes (Tr. 22), which in no way justifies Clerc accusing Cantoni of "bad faith behavior," and at worst, was part of "a last ditch effort to try to establish jurisdiction," as argued by Cantoni's attorney. (Tr. 7-8; 21-23).

3    [Footnote by this Court:] It was Clerc's attorney, in fact, who called Richmond first, as

was acknowledged on the argument hereof. (See infra).

4    Creadore, on the argument, did not recall if he did or did not tell Richmond he was calling from New York. (Tr. 22; and see Richmond Aff. pp. 2-3).

As for [*10] the two-part test, required under the law, Clerc's papers fail to address meaningfully Cantoni's arguments that this court may not exercise personal jurisdiction over it under New York's C.P.L.R. §§ 301 and 302, and in any event, that exercise of personal jurisdiction here does not comport with the requirements of due process. Clerc only makes unsupported conclusory assertions that Cantoni's "contacts with this jurisdiction are substantial and continual within the ambit of CPLR 301 and 302." (Creadore Aff. pp. 1, 4). [5]

> 5    Cantoni complains that the Creadore affidavit is "argument in the guise of averment," and therefore is entitled to no weight. I agree. The Creadore affidavit is simply factual argument that does not belong in an affidavit under these circumstances, but should have been made part of the brief.

Cantoni in fact has extremely limited contacts with New York, as follows:

> .  Approximately .03% of its revenues represent sales of goods to purchasers who identified themselves as New York residents [*11] and/or requested that the goods they purchased be shipped to New York. These customers visited and made their purchases at Cantoni's Texas showrooms.

> .  Cantoni does not advertise its goods and services in New York. Approximately five to eight times per year, Cantoni does a mass mailing to customers to notify them of events taking place at Cantoni's showrooms in Texas and/or California. The recipients of mailings with New York addresses represent less than 0.18% of the total number of mass mailing recipients. These mass mailings never featured, depicted or otherwise reproduced any Rilke paintings.

. From January 1, 1998 through June 27, 2001, Cantoni purchased approximately $ 6,300,000 in goods from vendors who were either located in New York or who requested that Cantoni make payment for the goods to a bank or vendor representative in New York. These purchases were made via fax from Dallas.

. Cantoni's buyers attend two trade shows in New York per year, which focus on the gift and accessory market. Cantoni's buyers never place orders or purchase goods while attending trade shows. Rather, they decide what to purchase after returning to Texas and make any purchases from [*12] there. Cantoni did not purchase the Rilke paintings as a consequence of attending any trade shows in New York. Moreover, Cantoni has never displayed or offered to sell any of its goods in New York, including the Rilke paintings.

(James Aff. PP15-18). In addition, Cantoni has never had a showroom in New York, nor is it registered to do business here. It does not own or rent real estate here, has no bank accounts here, does not have any agents here and does not maintain a telephone listing here. (*Id.* PP 6-14). These contacts fail to show a [HN2]"continuous and systematic course of doing business" as required by CPLR § 301. *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (N.Y. 1981).

Clerc also fails to meet his burden regarding [HN3]long-arm jurisdiction pursuant to CPLR § 302, which authorizes the exercise of personal jurisdiction if a defendant: (1) has committed tortious acts within the state (§ 302(a)(2)); (2) has committed tortious acts outside the state that caused injury within the state provided that the defendant was also conducting business in or deriving substantial revenue from interstate commerce and should reasonably expect [*13] that the tortious act will have consequences in New York (§ 302(a)(3)); and (3) "transacts any business within the state or contracts anywhere to supply goods or services in the state" (§ 302(a)(1)). There is no evidence of tortious acts committed in New York, tortious acts committed outside

of New York causing injury in New York (Clerc resides in France), and there is no showing of a "strong nexus" between the transaction of business by Cantoni in New York and plaintiff's claims, which is required for § 302(a)(1).

Finally, Cantoni's contacts here do not comport with the requisites of due process, as there is no evidence of a connection between Cantoni, New York and the litigation. Moreover, litigating in New York would impose a hardship on Cantoni as it operates its business out of Texas and has very few contacts with New York, and the majority of its witnesses and evidence are located in Texas.

Having found a lack of personal jurisdiction over Cantoni, I need not address Cantoni's alternative argument of improper venue, but I nevertheless will. Section 1400(a) of Title 28 of the United States Code provides that [HN4]suits relating to copyrights "may be instituted in the district [*14] in which the defendant or his agent resides or may be found." The test for this is equated with the test for personal jurisdiction under state long-arm statutes. Because jurisdiction does not exist here under New York's long-arm statute, venue is improper. Venue is also improper under 28 U.S.C. § 1391(b) because Cantoni does not reside in New York, nor did a substantial part of the events giving rise to Clerc's claims against Cantoni arise in New York. Moreover, the other defendants, Kevin McPherrin International Gallery and Kevin McPherrin, are not located in New York.

Accordingly, Cantoni's motion to dismiss for lack of personal jurisdiction and improper venue is hereby granted. I make no findings as to the exercise of personal jurisdiction over defendants KMI and Kevin McPherrin, as they have not joined in Cantoni's motion.

So ordered.

Dated: July 9, 2002

New York, New York

Richard Owen

United States District Judge

LEXSEE



Positive
As of: Apr 07, 2008

JOHN A. DOLSON, Plaintiff, -against- NEW YORK STATE THRUWAY
AUTHORITY; GARY FRANCES in an individual capacity; WILLIAM RINALDI
in an individual capacity; and RAFAEL MORALES, in an individual capacity,
Defendants.

00 Civ. 6439 (RLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2001 U.S. Dist. LEXIS 4283

April 10, 2001, Decided
April 11, 2001, Filed

**SUBSEQUENT HISTORY:** Summary judgment
granted by Dolson v. New York State Thruway Auth.,
2003 U.S. Dist. LEXIS 3548 (N.D.N.Y. Mar. 12, 2003)

**DISPOSITION:**     [*1] Action transferred to Northern
District of New York pursuant to Section 1406(a).

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved to
transfer venue in plaintiff's employment discrimination
action.

**OVERVIEW:** Plaintiff filed an employment
discrimination action against defendants. Defendants
moved to dismiss the action based on improper venue
pursuant to Fed. R. Civ. P. 12(b)(3), or in the alternative,
to transfer pursuant to 28 U.S.C.S. § 1404(a). The court
granted the motion to transfer. It held that plaintiff had
failed to meet its burden of demonstrating that venue was
proper where brought. As such, the action was
transferred.

**OUTCOME:** Motion to transfer was granted, because
plaintiff had failed to demonstrate that venue was proper

where the action was brought.

**CORE TERMS:** venue, judicial district, validate, reside,
substantial part, citation omitted, burden of proving,
central office, failed to meet, transferred

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN1]When a plaintiff commences a civil action in
federal district court based on a federal question, venue is
proper in: (1) a judicial district where any defendant
resides, if all defendants reside in the same State, (2) a
judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred, or a
substantial part of property that is the subject of the
action is situated, or (3) a judicial district in which any
defendant may be found, if there is no district in which
the action may otherwise be brought. 28 U.S.C.S. §
1391(b).

2001 U.S. Dist. LEXIS 4283, *1
94 L. Ed. 2d 92, ***111; 1987 U.S. LEXIS 555

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Forum Non Conveniens*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*

[HN2]On a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), the court must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Although plaintiff benefits from such favorable construction, it nonetheless bears the burden of proving that venue is proper, once an objection has been made. If the defendant prevails on its Fed. R. Civ. P. 12(b)(3) motion, the court has the power to dismiss or transfer the case to any district in which it could have been brought. 28 U.S.C.S. § 1406(a).

**COUNSEL:** For Plaintiff: AMBROSE W. WOTORSON, Of Counsel, LAW OFFICES OF AMBROSE WOTORSON, P.C., New York, New York.

For Defendants: LISA GHARTEY, Of Counsel, ELLIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF NEW YORK, New York, New York.

**JUDGES:** ROBERT L. CARTER, U.S.D.J.

**OPINION BY:** ROBERT L. CARTER

**OPINION**

ROBERT L. CARTER, District Judge

Defendants move to dismiss this action based on improper venue pursuant to Rule 12(b)(3), F.R. Civ. P., and 28 U.S.C. § 1391(b), or in the alternative, to transfer this action from the Southern District of New York to the Northern District of New York, pursuant to 28 U.S.C. § 1404(a).

**BACKGROUND**

Given the scope of the instant claim, a detailed exploration of the facts is unnecessary. It is sufficient to note that plaintiff John Dolson was formerly employed by the defendant, New York State Thruway Authority ("Thruway Authority"). Plaintiff was terminated from his employment with the Thruway Authority on December 23, 1997 for alleged misconduct. Defendants Gary Francis, William Rinaldi, Robert Pardy and Rafael Morales, (the [*2] "individual defendants") were employed by the Thruway Authority and allegedly violated "plaintiff's civil rights while acting under color of state law." (Cplt. P 5.) Plaintiff filed suit on August 28, 2000 pursuant to 42 U.S.C. § 1981 and 1983, seeking damages based upon claims of retaliation and racial discrimination. Defendant filed the instant motion on January 26, 2001. Plaintiff did not file opposing papers.

A.

[HN1]When a plaintiff commences a civil action in federal district court based on a federal question, venue is proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). [HN2]On a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the court must accept the facts alleged in the complaint as true and construe all [*3] reasonable inferences in the plaintiff's favor. See *Imagineering, Inc. v. Lukingbeal*, 1996 U.S. Dist. LEXIS 3939, *5, 1996 WL 148431, at *2 (S.D.N.Y. April 2, 1996) (Carter, J.) (citation omitted). "Although plaintiff benefits from such favorable construction, it nonetheless bears the burden of proving that venue is proper, once an objection has been made." *Id.* (citations omitted). If the defendant prevails on its Rule 12(b)(3) motion, the court has the power to dismiss or transfer the case to any district in which it could have been brought. See 28 U.S.C. § 1406(a); see also *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) (holding that "whether dismissal or transfer is appropriate lies within the sound discretion of the district court"). [1]

1 Transfer is warranted under Section 1404(a) if venue is proper in both the court transferring the action and the court to which the action is transferred. Section 1406(a) applies where the court in which the action was filed lacks jurisdiction and must either dismiss or transfer the

2001 U.S. Dist. LEXIS 4283, *3
94 L. Ed. 2d 92, ***111; 1987 U.S. LEXIS 555

action to an appropriate forum. *See Hall v. South Orange*, 89 F. Supp. 2d 488, 490 (S.D.N.Y. 2000) (Parker, J.)

[*4] B.

Plaintiff's complaint alleges that venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the "operative events occurred within this judicial district." (Cplt. P 2.) However, all of the allegations which form the basis of plaintiff's complaint occurred at the central office of the defendant Thruway Authority, in Albany, New York, located in the Northern District of New York. Therefore, 28 U.S.C. § 1391(b)(2) fails to validate venue in this district, and instead validates venue in the Northern District of New York.

Defendants further asserts that venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1), because the central office of the Thruway Authority is located in Albany, and all the named individual defendants reside in Albany. Plaintiff has not responded to defendants' motion and has thereby failed to meet its burden to show that any of the defendants reside in the chosen forum. Therefore, 28 U.S.C. § 1391(b)(1) also fails to validate venue in this district and instead validates venue in the Northern [*5] District of New York.

The final venue provision, 28 U.S.C. § 1391(b)(3),

indicates that, if no other venue basis is available, venue is appropriate in a judicial district in which any defendant may be found. Since venue would be appropriate in the Northern District of New York, this provision also fails to validate venue in this district.

Accordingly, plaintiff has failed to meet its burden of proving that venue is proper in the chosen forum. Since venue would be appropriate in the Northern District of New York, the court hereby transfers the case to that district, pursuant to Section 1406(a). The motion to transfer venue pursuant to Section 1404(a) is dismissed as moot.

## CONCLUSION

For the foregoing reasons, this action is hereby transferred to the Northern District of New York pursuant to Section 1406(a). The Clerk of the Court is directed to transfer the file in this action to the Clerk of the Court in the Northern District of New York.

**IT IS SO ORDERED.**

Dated: New York, New York

April 10, 2001

**ROBERT L. CARTER**

**U.S.D.J.**

LEXSEE



Cited
As of: Apr 07, 2008

**E. TERRI HERMAN, Plaintiff, -v.- SBC WARBURG DILLON READ, INC., d/b/a/ WARBURG DILLON READ LLC, Defendants.**

**99 Civ. 1593 (JSM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1999 U.S. Dist. LEXIS 13587; 80 Fair Empl. Prac. Cas. (BNA) 1694**

**September 2, 1999, Decided
September 3, 1999, Filed**

**DISPOSITION:**    [*1] Defendant's motion to compel plaintiff to arbitrate her claims and stay action in Court granted. Plaintiff's motion to enjoin arbitration denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sought to enjoin an arbitration proceeding for her wrongful termination claim in order to allow her complaint to proceed in court. Defendant employer sought to stay the action and to compel plaintiff to arbitrate her claims.

**OVERVIEW:** Plaintiff was employed as a salesperson for a securities company when she was terminated. Plaintiff sought to enjoin an arbitration proceeding for her wrongful termination claim in order to allow her complaint to proceed in court. Defendant sought to stay the action and to compel plaintiff to arbitrate her claims. The court denied plaintiff's motion to enjoin arbitration, concluding that plaintiff could not argue that requiring her to arbitrate her claim was unfair, since at the time she signed the form agreeing to arbitrate and during her entire tenure with defendant, the arbitration of employment discrimination claims was required by the National Association of Securities Dealers. The court determined that the plaintiff was forum shopping, and applied the exception to the first-filed rule in granting defendant's motion to compel arbitration.

**OUTCOME:** Defendant's motion to compel plaintiff to arbitrate her claims and stay action in court granted. Plaintiff's motion to enjoin arbitration denied because the exception to the first-file rule applied when plaintiff was merely forum shopping.

**CORE TERMS:** arbitration, arbitrate, discrimination claims, declaratory, settlement, preemptive, right to sue, enjoin, arbitration provisions, public policy, registered, convenient, compelled, litigate, binding, NASD Rule, gender discrimination, arbitration proceeding, unsuccessful, terminated

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Alternative Dispute Resolution*

1999 U.S. Dist. LEXIS 13587, *1; 80 Fair Empl. Prac. Cas. (BNA) 1694

[HN1]It is well established that the arbitration provisions are binding on registered agents for age discrimination claims. While the Supreme Court has not expressly ruled on this issue for Title VII claims, the overwhelming majority of courts in this circuit, as well as the majority of circuit courts, addressing the issue hold that these arbitration provisions are also binding for Title VII claims.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > General Overview*
*Securities Law > Self-Regulating Entities > National Association of Securities Dealers*
[HN2]The first-filed rule requires a court to give priority to the action filed first even if it is declaratory. However, a court may give the second-filed action priority if the balance of conveniences weighs in favor of it or if special circumstances exist, such as where a preemptive lawsuit is filed to dictate the forum.

**COUNSEL:** For Plaintiffs: Ethan A. Brecher, Liddle & Robinson, LLP, New York, NY.

For Defendants: Mary A. Gambardella, Elizabeth S. Torkelsen, Epstein Becker & Green, PC, Stamford, CT.

**JUDGES:** JOHN S. MARTIN, JR., U.S.D.J.

**OPINION BY:** JOHN S. MARTIN, JR.

**OPINION**

**MEMORANDUM OPINION AND ORDER**

JOHN S. MARTIN, Jr., District Judge:

Plaintiff, a 52 year old female, was employed by SBC Warburg Dillon Read as a salesperson in the institutional equity sales department from February 1986 until May 1998. At the start of her employment with defendant, plaintiff signed a Uniform Application for Securities Industry Registration or Transfer ("Form U-4") in which she agreed to arbitrate any claims that might arise in her employment with defendant.

In the spring of 1998, as a result of an impending merger with Union Bank of Switzerland, defendant terminated a number of people, including plaintiff, in the institutional equity sales department. Plaintiff alleges that she was unlawfully terminated based on her age and gender.

After settlement discussions between [*2] plaintiff and defendant proved unsuccessful, plaintiff filed a charge of age and gender discrimination with the EEOC in August 1998. She was issued a right to sue letter on December 2, 1998. On December 30, 1998, defendant filed a Statement of Claim with the National Association of Securities Dealers ("NASD") seeking arbitration of plaintiff's discrimination claims. On March 3, 1999, plaintiff filed a Complaint with this Court, alleging age and gender discrimination.

In June 1998, the Securities and Exchange Commission ("SEC") approved an amendment to NASD Rule 10201 which no longer required registered agents of broker-dealers to arbitrate their employment discrimination claims. This amendment was effective January 1, 1999.

Plaintiff seeks to enjoin the arbitration proceeding in order to allow her complaint to proceed in this Court. Defendant seeks to stay this action and to compel plaintiff to arbitrate her claims.

**Discussion**

[HN1]It is well established that the arbitration provisions, such as the one in Form U-4, are binding on registered agents for age discrimination claims. *See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991).* [*3] While the Supreme Court has not expressly ruled on this issue for Title VII claims, the overwhelming majority of courts in this circuit, as well as the majority of circuit courts, addressing the issue have held that these arbitration provisions are also binding for Title VII claims. *See Raiola v. Union Bank of Switzerland, 47 F. Supp. 2d 499, 505-06 (S.D.N.Y. 1999).*

Plaintiff seeks to enjoin the arbitration proceeding on the ground that defendant's filing of its claim to compel arbitration one day before the effective date of Rule 10201's amendment is forum shopping and, therefore, should be treated as an exception to the first-filed rule. [1]

1   Plaintiff also claims that she was not given a copy of the NASD or NYSE arbitration rules and, therefore, she cannot be forced to arbitrate her employment discrimination claims under

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999). This case is distinguishable from *Rosenberg*, because unlike the plaintiff in *Rosenberg*, Ms. Herman was experienced in the brokerage business when she signed Form U-4 agreeing to arbitrate all of her claims.

[*4] NASD Rule 10201's amendment was passed by the SEC in June 1998 and clearly stated that the amendment would be effective to claims filed after January 1, 1999. Before the amendment, Rule 10201 required a "member" or "associated person" to submit for arbitration any "dispute, claim, or controversy . . . arising out of the . . . termination of employment of such associated person(s) with such member." NASD Procedural Rules, Code of Arbitration Procedure 3-4 (1998). The unamended rule would allow a member, such as defendant, to file with the NASD for arbitration of an existing employment dispute with an employee that had signed Form U-4.

In this case, there was an existing dispute before defendant filed its claim on December 30, 1998. Settlement discussions were unsuccessful and plaintiff had received a right to sue letter on December 2, 1998. At this stage, defendant had the same right to file for arbitration with the NASD before January 1, 1999 as plaintiff had to wait until after January 1 to file a Complaint with this Court.

[HN2]The first-filed rule requires a court to give priority to the action filed first even if it is declaratory. *Lonza Inc. v. Rohm and Haas, Inc.*, 951 F. Supp. 46, 49 (S.D.N.Y. 1997). [*5] However, a court may give the second-filed action priority if the balance of conveniences weighs in favor of it or if special circumstances exist, such as where a preemptive lawsuit is filed to dictate the forum. *Id.* Plaintiff argues that defendant's filing for NASD arbitration is a preemptive declaratory action intended to force plaintiff to arbitrate her claim rather than litigate it in this Court.

The cases finding an exception to the first-filed rule for "forum-shopping" typically involve cases where venue has been shopped. *See Fuji Photo Film Co. v. Deep Creek Design, Inc.*, 1998 U.S. Dist. LEXIS 19525, No. 98 Civ. 2776 (JSM), 1998 WL 872416, *1-2 (S.D.N.Y. Dec. 15, 1998); *Lonza*, 951 F. Supp. at 49; *Cooperative Centrale Raiffeisen-Boerenleen Bank v. Northwestern Nat'l Ins. Co.*, 778 F. Supp. 1274, 1278

(S.D.N.Y. 1991). In these cases, the preemptive declaratory action was taken to make the litigation more convenient for the filer, thereby inconveniencing the plaintiff. These courts gave priority to the plaintiff's second-filed suit so that the plaintiff's settlement efforts were not punished and the legal manipulator was not rewarded.

These factors do [*6] not exist in this case. The NASD arbitration and the litigation in this Court are equally convenient or inconvenient to both parties. Both plaintiff and defendant are guilty of using the effective date of the amendment to choose the preferred forum. Plaintiff was issued a right to sue letter on December 2, 1998, and it was clear that plaintiff intended to litigate rather than settle the case. Thus, either party has a right to commence an arbitration after that date. Plaintiff can not complain that requiring her to arbitrate her claim is unfair, since at the time she signed Form U-4 and during her entire tenure with defendant, Rule 10201 required the arbitration of employment discrimination claims.

Plaintiff also argues that it would contravene the public policy of the amendment to Rule 10201 to require her to arbitrate her discrimination claim when the SEC has now established that a party should not be compelled to arbitrate such a dispute. Plaintiff's argument fails to address the fact that the SEC specifically chose for the amendment to take effect on January 1, 1999. The SEC obviously realized that parties who filed suits between the date the SEC passed the amendment in June 1998 [*7] and the effective date would be compelled to arbitrate their claims. The public policy underlying the amendment does not override the SEC's clear intent to make the amendment effective January 1, 1999. *See Hart v. Canadian Imperial Bank of Commerce*, 43 F. Supp. 2d 395, 402 (S.D.N.Y. 1999).

**Conclusion**

Defendant's motion to compel plaintiff to arbitrate her claims and stay the action in this Court is granted. Plaintiff's motion to enjoin the arbitration is denied.

**SO ORDERED.**

Dated: New York, New York

September 2, 1999

JOHN S. MARTIN, JR., U.S.D.J.

LEXSEE 1996 U.S. DIST. LEXIS 3939

IMAGINEERING, INC., Plaintiff, -against- CAROLINE
LUKINGBEAL, Defendant.

94 Civ. 2589 (RLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

1996 U.S. Dist. LEXIS 3939

April 1, 1996, Dated
April 2, 1996, FILED

COUNSEL:  **[*1]**  APPEARANCES

Heslin & Rothenberg, P.C., Attorneys
for Plaintiffs, Albany, New York,
Susan E. Farley, Douglas H. Tulley,
Jr., Of Counsel.

Neal J. Hurwitz, Attorney for
Defendants, New York, NY, Neal J.
Hurwitz, Of Counsel.

JUDGES: Robert L. Carter, U.S.D.J.

OPINION BY: Robert L. Carter

OPINION

OPINION

CARTER, District Judge

Defendant Caroline Lukingbeal moves
pursuant to *Rule 12(b)(3), F.R. Civ.
P.,* for an order dismissing the action
brought against her by plaintiff
Imagineering, Inc. ("Imagineering"),
for improper venue.

> 1  Defendant also moves for a
> stay of all proceedings in this
> action until the final
> determination of the appeal in
> the U.S. Court of Appeals for the
> Federal Circuit from the verdict
> and judgment in *Imagineering,
> Inc. v. Van Klassens, Inc.,* 92

Civ. 0751 (S.D.N.Y.) (Carter,
J.). That appeal has been
decided; the motion for a stay is
therefore moot. *See Imagineering,
Inc. v. Van Klassens, Inc.,* 53
F.3d 1260 (2d Cir.), *cert.
denied,* 133 L. Ed. 2d 197,
U.S.    , 116 S. Ct. 277 (1995).

**[*2]**  I.

This case arises out of
*Imagineering, Inc. v. Van Klassens,
Inc.,* No. 92 Civ. 0751 (S.D.N.Y.)
(Carter, J.). The factual and
procedural background to that case is
set forth in *Imagineering, Inc. v. Van
Klassens, Inc.,* 797 F. Supp. 329
(S.D.N.Y. 1992) (Carter, J.);
*Imagineering, Inc. v. Van Klassens,
Inc.,* 155 F.R.D. 68 (S.D.N.Y. 1994)
(Carter, J.); *Imagineering, Inc. v.
Van Klassens, Inc.,* 851 F. Supp. 532
(S.D.N.Y. 1994) (Carter, J.), and in
unpublished opinions of Sept. 8, 1993,
Oct. 7, 1993, and Mar. 30, 1994, with
which familiarity is assumed.

A brief synopsis of the relevant
background is in order here. Plaintiff
Imagineering brought suit in this
court against Van Klassens, Inc. ("Van
Klassens"), its competitor in the
manufacture of garden furniture, and
Robert Lukingbeal, the president of
Van Klassens. Imagineering asserted
federal claims of trade dress

infringement and false advertising, along with state law claims of unfair competition and violation of the New York State Anti-Dilution statute. In a jury trial commencing on October 28, 1993, defendants were found liable on the federal claims and the state claim of unfair competition; the jury awarded Imagineering [*3] $ 860,000 in compensatory damages and $ 4,000,000 in punitive damages. The parties agreed to submit defendants' laches claim to the court. In an opinion issued March 30, 1994, the court decided the issue in favor of plaintiffs. *Imagineering, Inc., 851 F. Supp. 532.* At that time, the court also granted attorneys' fees and costs to plaintiffs in the amount of $ 704,211.05 and enhanced damages of $ 250,000. Additionally, the court issued a permanent injunction to prevent any further trade dress infringement by defendants.

> 2    The Second Circuit vacated the award of punitive damages, finding the amount arbitrary and excessive. *Imagineering, Inc. v. Van Klassens, Inc., 53 F.3d 1260 (2d Cir. 1995).* The award was remitted to $ 1,500,000.

Following the jury verdict, Imagineering moved to add Caroline Lukingbeal, secretary-treasurer of Van Klassens and wife of Robert Lukingbeal, retroactively as a defendant to the action. The court denied the motion, holding that plaintiffs could have attempted joinder at [*4] an earlier point and that joinder would be prejudicial at such a late stage. *Imagineering, Inc., 155 F.R.D. 68.*

On April 12, 1994, plaintiff brought the present action against Caroline Lukingbeal. Plaintiff makes claims for unfair competition under 43(a) of the Lanham Act, *15 U.S.C. § 1125(a),* and under state common law.

II.

Plaintiff argues that venue is proper in the Southern District of New York under venue provisions *28 U.S.C. § 1391(b)(2)* and *28 U.S.C. § 1391(c).* When a defendant is sued in a federal district court not solely under diversity jurisdiction, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *28 U.S.C. § 1391(b)(2).* Venue may be proper under this provision in more than one district. *Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992); Alcoholics Anonymous World Services v. Friedman, No. 91 Civ. 8741, 1992 U.S. Dist. LEXIS 8939, *3, 1992 WL 150633 at *1 (S.D.N.Y. June 17, 1992) (Carter, J.).* Thus, "venue is proper in each district that is the situs of a substantial part of the events or omissions giving rise to the claim." *PI, Inc. v. Quality Products, Inc., 907 F. Supp. 752, 757* [*5] *(S.D.N.Y. 1995) (Koeltl, J.).*

For venue purposes, a corporate defendant is deemed to reside "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *28 U.S.C. § 1391(c).* In a state with more than one federal judicial district, such as New York, a corporation is

> deemed to reside in any district. . . within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Id.

In a motion to dismiss pursuant to *Rule 12(b)(3), F.R. Civ. P.*, the court "must accept that material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin, 18 F.3d 133, 136* (2d Cir.), *cert. denied, 130 L. Ed. 2d 63, U.S.      , 115 S. Ct. 117 (1994)*. Although plaintiff benefits from such favorable construction, it nonetheless bears the burden of showing that venue is proper, once an objection has been made. *PI, Inc., 907 F. Supp. at 757; Alcoholics* **[*6]** *Anonymous World Services, 1992 U.S. Dist. LEXIS 8939*, at *3, 1992 WL 150633 at *1.

III.

The court addresses plaintiff's arguments under each venue provision in turn. First, plaintiff contends that "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York. Plaintiff's claims involve the manufacture, sale, and advertising of Van Klassens's products. Imagineering argues that at least 13% of Van Klassens's sales are shipped into the state of New York, that components for the infringing furniture were selected and purchased in the state, that Van Klassens maintained a sales representative in New York, and that the company participated in a national advertising campaign that included New York.

Furthermore, Imagineering claims that defendant's participation in the trial against Van Klassens and Robert Lukingbeal as a corporate representative and as an individual strongly implicated in the offending activity (including a "cover-up" of that behavior) constituted a substantial part of the events giving rise to the claim. In short, Imagineering argues that defendant's active participation in the acts giving rise to the previous lawsuit as

well as her testimony in **[*7]** that suit satisfy venue requirements under *28 U.S.C. § 1391(b)(2)*.

According to defendant, however, neither her own activities nor those of Van Klassens in the Southern District of New York is sufficient to establish venue. (As defendant points out, the Southern District of New York, and not the state as a whole, is the appropriate area of scrutiny under the venue statutes.) Van Klassens has been located in Knoxville, Tennessee, since it was founded in 1986. Robert Lukingbeal, President of Van Klassens, has stated that the company has never at any time had an office, telephone number, bank account, or any property in New York, and that Van Klassens has shipped only two pieces of furniture to the Southern District of New York in the past three years. (Decl. of Robert Lukingbeal, May 6, 1994 at 1, 3.)

Defendant further argues that her participation in the first lawsuit cannot be considered an event giving rise to the claims in this lawsuit: her testimony is never mentioned in the Complaint, and she is not accused of violating any terms of that judgment.

In order to determine whether substantial activity giving rise to plaintiff's claims took place in the Southern District of New **[*8]** York, the court examines defendant's business activity within the time frame of the appropriate statute of limitations. Since the Lanham Act contains no statute of limitations, the court seeks the most analogous limitations period in the law of the forum state. *Wilson v. Garcia, 471 U.S. 261, 266-67, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985)*. The Second Circuit has not spoken on question of what statute of limitations to apply to claims brought under the Lanham Act, and courts in this district have issued conflicting opinions. *See e.g.,*

*Gordon & Breach Science Publishers v. American Inst. of Physics, 859 F. Supp. 1521, 1528-29 (S.D.N.Y. 1994)* (Sand, J.) (applying six-year statute of limitations for fraud actions); *PepsiCo, Inc. v. Dunlop Tire & Rubber Corp., 578 F. Supp. 196, 201 (S.D.N.Y. 1984)* (Ward, J.) (same); *Constr. Technology v. Lockformer Co., 704 F. Supp. 1212, 1218-21 (S.D.N.Y. 1989)* (Mukasey, J.) (applying three-year statute of limitations for injury to property). However, "although the fraud analogy may not be a perfect fit, it has been resoundingly determined to be the 'better fit' in this Circuit and elsewhere." *H & R Indus., Inc. v. Kirshner, 899* **[*9]** *F. Supp. 995, 1002 (E.D.N.Y. 1995)* (citing cases). This court agrees with the reasoning of *H & R Industries, Inc.* and the majority of courts in the Circuit that fraud is the closest state law analogy to Lanham Act claims. Accordingly, the six-year statute of limitations for fraud actions in New York, *N.Y. Civ. Prac. L. § 213(8)* (McKinney's 1990), will be applied to plaintiff's claims under the Lanham Act.

The court therefore examines Van Klassens's alleged offending activities in the Southern District of New York for a period of six years from the filing of the complaint on April 12, 1994. According to figures supplied by Robert Lukingbeal, a total of 2733 pieces of furniture were shipped by Van Klassens from 1988 through 1994. (Aff. of Robert Lukingbeal, Mar. 28, 1992, at 5 (attached as Exh. C to Pl.'s Memo. in Opp. to Def.'s Mot. to Dismiss for Lack of Venue); Decl. of Robert Lukingbeal, May 6, 1994, at 2.) Of these, 271 pieces were shipped to New York, or 9.9% of the total. [3] However, not all of these pieces of furniture were shipped to or ordered from the Southern District of New York [4]. The court has only incomplete information as to activity in the Southern

District specifically. **[*10]** Defendant offers that seven of the 68 pieces of furniture shipped to New York in 1991 were ordered from an office located in the Southern District and none were shipped here; two of the 18 pieces of furniture shipped to New York in 1992 went to the Southern District; and in 1993, none of the 19 pieces shipped to New York went to the Southern District, although three pieces were ordered from an office located here. In three years, then, 17 pieces of furniture were ordered from or shipped to the Southern District. Although figures on the Southern District are not presented for 1988-1990, 166 pieces of furniture were shipped to New York in those years; it seems likely that the number of pieces for this district will rise to at least double the known figure of 17, and possibly more. [5]

3   Plaintiff offers no support for its assertion that "at least 13% of all of Van Klassens furniture was shipped into New York," besides the March 28, 1992 affidavit of Robert Lukingbeal, which provides incomplete information for the relevant time period.

4   Resolving inferences in plaintiff's favor, the court assumes that either the origin of the order or the actual destination of the furniture could be considered the situs of the alleged confusion giving rise to plaintiff's claims. *See Schieffelin & Co. v. Jack Co. of Boca, 725 F. Supp. 1314, 1319 (S.D.N.Y. 1989)* (Leisure, J.) ("claims for trademark infringement or unfair competition are said to arise 'not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys

the defendant's product in the belief that he is buying the plaintiff's'") (citation omitted).

[*11]

5 There is one further source of uncertainty concerning these numbers: it is impossible to ascertain from the information submitted whether all of the pieces of furniture listed as shipped to or ordered from New York are pieces plaintiff claims as infringing. In the Complaint, plaintiff identifies Van Klassens's chaise lounge, side chair, settee, coffee table, loire settee, porch swing, low back and high back chair, round and rectangular table as infringing furniture. (See Complaint, Exh. A.) No figures are offered by either party as to the percentage of total sales these items constitute.

In short, the court lacks the exact figures on how many allegedly infringing pieces of furniture were shipped to or ordered from the Southern District of New York within six years from the filing of the complaint. Since these numbers have not been supplied, the court must approximate.

I am reluctant to hold the lack of exact figures against plaintiff. Imagineering argues, credibly, that it has been unable to acquire such information from Van Klassens, which supplied it with only incomplete invoices with the addresses of purchasers redacted. (See Exh. B to Surreply Memo. in Opp. to Def.'s Mot. to Dismiss, Oct. 12, 1995.) Van Klassens, of which defendant is secretary-treasurer and part owner, has been censured in the past for its failure to provide an accurate and complete accounting of its sales. See

Imagineering, Inc., 851 F. Supp. at 540. All reasonable inferences are, of course, drawn in plaintiff's favor in this motion to dismiss.

[*12] Imagineering also asserts that Van Klassens engaged in advertising in national publications headquartered in New York, with a national dissemination including the Southern District. Advertisement in national trade publications has been acknowledged as evidence of connection to a judicial district. See, e.g., French Transit, Ltd. v. Modern Coupon Systems, Inc., 858 F. Supp. 22, 26 (S.D.N.Y. 1994) (Schwartz, J.); Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc., 779 F. Supp. 335, 338 (S.D.N.Y. 1991) (Lasker, J.).

Imagineering further argues that Van Klassens had a New York sales representative, Jill Ann Chin, during the time in question. Defendant counters that Chin is her daughter, placed on the payroll merely in order to provide her with an income. Defendant contends that Chin performed no office for Van Klassens, did not live or work in the Southern District of New York, and was misidentified by Robert Lukingbeal in his deposition as a field representative for Van Klassens. Because Jill Ann Chin did not live in the Southern District of New York, and because plaintiff has failed to offer any specific allegations as to actual business performed for defendant in [*13] the district, her presence on the payroll does not help plaintiff to persuade the court that substantial activities giving rise to plaintiff's claims took place in this district. Similarly, Imagineering claims that Van Klassens solicited sales in New York but fails to allege any specific facts concerning the nature and extent of the solicitation; without adequate support, this claim likewise adds no weight to plaintiff's argument.

Plaintiff bases much of its argument under *28 U.S.C. § 1391(b)(2)* on the claim that defendant's testimony in the first lawsuit constituted offending behavior. The court finds no support in the Complaint for this charge. Imagineering makes claims for unfair competition, false advertising, and trade dress infringement under the Lanham Act and state common law; these claims involve the manufacture, sale, and advertising of Van Klassens's furniture. The Complaint never refers to a cover-up or a conspiracy of the nature of their present accusations against defendant. Under the terms of *§ 1391(b)(2)*, venue may not be founded on actions that are not a subject of the Complaint, that do not give rise to the plaintiff's stated causes of action.

Nevertheless, the **[*14]** court finds that venue is proper under *28 U.S.C. § 1391(b)(2)*. Van Klassens's sales in the Southern District, while not a large percentage of its overall sales, nonetheless constitute a sufficiently large number to make venue appropriate. There is no minimum percentage that must be met for a finding of venue. *Alcoholics Anonymous World Services, 1992 U.S. Dist. LEXIS 8939*, at *12, 1992 WL 150633 at *4 *See, e.g., French Transit, Ltd., 858 F. Supp. at 26* ("in the Southern District of New York, if a defendant targets the District by advertising and actively pursues efforts to market the product by making sales presentations and selling even a relatively nominal amount of products in the District, such actions may be regarded as constituting a substantial part of events giving rise to the claim"); *Schieffelin & Co. v. Jack Co. of Boca, 725 F. Supp. 1314, 1320 (S.D.N.Y. 1989)* (Leisure, J.) (holding that "in some cases, relatively small percentages of sales have been held to be sufficient to locate the lawsuit in the state" and listing cases and

percentages as low as .52%); *Halsprodukter Labs Karnerud Ab. v. Gero Vita Int'l*, No. 93 Civ. 2129, 1993 WL 384525 (N.D. Ill. 1993) (less than 3% of sales and less **[*15]** than 5% of advertising in the district sufficient to make venue proper). Fifty or more pieces of furniture sold in the district is certainly more than a minimal amount, and when combined with the advertising in national trade publication, it suffices to show that defendant has "deliberately projected herself into this jurisdiction." *Phoenix Home Life Mutual Ins. Co. v. Brown, 857 F. Supp. 7, 9 (W.D.N.Y. 1994)*. Therefore, venue in this court is appropriate.

IV.

Imagineering maintains that venue is also proper under the corporate venue statute, *28 U.S.C. § 1391(c)*, arguing that venue over Van Klassens should be imputed to defendant for a lack of adherence to corporate formalities. Because venue is proper under *28 U.S.C. § 1391(b)(2)*, the court need not address plaintiff's arguments that the corporate veil should be pierced. It is worth noting, however, that defendant's own affidavits admit that defendant has engaged in what might be considered the intermingling of corporate and personal funds, one of the situations in which courts have traditionally allowed the corporate veil to be pierced. *Rates Technology v. UTT Corp.*, No. 94 Civ. 0326, 1995 U.S. Dist. LEXIS 342, 1995 WL 16788 (S.D.N.Y. Jan. 18, **[*16]** 1995) (Leisure, J.). Van Klassens, by defendant's own admission, was used to provide substantial financial sums to the Lukingbeals' daughter although she "never performed any work for Van Klassens, Inc." (Decl. of Robert Lukingbeal, Oct. 6, 1995, at 3.) Nonetheless, the court at this time makes no decision as to whether corporate formalities have been

disregarded.

Conclusion

   The motion to dismiss for lack of proper venue is denied.

   IT IS SO ORDERED.

Dated: New York, New York

April 1, 1996

Robert L. Carter

U.S.D.J.

LEXSEE



Positive
As of: Apr 07, 2008

**PHARMACEUTICAL RESOURCES, INC., Plaintiff, -against- ALPHARMA USPD INC., Defendant.**

**02 Civ. 1015 (LMM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2002 U.S. Dist. LEXIS 8549**

**May 13, 2002, Decided**

**DISPOSITION:** This action is stayed until the District of Maryland decides whether to dismiss the Maryland action for lack of subject matter jurisdiction.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff pharmaceutical manufacturer sued defendant drug company for, among other claims, a declaration that the company infringed on the manufacturer's patents, as well as injunctive relief and damages. The company moved to transfer the action. In the alternative, the company moved for a stay of the action.

**OVERVIEW:** The company claimed that the action should have been transferred to the United States District Court for the District of Maryland, where the company had previously first filed an action against the manufacturer on the same issue of patent infringement alleged in the instant action. The court held that the case had a sufficient nexus with Maryland: the company's principal place of business was Maryland, and the alleged infringement took place in that state as well. Hence, no special circumstances existed that would preclude application of the first-to-file rule. Further, since the court had determined that there was no improper anticipatory filing, the plaintiff in the first-filed action (the company) was afforded the choice of forum. Allowing the instant action to proceed in two jurisdictions would have resulted in inefficiency. It was more appropriate for a single court to adjudicate the claims in order that pretrial discovery could have been conducted more efficiently, thereby saving time and expense for both parties and witnesses, and inconsistent results could have been avoided.

**OUTCOME:** The instant action was stayed until the United States District Court for the District of Maryland decided whether to dismiss the Maryland action. If the Maryland court decided that the Maryland action was properly brought there, the instant action would have been transferred to the District of Maryland. If the Maryland action was dismissed, the stay would have been lifted and the instant action would proceed in the instant forum.

**CORE TERMS:** special circumstances', infringement, patent, declaratory judgment, balance of convenience, megestrol, anticipatory, convenience, infringe, shopping, acetate, letter dated, subject matter jurisdiction, settlement negotiations, interest of justice, choice of forum, apprehension, settlement, lawsuit, notice, weigh, present action, file suit, place of business, filing date, mirror image, civil action, operative facts, anticipated, negotiations

**LexisNexis(R) Headnotes**

*Civil Procedure > Declaratory Judgment Actions > General Overview*
[HN1]A party has a right to seek a declaratory judgment where reasonable apprehension exists that it will be sued by another party.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Motions to Transfer > General Overview*
[HN2]It is a well-settled principle in the United States Court of Appeals for the Second Circuit that where proceedings involving the same parties and issues are pending simultaneously in different federal courts, the first-filed of the two takes priority absent special circumstances or a balance of convenience in favor of the second. The first-to-file rule requires a court to give priority to the action filed first even if it is a declaratory action, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise. The party seeking to deviate from the rule must demonstrate that circumstances justifying an exception exist, and it is within the trial court's discretion to determine if a departure is warranted.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Motions to Transfer > General Overview*
[HN3]On a motion to transfer, the primary "special circumstance" of concern to the United State Court of Appeals for the Second Circuit, which would preclude application of the first-to-file rule, is where the first suit was filed as a result of forum shopping. Forum shopping giving rise to an exception to the rule may be found where a suit bears only a slight connection to the action.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Motions to Transfer > General Overview*
[HN4]For purposes of a motion to transfer, a suit which is categorized as an "improper anticipatory filing," designed to preempt an anticipated infringement action,

constitutes a special circumstance exception to the first filed rule. An improper anticipatory filing is one made under the apparent threat of a presumed adversary filing the mirror image of that suit in another court. A party who launches such a preemptive strike by racing to the courthouse in his preferred forum should not benefit from the first-filed rule. An "apparent threat" is found where there is an overt statement that a party intends to commence litigation. To put a party on notice of a forthcoming lawsuit, a letter to a party must state the intention to file suit, a filing date, and/or a specific forum for the filing of the suit.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Motions to Transfer > General Overview*
[HN5]Courts often find exceptions to the first-filed rule when parties are engaged in settlement negotiations: where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Multiparty Litigation*
[HN6]The question of whether the balance of convenience warrants a departure from the first-filed rule for purposes of a motion to transfer requires courts to apply the same factors to this decision as in deciding whether transfer is appropriate under 28 U.S.C.S. § 1404(a). Transfer is appropriate where for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C.S. § 1404(a). The court must determine, in its discretion, whether the balance of convenience weighs in favor of a district court where the litigation might have been brought. The factors that guide this analysis include: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight

accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Copyright Law > Civil Infringement Actions > Jurisdiction & Venue > General Overview*
*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*
[HN7]Any civil action for patent infringement may be brought in the district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C.S. § 1400(b).

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8]In determining whether an action should be transferred to another federal district court, no single factor is determinative. The court has discretion to weigh the factors to reach an equitable result, although the plaintiff's choice of forum is accorded significant weight. The party requesting transfer bears the burden of showing that a transfer is warranted and that the balance of convenience weighs heavily in its favor.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
*Civil Procedure > Pretrial Matters > Conferences > Pretrial Orders*
[HN9]When ruling on a motion to transfer, it is more appropriate for a single court to adjudicate the claims in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.

**COUNSEL:**  [*1]  For PHARMACEUTICAL RESOURCES, INC., plaintiff: Loren H. Brown, Piper, Marbury, Rudnick & Wolfe, L.L.P., New York, NY.

For ALPHARMA USPD INC., defendant: Paul R. Taskier, Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC.

For ALPHARMA USPD INC., counter-claimant: Paul R. Taskier, Dickstein Shapiro Morin & Oshinsky LLP,

Washington, DC.

For PHARMACEUTICAL RESOURCES, INC., counter-defendant: Loren H. Brown, Piper, Marbury, Rudnick & Wolfe, L.L.P., New York, NY.

**JUDGES:** Lawrence M. McKenna, U.S.D.J.

**OPINION BY:** Lawrence M. McKenna

**OPINION**

MEMORANDUM AND ORDER

  MCKENNA, D.J.,

  Defendant Alpharma USPD Inc. ("Alpharma") brings this motion to transfer the present action to the District of Maryland, where Alpharma previously filed an action for a declaratory judgment (the "Maryland action"). In the alternative, Alpharma requests that the Court stay this action until completion of the Maryland action. For the reasons stated below, this Court stays this action until the Honorable Andre M. Davis, United States District Judge, District of Maryland, decides whether to dismiss the Maryland action for lack of subject matter jurisdiction. If the Maryland court decides that the Maryland [*2] action is properly brought there, the present action will be transferred to the District of Maryland.

**FACTS**

  Alpharma, a Maryland corporation with offices in Maryland, and defendant Pharmaceutical Resources, Inc. ("PRI") [1], a New Jersey corporation with offices in New York, are both drug manufacturers who are formulating generic versions of Bristol-Myers Squibb's megestrol acetate product, used in the treatment of unexplained weight loss. PRI received U.S. Patent Nos. 6,028,065 (" '065 patent") and 6,268,356 (" '356 patent") on February 22, 2000 and July 31, 2001 respectively. (Compl. PP 5, 6.) Both patents relate to PRI's megestrol acetate formulations. (Id.) Alpharma submitted an Abbreviated New Drug Application ("ANDA") for its formulation on December 29, 2000. (Ans. P 7.) Alpharma has not yet received marketing approval. (Id.)

  1   Par Pharmaceuticals ("Par") is PRI's wholly owned subsidiary. References to Par and PRI are

interchangeable for the purposes of this motion.

Alpharma sent PRI a letter, dated [*3] June 22, 2001, discussing Alpharma's pending application (referred to in Brown Aff. Ex. B), and PRI replied in a letter, dated June 27, 2001, urging Alpharma not to infringe PRI's patent and requesting copies of all Alpharma pending patent applications, file histories, and documentation to support Alpharma's claim of priority. (Brown Aff. Ex. B.) The letter concluded, "given the great importance of this product to Par, we urge and caution you and Alpharma to neither say nor do anything that may adversely impact Par in any way." (Id.) In a letter dated June 28, 2001, Alpharma agreed to send PRI a proposed Confidentiality Agreement and noted that Alpharma would require some information from Par as part of the exchange. (Brown Aff. Ex. C.) Alpharma sent the proposed Confidentiality Agreement to PRI on July 5, 2001. (Brown Aff. Ex. D.) PRI's counsel, in a letter dated July 5, 2001, requested a copy of the Alpharma formulation that is the subject of the pending ANDA, and indicated that Par was unwilling to share proprietary information with Alpharma. (Brown Aff. Ex. E.) In a letter in reply, dated July 6, 2001, Alpharma's counsel refused to provide Alpharma's formulation and wrote, "It [*4] appears that you are more interested in making unfounded accusations and threats than in trying to reach an amicable resolution of mutual benefit to both of our clients. The unfounded accusations in the letter do nothing to advance the matter and possibly it is best just to let the interference and the legal process run its normal course if that is the desire of your client." (Brown Aff. Ex. F.)

Alpharma filed a complaint in the District of Maryland against PRI on August 1, 2001, seeking a declaratory judgment that its megestrol suspension product will not infringe PRI's '065 patent and that the '065 patent is invalid. (Brown Aff. Ex. G.) According to Alpharma, Alpharma filed the complaint "because it expects to receive imminent FDA approval of its megestrol acetate product, which is covered by certain claims of PRI's '065 patent, and wanted to obtain a prior judicial determination with respect to infringement and invalidity issues." (Def.'s Mem. in Supp. of Mot. to Transfer at 7.) Alpharma claims that the purpose of its suit was "to learn through discovery if it invented the megestrol acetate product first." (Def.'s Reply Mem. in Supp. of Mot. to Transfer at 1.)

PRI filed a motion [*5] to dismiss the Maryland action on September 28, 2001, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that there is no real and substantial controversy because Alpharma did not have a reasonable apprehension of being sued by PRI. [2] (Brown Aff. Ex. H.) Alpharma opposed the motion. (Brown Aff. Ex. I.) On March 15, 2002, Alpharma filed an amended complaint as of right that adds allegations concerning the '356 patent. (Brown Aff. Ex. J.) PRI filed a motion to dismiss the amended complaint on April 4, 2002. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Transfer at 5.)

> [2]  [HN1]A party has a right to seek a declaratory judgment where reasonable apprehension exists that it will be sued by another party. 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 132 (S.D.N.Y. 1994).

On January 2, 2002, the Honorable Andre M. Davis, United States District Judge, District of Maryland, issued a "Memorandum to Counsel" in which he wrote that "plaintiff's showing is far short of [*6] what is required to compel (through the expedient of a declaratory judgment action) defendants to litigate patent infringement claims in this district." (Brown Aff. Ex. A.) The judge noted that it would be easy for plaintiff to cure the obvious deficiencies by disclosing its formulation and invited plaintiff to file a sur-reply to the motion to dismiss. (Id.) Alpharma disclosed its formulation on January 14, 2002. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Transfer at 4-5.)

PRI filed the present litigation in this Court on February 7, 2002, seeking a declaration that Alpharma infringes the '356 and '065 patents as well as injunctive relief and damages.

## DISCUSSION

"[HN2]It is a 'well-settled principle' in this circuit that where proceedings involving the same parties and issues are pending simultaneously in different federal courts the first-filed of the two takes priority absent 'special circumstances' or a balance of convenience in favor of the second." Citigroup Inc. v. City Holding Co., 97 F. Supp.2d 549, 555 (S.D.N.Y. 2000) (citing First City Nat'l Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)). [3] The first-to-file rule requires [*7] a court to give priority to the action filed first even if it is a declaratory action, "unless considerations of judicial and

litigant economy, and the just and effective disposition of disputes, require otherwise." Lonza Inc. v. Rohm and Haas, Inc., 951 F. Supp. 46, 49 (S.D.N.Y. 1997) (quoting Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937-38 (Fed. Cir. 1993)). The party seeking to deviate from the rule must demonstrate that circumstances justifying an exception exist, and it is within the trial court's discretion to determine if a departure is warranted. Citigroup, 97 F. Supp.2d at 555-56.

> 3  It is not disputed that the claims and the parties in the New York and Maryland actions are substantially similar. (Def.'s Mem. in Supp. of Mot. to Transfer at 6; Pl.'s Mem. in Opp'n at 4-5.)

A. Special Circumstances

*1. Forum Shopping*

[HN3]The primary "special circumstance" of concern to the Second Circuit, which would preclude application of the first-to-file [*8] rule, is where the first suit was filed as a result of forum shopping. Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir. 1986). Forum shopping giving rise to an exception to the rule may be found "where a suit bears only a slight connection to the action." Toy Biz, Inc. v. Centuri Corp., 990 F. Supp. 328, 332 (S.D.N.Y. 1998). This case has a sufficient nexus with Maryland: Alpharma's principal place of business is Maryland and the alleged infringement took place in that state as well. Therefore, forum shopping is not a special circumstance that favors the Maryland action in this case. It might be added that, whatever district addresses the merits of the dispute, the Federal Circuit will, presumably, both supply relevant precedent and hear any appeal.

*2. Anticipatory Filing*

In addition, [HN4]a suit which is categorized as an "improper anticipatory filing," designed to preempt an anticipated infringement action, constitutes a special circumstance. Citigroup, 97 F. Supp.2d at 556. An improper anticipatory filing is "one made under the apparent threat of a presumed adversary filing the mirror [*9] image of that suit" in another court. Ontel Prods., Inc. v. Project Strategies Corp., 899 F.Supp 1144, 1150 (S.D.N.Y. 1995). A party who launches such a preemptive strike by racing to the courthouse in his preferred forum should not benefit from the first-filed

rule. Id. An "apparent threat" has been found where there is an overt statement that a party intends to commence litigation. Hanson PLC v. Metro-Goldwyn-Mayer Inc., 932 F. Supp. 104, 107 (S.D.N.Y. 1996); 800- Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 132-33 (S.D.N.Y. 1994). To put a party on notice of a forthcoming lawsuit, a letter to a party must state "the intention to file suit, a filing date, and/or a specific forum for the filing of the suit." J. Lyons & Co. v. Republic of Tea, Inc., 892 F. Supp. 486, 491 (S.D.N.Y. 1995); see also Employers Ins. of Wausau v. Prudential Ins. Co., 763 F. Supp. 46, 49 (S.D.N.Y. 1991) (finding a letter without explicit mention of an intent to sue, a tentative filing date or a forum to be an invitation to initiate settlement negotiations and not notice of suit).

This Court finds [*10] that Alpharma did not receive notice of suit prior to filing this action. PRI's letters to Alpharma resemble cease-and-desist letters, since they urge Alpharma not to infringe PRI's patent. The letters nowhere indicate PRI's intent to initiate litigation in the near future.

Furthermore, Alpharma's argument in the Maryland action that there is subject matter jurisdiction for its declaratory judgment action is not inconsistent with its argument in this action. It is possible that PRI's actions could create a reasonable apprehension on the part of Alpharma that it would be sued by PRI without rising to the level of an overt statement by PRI that PRI intended imminent litigation. 800- Flowers, 860 F. Supp. at 132.

[HN5]Courts have also often found exceptions to the first-filed rule when parties are engaged in settlement negotiations:

> Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit. Otherwise potential plaintiffs would be discouraged [*11] from first attempting to resolve their claims without resorting to litigation.

Ontel Prods., 899 F. Supp. at 1150. The evidence before this Court does not show that the parties were engaged in

settlement negotiations at the time the Maryland action was commenced. Unlike in Elbex Video, Ltd. v. Tecton, Ltd., 2000 U.S. Dist. LEXIS 16531, No. 00 Civ. 0673, 2000 WL 1708189, at *2-3 (S.D.N.Y. Nov. 15, 2000), where this Court found "special circumstances" to exist, favoring the second-filed action, Alpharma did not lull PRI into settlement negotiations only to delay PRI from filing its suit in its chosen forum. Rather, it appears that negotiations failed based on PRI's letter of July 5, 2001, which concluded that there is "nothing for Par's management to even begin to consider much less meet about" until Alpharma provided its confidential information. (Brown Aff. Ex. E.) Also, unlike in Elbex, where Elbex filed the second action only two business days after the first-filed complaint was served, demonstrating its intention to file suit but for Tecton's representations that a settlement was possible, in this case there was no "race to the courthouse." PRI waited six months [*12] to file in New York, suggesting that PRI was not ready to file a lawsuit at the time the Maryland action was instituted.

For the reasons stated above, this Court declines to find that special circumstances exist that would preclude application of the first-to-file rule.

B. Balance of Convenience

[HN6]The question of whether the balance of convenience warrants a departure from the first-filed rule requires courts to apply the same factors to this decision as in deciding whether transfer is appropriate under 28 U.S.C. § 1404(a). Citigroup, 97 F. Supp.2d at 560; see also 800- Flowers, 860 F. Supp. at 133. Transfer is appropriate where "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This court must determine, in its discretion, whether the balance of convenience weighs in favor of the District of Maryland, a forum where this litigation might have been brought. [4] The factors that guide this analysis include:

(1) the convenience of [*13] witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the

relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

800- Flowers, 860 F. Supp. at 133.

4    This action could have been brought in Maryland because [HN7]any civil action for patent infringement may be brought in the district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business, and Alpharma is a Maryland corporation with offices in Maryland. 28 U.S.C. § 1400(b).

[HN8]No single factor is determinative; the Court has discretion to weigh the factors to reach [*14] an equitable result, although plaintiff's choice of forum is accorded significant weight. Citigroup, 97 F. Supp.2d at 560. The party requesting transfer bears the burden of showing that a transfer is warranted and that "the balance of convenience weighs heavily in [its] favor." Elbex, 2000 U.S. Dist. LEXIS 16531, 2000 WL 1708189, at *4 (citation omitted).

Since this court has determined that there was no improper anticipatory filing, the plaintiff in the first-filed action, Alpharma, is afforded the choice of forum. Ontel Prods., 899 F. Supp. at 1153. In addition, the Court notes that Maryland is the locus of operative facts in this case, because that is where the allegedly infringing product was designed, developed, and managed. Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp., 11 F. Supp.2d 729, 730 (S.D.N.Y. 1998). Since Alpharma's witnesses and documents are primarily based in Maryland (Def.'s Mem. in Supp. of Mot. to Transfer at 11-12, 15) and PRI's are mainly based in the New York area (Pl.'s Mem. in Opp'n at 11-12), this factor is neutral. Most strikingly, allowing this action to proceed in two jurisdictions will result in inefficiency. [*15] [HN9]It is more appropriate for a single court to adjudicate the claims "in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." 800-Flowers, 860 F. Supp. at 136 (quoting Wyndham Assocs. v. Bintliff, 398 F.2d 614, 619 (2d Cir. 1969)). Therefore,

the interests of justice will be served by transferring this case to Maryland to be consolidated with the first-filed action. The balance of convenience supports the application of the first-filed rule.

## CONCLUSION

For the reasons stated above, this action is stayed until the District of Maryland decides whether to dismiss the Maryland action for lack of subject matter jurisdiction. If the Maryland court decides that the Maryland action is properly brought there, the present action will be transferred to the District of Maryland. If the Maryland action is dismissed, the stay will be lifted and this litigation will proceed in this forum. [5]

5    Alternatively, if Judge Davis determines that the District of Maryland litigation was not properly brought in that district, this Court would be fully agreeable to the transfer of the District of Maryland action to this district.

[*16]  Dated: May 13, 2002

New York, New York

SO ORDERED.

Lawrence M. McKenna

U.S.D.J.

LEXSEE

**REMSEN PARTNERS, LTD, Plaintiff, v. STEPHEN A. GOLDBERG CO., et al, Defendants.**

**97 Civ. 0328 (BSJ)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1997 U.S. Dist. LEXIS 2115**

**February 28, 1997, Decided**
**March 3, 1997, FILED**

**DISPOSITION:**    [*1]  Action dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In plaintiff claimant's civil action, defendant movants sought an extension of time within which to file their responses to the complaint.

**OVERVIEW:** The claimant brought a civil action against the movants in state court, which was subsequently removed to a different federal district court. The claimant thereafter filed the same action in with the clerk of the court. The movants sought an extension of time within which to respond to the complaint in the second action. The court dismissed the action because it was duplicative of the other action and a court of first filing was required to enjoin parties from pressing a compulsory counterclaim in a second court.

**OUTCOME:** The court dismissed the action as duplicative of another action pending in another district court.

**CORE TERMS:** compulsory counterclaim, duplicative, prosecuting, injunction, venue

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses,*

*Demurrers, & Objections > Motions to Dismiss*
*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > Compulsory Counterclaims*
*Civil Procedure > Joinder of Claims & Remedies > General Overview*

[HN1]District courts should avoid duplicative efforts, rulings that may entrench upon the authority of sister courts, and piecemeal resolution of issues. As between federal district courts, the general principle is to avoid duplicative litigation. In this vein, a single forum should resolve separate actions between the same parties arising from the same controversy.Thus, a court may stay or dismiss an action where the issues presented may be resolved in an earlier-filed action pending in another district court.A court of first filing normally will enjoin parties from pressing a compulsory counterclaim in a second court.

**COUNSEL:** For REMSEN PARTNERS LTD., plaintiff: Anton J. Borovina, Shaw, Licitra, Esernio & Schwartz, P.C., Garden City, NY.

**JUDGES:** BARBARA S. JONES, UNITED STATES DISTRICT JUDGE

**OPINION BY:** BARBARA S. JONES

**OPINION**

**MEMORANDUM & ORDER**

**BARBARA S. JONES**

1997 U.S. Dist. LEXIS 2115, *1

1970 Trade Cas. (CCH) P73,263; 14 Fed. R. Serv. 2d (Callaghan) 665

**UNITED STATES DISTRICT JUDGE**

Pending is defendants' application for an extension of time within which to file their responses to the instant Complaint. Plaintiff opposes the request. After reviewing this case's history, the action is dismissed because plaintiff's complaint represents an action duplicative of one pending in another district court.

The relevant background here is simple:

On November 15, 1996, Stephen A. Goldberg & Co. ("Goldberg Co.") filed suit against Remsen Partners, Ltd. ("Remsen") in the Superior Court of the District of Columbia (the "D.C. case"). One month later, Remsen removed the case to the United States District Court for the District of Columbia, where it is currently pending before the Honorable Thomas Penfield Jackson.

On January 16, 1997, Remsen filed this action against Goldberg Co. and Steven A. Goldberg. In their letter dated February 10, 1997, defendants claim that the suit arises [*2] out of the same facts and circumstances as the D.C. case and thus constitutes a compulsory counterclaim in that case. In a phone conversation with chambers on February 26, 1997, plaintiff's attorney agreed that this was so.

After this action was filed, Remsen moved in the D.C. case to dismiss or to transfer venue. By that motion, Remsen asked the D.C. Court to transfer the case to this Court pursuant to 28 U.S.C. § 1404(a). Goldberg opposed the motion and asked the D.C. court to enter an injunction enjoining Remsen from prosecuting this action. On February 26, 1997, the parties informed this Court by telephone that Judge Jackson denied the motion to dismiss or to transfer venue and issued the injunction.

Common sense dictates that [HN1]district courts should avoid duplicative efforts, rulings that may entrench upon the authority of sister courts, and piecemeal resolution of issues. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976) ("As between federal district courts... the general principle is to avoid duplicative litigation.") (dictum). In this vein, a single forum should resolve separate actions between the same parties arising from the [*3] same controversy. *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991); *Columbia Plaza Corp. v. Security National Bank*, 173 U.S. App. D.C. 403, 525 F.2d 620, 626 (D.C. Cir. 1975);

*see also Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219 (1952) (stating that courts of coordinate jurisdiction should not interfere with each other's affairs); *Washington Metropolitan Area Transit Authority v. Ragonese*, 199 U.S. App. D.C. 246, 617 F.2d 828, 830 (D.C. Cir. 1980) (dismissing second-filed action where the first-filed action presented "closely related" question).

Thus, a court may stay or dismiss an action where the issues presented may be resolved in an earlier-filed action pending in another district court. *Adam*, 950 F.2d at 92; *West Gulf Maritime Assoc. v. ILA Deep Seal Local 24, et al.*, 751 F.2d 721, 729 (5th Cir. 1985); *see also Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 6 L. Ed. 152 (1824) ("in all cases of federal concurrent jurisdiction, the court which first has possession of the subject *must* decide it") (emphasis added). Indeed, a district court should not hear a claim constituting a compulsory counterclaim in an earlier filed action. *Adam*, 950 F.2d at 93 (citing *Southern Const. Co. v. Pickard*, 371 [*4] U.S. 57, 60, 9 L. Ed. 2d 31, 83 S. Ct. 108 (1962)); *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982); *e.g.*, *S-Fer Intl. Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211, 217 (S.D.N.Y. 1995).

Applying these principles, a court of first filing normally will enjoin parties from pressing a compulsory counterclaim in a second court. *Adam*, 950 F.2d at 93-94 (citing *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202-3 (2d Cir. 1970); *National Equip. Rental, Ltd. v. A.L. Fowler*, 287 F.2d 43, 44 (2d Cir. 1961). This is exactly what has happened here; Judge Jackson enjoined plaintiff from pursuing this case because this action involves a claim properly asserted in the first-filed forum.

Accordingly, since the plaintiff is barred from prosecuting this case further (but must now pursue the underlying issues in the D.C. case) and since claims asserted here should be resolved in another forum, this action is dismissed.

**So ordered.**

Dated: New York, New York

February 28, 1997

BARBARA S. JONES

UNITED STATES DISTRICT JUDGE

**Citation #18**
**544 F.Supp. 166**

LEXSEE



Positive
As of: Apr 07, 2008

### DONNKENNY, INC., Plaintiff, v. MURRAY NADLER, CUMMINGS & CARROLL, P.C., H. B. CARROLL, GLENN O. THORNHILL, GALAX APPAREL CORPORATION and D.K. INVESTORS, INC., Defendants

### No. 81 Civ. 6075 (MP)

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### 544 F. Supp. 166; 1982 U.S. Dist. LEXIS 13964; 37 Fed. R. Serv. 2d (Callaghan) 72

### August 3, 1982

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employer filed a motion under Fed. R. Civ. P. 12(f) for an order striking the fifth defense interposed by defendant employee, which alleged that the employer's action against the employee for breach of an employment contract was barred by virtue of the compulsory counterclaim requirement in Fed. R. Civ. P. 13(a).

**OVERVIEW:** The employee was hired under a written contract with the employer to work at the Virginia sewing plants for a period of five years. The sewing plants underwent extensive reorganization, and the employee was fired with two years remaining under his employment contract. The employee brought an action in Virginia against the employer for willful and wrongful termination, and the employer filed an action against the employee in New York alleging breach of his employment duties. The employee filed a motion pleading that the employer's claim should have been brought in its answer to the employee's Virginia action. The employer then filed a motion to strike the employee's defense that the employer's action was barred by virtue of the compulsory counterclaim requirement of Fed. R. Civ. P. 13(a). The employee's motion to dismiss was granted.

The court held that in the interest of justice, the discord concerning the employee's job favored trial in Virginia where all the required facts and primary parties were most readily accessible.

**OUTCOME:** The employer's motion to strike and to stay the employee's action was denied, and the employee's motion to dismiss was granted to the extent that all claims against the employee were stayed until final disposition of the Virginia action, which would determine whether either party breached the employment contract.

**CORE TERMS:** removal, counterclaim, lawsuit, compulsory counterclaim, employment contract, pleader, acquire, acquisition, apparel, plants, final disposition, breach of fiduciary duties, opposing party, initial pleading, responded, diversity, breached, coercive, answered, staying, serving, federal action, insubordination, interrogatories, terminated, acquiring, insulting, handled

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*

544 F. Supp. 166, *; 1982 U.S. Dist. LEXIS 13964, **;
37 Fed. R. Serv. 2d (Callaghan) 72; 14 Fed. R. Serv. 2d (Callaghan) 665

*Civil Procedure > Pleading & Practice > Pleadings >
Counterclaims > Compulsory Counterclaims*
*Civil Procedure > Pleading & Practice > Pleadings >
Cross-Claims > General Overview*

[HN1]Fed. R. Civ. P. 13(a) provides that a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if: (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under Fed. R. Civ. P. 13.

**COUNSEL:** [**1] Barrett Smith Schapiro Simon & Armstrong, New York, New York, By: Gerald A. Novack, Esq., for Plaintiff.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York, New York, By: John L. O'Donnell, Esq., Peter Aron, Esq., for Defendant (Thornhill).

**JUDGES:** Milton Pollack, District Judge.

**OPINION BY:** POLLACK

**OPINION**

[*167] MILTON POLLACK, District Judge.

Plaintiff Donnkenny has moved pursuant to Rule 12(f) Fed. R. Civ. P. for a) an order striking the Fifth Defense interposed by the defendant Thornhill which alleges that this action is barred as against defendant Thornhill by virtue of the compulsory counterclaim requirement in Rule 13(a); and b) staying defendant Thornhill's action against Donnkenny now pending in the United States District Court for the Western District of Virginia (Civ. No. 81-0354) insofar as that action seeks to have determined whether defendant Thornhill's employment contract with Donnkenny was breached by Donnkenny.

Defendant Thornhill cross-moves for an order pursuant to Rule 13 dismissing the claims herein against him for failure to assert them in the said Virginia lawsuit

or alternatively staying this action until final disposition of that Virginia action or until [**2] such time as this Court can make appropriate res judicata or collateral estoppel rulings based on the outcome of the Virginia suit which is presently scheduled for trial on November 15, 1982.

For the reasons appearing hereafter, the plaintiff Donnkenny's motions will be denied and the defendant Thornhill's motions will be granted to the extent that all claims herein against defendant Thornhill are stayed until final disposition of the Virginia suit which will determine whether Donnkenny or Thornhill breached Thornhill's employment arrangements and contract with Donnkenny.

*The background of the litigations* *

* The recited background is based upon the affidavits in support of the respective motions and upon statements of counsel and does not constitute findings of fact.

Donnkenny owns and operates several sewing plants in the State of Virginia staffed with hundreds of employees. Thornhill, a Virginia resident, was employed under written contract made in 1978 to serve as Treasurer of Donnkenny for a term [**3] of five years. He was placed in charge and handled the day to day operations of Donnkenny's wholly-owned subsidiaries that operated manufacturing plants in Virginia. This arrangement grew out of the following corporate transaction.

In August 1978 Messrs. Oppenheimer & Co. arranged to purchase substantially all of the assets of Donnkenny ("Old Donkenny"), a publicly held company engaged in the manufacture and sale of women's apparel. The purchase was consummated in November 1978. At the time of the acquisition, the defendants Thornhill and Nadler, together with members of their families, owned about 60 percent of the stock of Old Donnkenny. They were serving Old Donnkenny as Treasurer and President respectively and were directors as well. The acquisition of Old Donnkenny's assets took the form of a leveraged buy-out. The acquiring company, the plaintiff in this action, took over the Donnkenny name. The selling company, Old Donnkenny, became a closed-end investment company and changed its name to D.K. Investors, Inc., named as a defendant herein. The acquiring company, (now named Donnkenny, the plaintiff herein) continued the business and operations of Old Donnkenny. As part [**4] of the acquisition, it was

544 F. Supp. 166, *167; 1982 U.S. Dist. LEXIS 13964, **4;
37 Fed. R. Serv. 2d (Callaghan) 72; 14 Fed. R. Serv. 2d (Callaghan) 665

agreed that the management of Old Donnkenny would continue to manage the day to day business of Donnkenny. Mr. Nadler was also given a separate five year employment agreement [*168] with Donnkenny and additional perquisites and was named President and handled from New York City, particularly, the company's sales on a day to day basis.

Donnkenny's business apparently met financial reverses during the past few years of the economic downturn and by 1981 was in severe financial difficulty and began to seek new management to try to turn the company around. In August 1981 Mr. Nadler resigned as President and became a consultant to Donnkenny. One Al Paris, who had no prior connection with Donnkenny, was elected as the new President.

On August 31, 1981 Mr. Paris visited Donnkenny's Virginia facilities and met with Mr. Thornhill. That meeting precipitated the skein of lawsuits now pending. During that meeting Paris fired Thornhill for alleged insubordination, negligence and breach of fiduciary duties. Thornhill called the general counsel of Donnkenny in New York, apparently to get some word as to the authority of Paris or some other matter in connection [**5] with his dismissal. He was told that it would be looked into but by the second day thereafter no answer having been forthcoming Mr. Thornhill sued Donnkenny and named Paris as a co-defendant for breach of his employment contract and the inducement thereof. The contract had another two years to run involving salary remuneration of $240,000 plus other benefits. The suit was instituted in the state court of Virginia. Mr. Thornhill charged Donnkenny and Paris personally with "wilful and wrongful termination" of Mr. Thornhill in an "abusive, arrogant and insulting manner" and sought punitive damages against them based on Virginia's "insulting words" statute. (§ 8.01-45 Code of Virginia).

This coercive thrust was met within a month by a counter-thrust.

Donnkenny, claiming to have investigated Thornhill's stewardship after receiving notice of the Virginia lawsuit, responded with two legal steps about a month later. It planned simultaneously, to remove Thornhill's Virginia suit to the federal court on grounds of diversity and to commence this suit. However, this New York suit was timed to be filed one day earlier than the filing of the removal petition in Virginia. Thornhill was [**6] charged in this New York suit with breach of

his employment duties and negligence in the management of Donnkenny and failure to disclose to the 1978 purchasers of Donnkenny's, assets alleged personal dealings of Thornhill during his employment with a family company which did subcontracting work for Donnkenny. The former management of Donnkenny was charged with aiding and abetting Thornhill and acting in conspiracy with him against the interest of Donnkenny. All were charged with violating the civil sections of the racketeering laws (RICO) [Section 1964(c) of Title 18 U.S.C. commonly known as the Racketeer Influenced and Corrupt Organization Act, 84 Stat. 941]. The coercive effect of that section may be seen in the fact that successful plaintiffs are entitled to treble damages and attorney's fees. Donnkenny's complaint alleges that defendants committed various state law breaches of fiduciary duty, waste of corporate assets, diversion of corporate opportunities and common-law fraud which give rise to RICO claims with the use of the mails and telephones. The damages claimed against Mr. Thornhill and the others assumed generous proportions, in the millions.

Meanwhile, the Virginia [**7] suit has been moving well along. There has been large scale documentary discovery, some twenty pretrial depositions, interrogatories that were answered and a trial date of November 15th has been set by the Virginia judge.

To add to the litigation fuel, on February 24, 1982 Donnkenny brought suit in the Federal Court for the Western District of Virginia against Thornhill and others for enticing employees of Donnkenny to quit their employment.

The strains between the parties are apparent and clear.

That brings us to the motions now in Court.

[*169] In his Fifth affirmative defense in the New York suit, Mr. Thornhill pleaded that Donnkenny's criticisms of Thornhill's conduct of his employment should have been alleged in its Answer to the First Virginia lawsuit and not having been asserted under the compulsory counter-claim rule, Rule 13(a), the claim asserted in New York is barred and the New York complaint of Thornhill's conduct of his employment should be dismissed.

Donnkenny counters with the contention that it filed

544 F. Supp. 166, *169; 1982 U.S. Dist. LEXIS 13964, **7;
37 Fed. R. Serv. 2d (Callaghan) 72; 14 Fed. R. Serv. 2d (Callaghan) 665

the New York suit on October 1, 1981 and the Virginia claim did not become a federal suit until removal proceedings were effected on October 2, 1981. The Answer [**8] of Donnkenny in the Virginia federal court to the breach of employment claim by Thornhill was filed on October 9, and Thornhill was made a party to the New York suit by service of process only on October 26, 1981.

Thus, this spate of cases raises the question where the employee-employer disputes between the parties should be resolved, whether in Virginia where Thornhill sued Donnkenny, where the alleged breaches by Thornhill occurred and where Donnkenny's plants being managed by Thornhill are located, or in New York where Donnkenny brought the later suit against Thornhill and others.

Donnkenny has responded to interrogatories in the First Virginia Action as follows:

55. Describe in detail the basis of the allegation in Paragraph 9 of defendants' Answer that plaintiff was terminated from his employment for cause.

ANSWER: Glenn Thornhill was terminated from his employment for several reasons:

a. Breach of fiduciary duties.

b. Insubordination.

c. Failure to adequately perform the duties as Treasurer.

d. Facts and circumstances which have been set forth in an action initiated by Donnkenny, Inc. and in which Glenn Thornhill is a party-defendant. [**9] The action is styled *Donnkenny, Inc. v. Murray Nadler, Cummings & Carroll, P.C., H. B. Carroll, Glenn O.*

*Thornhill, Galax Apparel Corporation and D.K. Investors, Inc.* [This is the instant suit in this Court]

[HN1]Rule 13(a) reads:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Plainly the First Virginia lawsuit and this New York action arise out of the same contractual relationship and do not require for their adjudication the presence of third [**10] parties of whom the Court cannot acquire jurisdiction. The dispute on each side of each case relates to the alleged violation by Donnkenny of Mr. Thornhill's employment contract and the alleged misperformance by Mr. Thornhill of his employee obligations to Donnkenny.

Mr. Thornhill was the first to sue. His case in state court was removed to federal court on grounds of diversity jurisdiction. The commencement date of the state court suit remains the same for all purposes upon removal e.g., periods of limitation and pleadings. Rule 81(c) provides that the Federal Rules of Civil Procedure "apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal". The Answer of Donnkenny filed after

544 F. Supp. 166, *169; 1982 U.S. Dist. LEXIS 13964, **10;
37 Fed. R. Serv. 2d (Callaghan) 72; 14 Fed. R. Serv. 2d (Callaghan) 665

removal was required to set up its defenses and compulsory counterclaims, if any, subject to the terms and exceptions of Rule 13.

[*170]  In a removed action in which the defendant has not answered, he shall answer or present the other defenses or objections available to him under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief [**11] upon which the action or proceeding is based, or within 20 days after the service of the summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest. Rule 81(c) [in part].

Where, as here, the counterclaims arising out of the relationship and transactions of the parties could have been or should be by leave of court, if it can be obtained, set up in the first commenced suit, the Virginia action, the Court will stay its own later proceedings, *Ultronic Systems Corp. v. Ultronix, Inc.*, 217 F. Supp. 89 (D. Del. 1963); *Leonard F. Fellman Co. v. Smith-Corona Marchant Inc.*, 27 F.R.D. 263 (D.C. Pa. 1961); Wright and Miller, Federal Practice and Procedure, § 1418, n.62; *cf. W.A. Krueger Co. v. Ottenheimer Publishers, Inc.*, 458 F. Supp. 1082 (E.D. Wisc. 1978) (Court enjoined later proceedings in another jurisdiction); or alternatively the Court will dismiss the claims before it without prejudice to an application to the Virginia Court for leave to set up the claims as counterclaims by amendment to the Answer therein. *E.J. Korvette Co., Inc. v. The Parker Pen Company*, 17 F.R.D. 267 (S.D.N.Y. [**12] 1955); *Jepco Corp. v. Greene*, 171 F. Supp. 66 (S.D.N.Y. 1959). Such amendment, of course, lies wholly in the discretion of the Virginia Court. Rule 13(f) Fed. R. Civ. P.

The identity of the facts and issues in the two cases has been attested to by Donnkenny's counsel who has stated in his affidavit hereon that Donnkenny's defense to the Virginia suit is raised by the same facts as amount to a counterclaim to that suit. The affidavit states that:

6. . . The *very same facts* that give rise to a claim for affirmative relief in this action constitute a *complete defense* to Mr. Thornhill's breach of contract claim in the Virginia federal action.

7. Most of the proof in this case will be identical with the proof in the Virginia federal action . . . . "Mr. Thornhill wrongly diverted millions of dollars of Donnkenny business to defendant Galax Apparel and other companies owned and controlled by Mr. Thornhill and members of his family. Donnkenny contends that the proof will show that throughout this period Mr. Thornhill also improperly utilized Donnkenny equipment and personnel for the benefit of the Thornhill family companies, all to the detriment of Donnkenny."

[**13] The other defendants named in the New York action are brought in by Donnkenny as alleged aiders and abettors and conspirators with Thornhill to conceal his alleged misconduct and disloyalty.

In the interests of justice and efficiency and balancing the conveniences of the parties and witnesses, the discord concerning Thornhill's employment favors trial in Virginia where all the required facts and primary parties are most readily accessible.

Accordingly, plaintiff's motions are denied and defendant Thornhill's motion for a stay of the claims against him asserted in this action is granted and the motion to dismiss those claims is denied, without prejudice to renewal for good cause shown.

SO ORDERED.

LEXSEE 1995 US DIST LEXIS 14034

**WALLACE COMPUTER SERVICES, INC., Plaintiff -against- MOORE CORPORATION LIMITED and FRDK, INC., Defendants.**

**95 Civ. 6379 (CSH)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 14034*

**September 27, 1995, Decided
September 27, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant purchasing corporations, moved to dismiss or transfer plaintiff target corporation's suit.

**OVERVIEW:** Defendants had filed a suit in Delaware against plaintiff concerning defendants' hostile takeover tender offer. Plaintiff then filed the suit at issue. Defendants moved to dismiss the claim, arguing that Delaware was the better forum to resolve the issues. Reviewing the record, the court agreed and granted the motion to dismiss. In reaching its conclusion, the court held that the fact that defendants' action was first filed, combined with overall interests of justice and efficiency, warranted a finding that Delaware was the more appropriate forum to determine the issues. Additionally, the court held that plaintiffs' claims in the action at issue should have been brought as counterclaims in the Delaware action.

**OUTCOME:** The court granted the motion to dismiss.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Multidistrict Litigation*
[HN1] Where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.

*Civil Procedure > Venue > Multidistrict Litigation*
[HN2] Where there are two competing lawsuits, plaintiff can overcome the presumption of the priority of the first filed suit only by demonstrating that the "balance of convenience" or "special circumstances" weigh in favor of the second filed suit. The assessment of these factors is a matter left to the discretion of district court judges.

*Civil Procedure > Venue > Multidistrict Litigation*
[HN3] Where there are two competing lawsuits and a court must decide which forum is appropriate for the suit, the criteria used to assess the balance of convenience include: (1) the convenience of witnesses and parties; (2) the availability of relevant documents; (3) the locus of operative facts; (4) the relative burdens of expenses on the parties; (5) a forum's familiarity with the governing law; (6) the weight accorded plaintiff's choice of forum; and (7) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Civil Procedure > Venue > Multidistrict Litigation*
*Civil Procedure > Appeals > Case Transfers*
[HN4] A plaintiff may not resist the transfer of his action to another district on the ground that the transferee court will or may interpret federal law in a manner less favorable to him. If there is a conflict of views among the circuits, this is a matter for consideration by the Supreme Court on application for certiorari, not for consideration by a district judge on application for transfer.

*Civil Procedure > Pleading & Practice > Pleadings >*

1995 U.S. Dist. LEXIS 14034, *

*Counterclaims > Compulsory Counterclaims*
*Civil Procedure > Pleading & Practice > Pleadings >*
*Cross-Claims > General Overview*
[HN5] *Fed. R. Civ. P. 13(a)* requires a pleading to state as a counterclaim any claim against any opposing party that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot require jurisdiction. The Second Circuit Court of Appeals has established a test which examines whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claim are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.

**COUNSEL:** [*1] FOR WALLACE COMPUTER SERVICES, INC., plaintiff: Robert W. Hirth, Sidley & Austin, New York, NY.

**JUDGES:** CHARLES S. HAIGHT, JR., U.S.D.J.

**OPINION BY:** CHARLES S. HAIGHT, JR.

**OPINION**

*MEMORANDUM OPINION AND ORDER*

*HAIGHT, Senior District Judge:*

The above-captioned matter concerns the legality of a hostile tender offer made by defendants to plaintiff on July 30, 1995. On July 31, 1995, defendants commenced an action against plaintiff in the United States District Court for the District of Delaware. On August 15, 1995, plaintiff began an action in this court, which defendants now move to dismiss or to transfer to the District of Delaware. These two actions are further described in this Court's Memorandum and Order dated September 12, 1995, familiarity with which is presumed.

I. DISCUSSION

A. First Filed Suit

This case presents the familiar scenario of two parallel, co-existing actions filed in separate federal courts by opposing parties. *See, e.g., Employers Insurance of Wausau v. Duplan Corporation, 1994 U.S. Dist. LEXIS 16249, 1994 WL 637710* (S.D.N.Y.); *First*

*City National Bank and Trust Company v. Simmons, 1988 U.S. Dist. LEXIS 12680, 1988 WL 125682* (S.D.N.Y.), *affirmed 878 F.2d 76 (2d Cir. 1989).*

The Second Circuit's long-settled principle is that [HN1] "where there are two competing lawsuits, the first suit should have [*2] priority, absent the showing of balance of convenience ... or special circumstances ... giving priority to the second." *Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991)* (citations omitted); *Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), cert. denied, 440 U.S. 908, 59 L. Ed. 2d 455, 99 S. Ct. 1215 (1979).* Plaintiff acknowledges this principle, but has argued that it should not be followed in this instance because defendants' Delaware action is a prematurely filed "sneak attack" which does not warrant the deference usually accorded to a "first filed" case. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss or Transfer at 2-7 (hereinafter "Plaintiff's Opp. Mem.").

Plaintiff had moved to dismiss defendants' Delaware action on precisely that ground: prematurity and lack of a controversy ripe for decision. Because the ripeness of defendants' Delaware suit was central to plaintiff's argument in favor of abrogating the first filed rule, this court chose to conserve judicial resources by waiting for the District of Delaware to rule on the ripeness of the suit before it before adjudicating defendants' motion to dismiss this suit. *See* [*3] Court's Order, September 12, 1995. That ruling has now been made: Judge Schwartz of the District of Delaware heard arguments on the question of ripeness and on September 19, 1995 held defendant's action to be ripe and timely filed. while this court is not, of course, bound by that decision, I see no reason to dispute the reasoning of the District of Delaware.

Without the benefit of the argument that defendants' Delaware claim was unripe, [HN2] plaintiff can overcome the presumption of the priority of the first filed suit only by demonstrating that the "balance of convenience" or "special circumstances" weigh in favor of the second filed suit. The assessment of these factors is a matter left to the discretion of district court judges. *Adam v. Jacobs, 950 F.2d at 92; First City, 878 F.2d 76, 80 (2d Cir. 1989); Factors Etc., 579 F.2d at 218.*

1. Balance of Convenience

[HN3] The criteria used to assess the balance of convenience include: (1) the convenience of witnesses

and parties; (2) the availability of relevant documents; (3) the locus of operative facts; (4) the relative burdens of expenses on the parties; (5) a forum's familiarity with the governing law; (6) the weight accorded [*4] plaintiff's choice of forum; and (7) trial efficiency and the interests of justice, based on the totality of the circumstances. *J. Lyons & Company Ltd. v. Republic of Tea, et al., 892 F. Supp. 486 (S.D.N.Y. 1995)*; *First City, Tunsa 1988 U.S. Dist. LEXIS 12680, 1988 WL 125682* at *5.

The first factor, convenience of witnesses and parties, favors neither New York nor Delaware as a location for this suit. Plaintiff is incorporated in Delaware and has its principal place of business in Illinois. Defendant Moore is an Ontario, Canada corporation with its principal place of business in Toronto; defendant FRDK is a New York corporation with its principal place of business in Toronto. No party has sizable offices or plants in New York. FRDK, a wholly-owned subsidiary of Moore formed solely for the purpose of making the tender offer at issue, uses as its New York address that of its attorneys' offices. Although defendants' counsel and financial advisors are in New York, the witnesses affiliated with plaintiff and defendants' corporations are all elsewhere. Thus neither location is particularly convenient or inconvenient for the parties and witnesses: a trial in either court will require travel and displacement of all [*5] parties. I am not convinced by plaintiff's arguments that the facts that defendant's CEO, Braun, gave newspaper interviews in New York and left a New York phone number on the answering machine of plaintiff's CEO, Cronin, constitute sufficient nexus with New York to justify abrogating the first filed rule.

The second, third, fourth, and fifth criteria are similarly non-dispositive. Because none of the parties has strong New York ties, the burden of producing documents and the expenses associated with that production will not differ substantially between a New York or a Delaware trial site. Nor is the locus of operative facts clearly situated in either location. The District Courts of Delaware and New York are equally able to assess the legal issues at stake here; mutually familiar federal laws are at the heart of plaintiff's New York action, and the Delaware corporate laws at the heart of defendants' suit are well known to New York Federal judges.

The sixth factor weighs in favor of dismissing this New York suit. Defendants chose to bring their action in

Delaware, and that suit has been deemed properly and timely brought. When filing their suit against plaintiff and plaintiff's individual [*6] board members, defendants faced legitimate concerns about a court's ability to obtain personal jurisdiction over all members of the board, and chose Delaware as the site for their lawsuit for that reason. Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss or Transfer at 23 (hereinafter "Defendants' Reply Mem.") Although plaintiff stated in oral arguments before this court that all members of its board of directors would be willing to appear in New York, defendants could not have known this at the time they filed suit in Delaware. Indeed, it is likely that if defendants had filed first in New York, plaintiff's directors would have contested personal jurisdiction. Thus defendants' choice of the Delaware forum had reasonable motives that will be honored by this court.

Lastly, when the court considers the overall interests of justice and efficiency, this case seems more appropriately situated in Delaware. Had the Delaware court ruled that defendants' suit there was premature, I would have seen no need to honor their attempts to bring the suit in Delaware. However, since that suit will now go forward, and it is clearly in the interests of efficiency [*7] to consolidate these actions in one court, plaintiff's claims should be brought in Delaware. No injustice will be done to plaintiff by dismissing this action; plaintiff is free to bring all its claims as counterclaims in Delaware.

Nor are there any special circumstances which militate in favor of New York as the forum for a consolidated action. Defendants argue that plaintiff brought this action in New York solely to take advantage of the Second Circuit's favorable antitrust "standing" decision in *Consolidated Gold Fields, PLC v. Minorco, S.A., 871 F.2d 252 (2d Cir. 1989), cert. denied, 492 U.S. 939, 106 L. Ed. 2d 639, 110 S. Ct. 29 (1989).* Defendants' Reply Mem. at 25. Conversely, plaintiff argues that defendants filed their suit in Delaware to avoid *Consolidated Gold Fields.* Plaintiff's Opp. Mem. at 7. While the Court recognizes that both parties may have filed suit with an eye to the *Consolidated Gold Fields* opinion, I do not think either side's behavior constitutes a special circumstance sufficient to warrant abrogation of the first filed rule.

On the contrary: in the context of plaintiff's efforts to resist a transfer to Delaware because the law of antitrust

[*8] standing is arguably less favorable to it in the Third Circuit than in the Second, the Second Circuit has condemned that motive. *See Green v. MacMahon, 312 F.2d 650, 652 (2d Cir. 1962)* [HN4] ("A plaintiff may not resist the transfer of his action to another district on the ground that the transferee court will or may interpret federal law in a manner less favorable to him . . . . If there is a conflict of views among the circuits, this is a matter for consideration by the Supreme Court on application for certiorari, not for consideration by a district judge on application for transfer." (citations and inner quotations omitted), *cert. denied, 372 U.S. 928, 83 S. Ct. 871, 9 L. Ed. 2d 735 (1963). See also In re Pan American Corp., 950 F.2d 839, 847 (2d Cir. 1991)*, citing and quoting *Green v. MacMahon at 652* for the related proposition that "federal courts comprise a single system applying a single body of law, and no litigant has a right to have the interpretation of one federal court rather than that of another determine his case."

Nor do the circumstances of this case rise to the level of special circumstances described in the cases relied upon by plaintiff. In one case cited by plaintiff, priority was [*9] given the second filed case only because the originally filed case had beaten it to the courthouse door due to an unexpected snow storm which prevented filing after advance notice of the planned action had been given. *Coastal Mart, Inc. v. Coastal Oil Co., 681 F. Supp. 1090 (S.D.N.Y. 1988)*. In another action, one party requested a sixty-day extension and then filed an action within forty-eight hours of the request. *Great American Ins. v. Houston General Ins., 735 F. Supp. 581 (S.D.N.Y. 1990)*. Defendants have taken no such egregious steps in this case, and I find no special circumstances favoring the second filed case.

Having found that the balance of convenience weighs in favor of a New York trial, and that no special circumstances require otherwise, I conclude that the present cause of action should not continue in this District.

### B. Compulsory Counterclaim

Defendants also argue that plaintiff's cause of action in this district involves a compulsory counterclaim that should properly be resolved within the Delaware action. Memorandum of Law in Support of Defendants' Motion to Dismiss or Transfer at 8-17. (hereinafter "Defendants' Mem.") [HN5] *Fed. R. Civ. P. 13(a)* requires [*10] a pleading to state as a counterclaim any claim against any

opposing party that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot require jurisdiction." The Second Circuit has established a test which examines "whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claim are 'so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Adam v. Jacobs, 950 F.2d at 92* (citations omitted).

The Second Circuit has examined the situation of competing allegations in the context of a tender offer and resistance to that offer, allegations in which the party attempting the takeover alleged breach of fiduciary duty by the target corporation's directors, and the target alleged violations of securities and antitrust laws. *Crouse-Hinds Co. v. Internorth, Inc., 634 F.2d 690 (2d Cir. 1980)*. The Second Circuit ruled that "the two claims have a clear, logical relationship and an adequate factual overlap to warrant [*11] classification of the counterclaim as compulsory." *Crouse-Hinds, 634 F.2d at 700*. The situation before the court in this action greatly resembles that in *Crouse-Hinds*. Therefore I conclude that the claims brought by plaintiff in this action should have been brought as counterclaims in the District of Delaware.

## II. CONCLUSION

Defendants' suit before the District of Delaware deserves priority over this suit as the first filed suit since the balance of convenience favors bringing the suit in Delaware and no special circumstances exist to the contrary. In addition, plaintiff's allegations in this case should have been brought as counterclaims in the Delaware action. For both these reasons, I hereby grant defendants' motion to dismiss the cause of action. Because I do not reach the merits, the dismissal will be without prejudice.

In these circumstances, I need not reach defendants' alternative basis for transfer, grounded upon *28 U.S.C. § 1404(a)*.

The Clerk of the Court is directed to dismiss the action without prejudice.

It is SO ORDERED.

1995 U.S. Dist. LEXIS 14034, *11

Dated: New York, New York                    CHARLES S. HAIGHT, JR.

    September 27, 1995                    U.S.D.J.